IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Margaret Watkins and James Watkins, on behalf of Their Minor Son, JMW,<br><br>*Plaintiff,*<br><br>V.<br><br>Nurture, LLC; Hain Celestial Group, Inc.; Amazon.com Services LLC; Whole Foods Market Services, Inc.; and Does 1-100,<br><br>*Defendants*. | CIVIL ACTION NO. 22-551<br><br>JUDGE DARREL JAMES PAPILLION<br><br>MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S PUNITIVE DAMAGES CLAIM**

NOW INTO COURT, comes Margaret Watkins and James A. Watkins, on behalf of their minor son, Plaintiff JMW, who respectfully oppose Defendants' Motion to Dismiss Plaintiff's Punitive Damages Claim (Rec. Docs. 210, 219, 224).

**INTRODUCTION**

The allegations here, taken as true, involve what can be described only as abhorrent conduct. This is not a case in which a defective and dangerous product simply slipped through the cracks. Instead, this case involves companies that knew their products, made for consumption by babies, contained dangerous toxins that damage infant and child brain development. Faced with this knowledge, these companies chose to ignore, conceal, or obscure the problem. And now, even in the face of a congressional investigation and lawsuits exposing their actions, Defendants continue to sell these dangerous products with no effective warnings to unwitting parents. This abhorrent conduct rises to the level of "exceptional" under Louisiana Civil Code Art. 3547 and, contrary to Defendants' contention, is not blocked by the provisions of La. Civ. Code 3545.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Punitive Damages Claim should be denied.[1]

## LEGAL STANDARD

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. U.S.*, 281 F.3d at 158, 161 (5th Cir. 12/19/2001) (citing, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, the complaint should be examined to determine whether the allegations provide relief using any possible legal theory. *Ramming id.* at 162; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

Dismissal under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A&M Univ. System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum and Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The standard is strict: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowery*, 117 F.3d at 247.

---

[1] Plaintiff only seeks punitive damages from the Manufacturer Defendants, Nurture LLC and Hain Celestial Group Inc. The Retailer Defendants (Amazon.com Services LLC and Whole Foods Market Services Inc.) filed a joinder to the Manufacturer Defendants' Motion to Dismiss (Rec. Docs. 219, 224). Plaintiff, however, is not seeking punitive damages against the Retailer Defendants and thus does not address that issue in his opposition to the motion.

# ARGUMENT

Plaintiff has pled facts sufficient to support a reasonable inference that Defendants are liable for punitive damages as set forth in the Amended Complaint.

### I. Defendants Are Wrong That Louisiana Law Categorically Bars Punitive Damages In Products Liability Cases

Defendants do not deny that the New York law permits punitive damages in a products liability case such as this.[2] Nor do Defendants deny that La. Civil Code 3546 allows punitive damages if they are authorized by "the law of the state where the injurious conduct occurred. . . ." Instead, Defendants insist that Art. 3546 is trumped by an earlier provision of the Louisiana Civil Code, namely Art. 3545. That argument, however, rests not on the text of the relevant statutes but only on comments to those provisions. As numerous Louisiana state courts have recognized, "comments to Civil Code articles do not constitute law." *Sims v. Am. Ins. Co.*, 2012-C-0204, p. 6 (La. 10/16/12); 101 So. 3d 1, 5.[3]

Moreover, even if Art. 3546 does not govern here, an entirely separate provision of the Code allows for punitive damages in a products liability case such as this. Art. 3547 states:

> Exceptional cases. The law applicable under Articles 3543-3546 shall not apply if, from the totality of the circumstances, another state's policies would be more significantly impaired by the mechanical imposition of the laws of Louisiana, as per the factors described in La. Civ. Code Art. 3542.

---

[2] Both Nurture and Hain's principal places of business are in New York.

[3] *See also Broussard v. Hilcorp Energy Co.*, 2009-C-0449, p. 5 n.5 (La. 10/20/09); 24 So. 3d 813, 816 n.5 ("[S]tatements contained in the official comments are not part of the statute and are not binding on courts...."); *Ramirez v. Fair Grounds Corp.*, 575 So. 2d 811, 813 (La. 1991) ("[Comments] have no legislative effect on the statute because they are not part of the law."); *Lakewood Prop.Owners' Ass'n v. Smith*, 2014-CA-1376, p. 23 (La. App. 4 Cir. 12/23/15); 183 So. 3d 780, 794 ("We note, however, that comments to Civil Code articles do not constitute law."). None of the federal court cases cited in Defendants' motion address the fact that comments to the Civil Code do not constitute binding law. Nor do Defendants cite any Louisiana state court opinion for their argument that Article 3545 necessarily trumps Article 3546 choice of law provisions concerning the specific issue of punitive damages.

L.A. Civ. Code Art. 3547; *Arabie v. Citgo Petroleum Corp.*, 2010-2605 (La. 3/13/12), 89 So. 3d 307 at 320. Art. 3547 applies broadly to any case where, by its terms, "another state's policies would be more significantly impaired by the mechanical imposition of the laws of Louisiana." *Id.* Its plain text provides no exception for product liability claims. Consistent with the statutory text, one commentator (involved in drafting Art. 3547) noted, "it is perfectly appropriate to invoke [Art. 3547] … and . . . to award punitive damages under a foreign law in a products case that is otherwise governed by Louisiana law under Article 3545." Symeon C. Symeonides, Louisiana Conflicts Law: Two "Surprises," 54 La. L. Rev. 497, 518 (1994). Although the statute uses the word "exceptional" the statute's application "need not be confined to extraordinary or statistically rare cases. 'Exceptional' might be any case in which most reasonable people would agree that the policies of one state will be significantly more impaired than those of the state whose law is designated as applicable by Articles 3543-3546." *Id.* at 519.

> The same commentator explained elsewhere,
>
> [A]n earlier effort to amend article 3546 so as to prohibit the award of punitive damages in all products liability cases governed by Louisiana law, and to prevent the application of the escape clause of article 3547, was unsuccessful. **When the amendment to article 3545 was proposed and accepted, it was clear that it would remain subject to the escape clause of article 3547.** Consequently, it is theoretically possible for a court to award punitive damages under a foreign law in a products case that is otherwise governed by Louisiana law, if the court is convinced that, with regard to the issue of punitive damages, the case is exceptional enough to warrant invoking the escape clause of article 3547."

Symeonides, Louisiana's New Law of Choice of Law for Tort Conflicts: An Exegesis, 66 Tul. L. Rev. 677 (1992) (emphasis added). Thus, the drafters of Article 3547 intended a choice of law analysis involving "exceptional cases" to include the nature and extent of a defendant's wrongful conduct, and envisioned cases of conduct so egregious that Louisiana law should yield to the law

4

of an involved state which allows punitive damage awards in product liability cases. Indeed, if no such cases exist, then Article 3547 is rendered meaningless.

## II. The Facts In This Case Are Exceptional

If Article 3547 has any meaning (and it must), it surely encompasses this case.

Taking the facts pled as true, this case involves two companies who **knowingly** sold baby food products containing dangerous levels of toxic heavy metals. Plaintiff's Amended Complaint, Rec. Doc. 197 at ¶1. Defendants knew that these heavy metals were severe neurotoxins. *Id.*. And Defendants were fully aware that these neurotoxic heavy metals posed a particular risk to the rapid and critical development of a baby's young brain. *Id.* at ¶42. Even so, Defendants did not test their products to determine just how much of these toxic heavy metals their products contained before selling them for babies like Plaintiff to eat. Nor did Defendants warn parents about heavy metal contamination on their baby food labels so parents, including Plaintiff's parents, could see and consider this information in deciding what to feed their young children. To the contrary, Defendants deliberately crafted their labels, marketing, and promotion to mislead Plaintiff's parents, and other families, into believing their products were free of toxins like heavy metals. *Id.* Repeatedly, Defendants touted these baby foods as safe for consumption, claiming for example that the products adhere to "the strictest standards in the world;" and provide "baby's food full of nutrition while meeting standards strict enough for tiny tummies" as well as other statements and representations that hold out their baby foods as safe for consumption by infants and young children. *Id.*

Defendants knew they could profit by convincing parents that their baby foods were harmless to children, and that full disclosure of the true risks of the toxic heavy metals present in the baby foods would limit the amount of money Defendants would make selling the products. *Id.* at ¶43. Defendants' object was accomplished not only through a misleading label, but through a

comprehensive scheme of selective misleading research and testing, failure to test, false advertising, and deceptive omissions. *Id.*

For example, Nurture sold baby foods after tests showed they contained as much as 180 parts per billion (ppb) inorganic arsenic. *Id.* at ¶18. Over 25 percent of the products Nurture tested before sale contained over 100 ppb inorganic arsenic. *Id.* Nurture's testing shows that the typical baby food product it sold contained 60 ppb inorganic arsenic. *Id.* Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic. *Id.* Hain typically only tested its ingredients, not finished products. Hain used ingredients testing as high as 309 ppb arsenic. *Id.*

But Defendants didn't stop there. Nurture knowingly sold finished baby food products that tested as high as 641 ppb lead. *Id.* at ¶19. And almost 20 percent of the finished baby food products that Nurture tested contained over 10 ppb lead. *Id.* Hain used ingredients containing as much as 352 ppb lead. *Id.* Hain used many ingredients with high lead content, including 88 that tested over 20 ppb lead and six that tested over 200 ppb lead. *Id.*

To put these levels in context, and as pled in the Amended Complaint, FDA has set the maximum contaminant levels in bottled water at 10 ppb for inorganic arsenic and 5 ppb for lead. *Id.* at ¶21. Notably, these limits were created in reference to adult exposure, not exposure to babies. *Id.* Compared to these thresholds, the test results of Defendants' baby foods and their ingredients are 91 times greater than permitted arsenic levels and 177 times greater than permitted lead levels. *Id.* And Defendants hid this information from Plaintiff's parents and others in an effort to induce them to purchase Defendants' products. *Id.* at ¶114, 122).

Aside from the conduct at issue here, this product liability case is unlike others where courts have chosen not to apply Art. 3547. Those cases generally involved products that were well-litigated nationwide by the time those courts considered the facts. *See Fussell v. Johnson &*

*Johnson*, No. CV 20-3474, 2021 WL 5907702, at *1 (E.D. La. Dec. 14, 2021) (Pelvic Mesh); *Shively v. Ethicon, Inc.*, No. CV 3:17-0716, 2018 WL 6816083, at *1 (W.D. La. Dec. 27, 2018) (Pelvic Mesh); *Jefferson Par. Hosp. Serv. Dist. #2 v. W.R. Grace & Co.*, No. CIV. A. 92-0891, 1992 WL 167263, at *1 (E.D. La. June 30, 1992) (Asbestos); *Wilson v. Takata Corp.*, No. CV 16-1356, 2019 WL 2546929, at *1 (E.D. La. June 20, 2019) (Airbags). This case, however, is among a first-of-its-kind litigation in its early stages. Considering the product at issue, food for infants and small children, and the damages alleged, lifelong neurological damage, Defendants' conduct is beyond the pale. And Defendants' efforts to conceal their products' responsibility for the neurological injuries of children around this country are unconscionable. Accordingly, the state where Defendants are located has the greatest interest in preventing this abhorrent conduct. After all, that other state is where Defendants made these reprehensible decisions regarding the marketing and sale of these dangerous products. Thus, this case is exceptional.

| II. | **Shielding Defendants From Punishment For Their Conduct Would Significantly Impair the Interests of Their Home State** |

Art. 3542 provides that in determining which state's policies would be most seriously impaired if its law were not applied to the case, a court should evaluate

> (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

L.A. Civ. Code Art. 3542.

The first prong favors applying New York law against Nurture and Hain. The decisions and conduct that gave rise to this litigation occurred at Defendants' principal places of business in New York—none of this occurred in Louisiana. Although Plaintiff's injury occurred in this state, that injury would never have been sustained but for Defendants' out-of-state conduct.

7

The second prong also favors New York. Article 3542 considers "the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts." In turn, Art. 3515 considers "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." L.A. Civ. Code Art. 3515.

Here, Louisiana's relationship to the parties is limited to the place of injury and place of purchase of the defective product. And, as discovery will show, the purchase of those products occurred exclusively online rather than in physical stores located in Louisiana. New York, on the other hand, is the home state for both manufacturers. And as explained above, New York is the state where the Manufacturer Defendants engaged in the conduct that ultimately harmed Plaintiff.

As for the policies and needs of the interstate system, the analysis again favors applying New York's punitive damages law. New York permits and its courts consistently award punitive damages on the rationale that they "punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489, 868 N.E.2d 189, 196 (2007).

Louisiana's interest in denying punitive damages "lies in the protection of its judicial system, rather than domestic defendants, from what it might consider inherently speculative awards." *Pittman v. Kaiser Aluminum & Chem. Corp.*, 559 So. 2d 879, 883 (La. Ct. App.), writ denied, 563 So. 2d 885 (La. 1990). But as Professor Symeonides explains, while Louisiana's interest is legitimate, it is "not one that should *automatically* prevail in every case before a Louisiana court." Symeonides, 54 La. L. Rev. 497, 519 (emphasis in original). Indeed, "if [another

8

state's] policy of deterring the negligent manufacture of defective products … somehow stops at the [their] border and does not reach out-of-state injuries . . ., why is it that Louisiana's policy of protecting manufacturers from punitive damages somehow operates extraterritorially to protect out-of-state manufacturers who are not even protected by the law of their own state." *Id.* at 521.

Given the facts here, these New York Defendants should not be permitted to hide behind the protection normally afforded to a manufacturer in Louisiana. In conducting business in New York, Defendants fully understood that as citizens of New York, they could face New York's laws for punitive damages. And now that their products have catastrophically injured a child in Louisiana and threaten to injure more children nationwide, Defendants should be held to the benefit of that bargain.

## CONCLUSION

For all these reasons, Defendants' Motion to Dismiss Plaintiff's Punitive Damages Claim should be denied.

Respectfully submitted,

Dated:   October 24, 2023

*/s/Lindsey A. Cheek*
Lindsey A. Cheek (# 34484)
The Cheek Law Firm, LLC
650 Poydras Street, Suite 2310
New Orleans, LA 70130
504-307-4333
Email: LCheek@thecheeklawfirm.com

Alexandra M. Walsh (*pro hac vice*)
Walsh Law PLLC
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
202-780-4127
Fax: 202-780-3678
Email: awalsh@alexwalshlaw.com

Janna L. Maples (*pro hac vice*)

Walsh Law PLLC
1500 4th Avenue N
Ste Apt 202
Nashville, TN 37208
615-879-7804
Fax: 202-780-3678
Email: jmaples@alexwalshlaw.com

Madeleine Brumley Clavier (#37432)
Wagstaff Law Firm
940 N Lincoln St.
Denver, CO 80203
720-208-9402
Email: mclavier@wagstafflawfirm.com

*Attorneys for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 24, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record registered in the federal CM/ECF system.

                                                      */s/Lindsey A. Cheek*
                                                       Lindsey A. Cheek