# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Margaret Watkins and James Watkins, on behalf of Their Minor Son, JMW,<br><br>*Plaintiff,*<br><br>*v.*<br><br>Nurture, LLC; Hain Celestial Group, Inc.; Amazon.com Services LLC; Whole Foods Market Services, Inc.; and Does 1-100,<br><br>*Defendants.* | CIVIL ACTION NO. 22-551<br><br>JUDGE DARREL JAMES PAPILLION<br><br>MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

## PLAINTIFF'S MOTION TO COMPEL

COMES NOW, Plaintiff JMW ("Plaintiff") and hereby respectfully moves this Court for an Order overruling Defendant Nurture, LLC's ("Nurture") objections and requiring Nurture to fully respond to Plaintiff's Second Set of Interrogatories and designate a corporate witness to testify regarding topics noticed in Plaintiff's Amended 30(b)(6) Notice without delay.

## BACKGROUND

On May 20, 2023, Plaintiff propounded his Second Set of Interrogatories on Defendant Nurture. Nurture requested and received an extension, serving its Responses on July 10, 2023.[1] After receiving this extension, Nurture largely failed to response to Plaintiff's Second Set of Interrogatories. On August 23, 2023, Plaintiff sent a highly detailed deficiency letter to Nurture, requesting that Nurture supplement its Responses.[2] Two months later, on October 25, 2023, Nurture supplemented its Responses, correcting many but not all of the deficiencies identified by

---

[1] **Exhibit A**, Nurture's Responses to Plaintiff's Second Set of Interrogatories.
[2] **Exhibit B**, Deficiency Letter to Nurture dated August 23, 2023.

Plaintiff.[3]  Plaintiff now seeks to compel Nurture's full and complete Responses to Interrogatories No. 6, 9, 11, 14, 17, 18, 19, 20, and 21.

On August 24, 2023, Plaintiff served a Notice of 30(b)(6) Deposition of Nurture.[4] After serving the Notice, Plaintiff promptly requested to meet and confer with Nurture, as required by the Rules. On September 18, 2023, Nurture served its Responses and Objections to Plaintiff's 30(b)(6) Topics.[5] In its objections, Nurture made clear that it did not agree to designate a witness concerning a single topic or a portion of any topic. The parties met and conferred on multiple occasions concerning the substance of Plaintiff's Topics and were able to make some progress. On November 2, 2023, Nurture sent a letter describing the parties' discussion on certain topics and agreeing to designate a witness on some topics, while refusing designate a witness to testify regarding others.[6] On November 6, 2023, Plaintiff served an Amended Notice of Deposition, incorporating compromises the parties reached, consolidating duplicative Topics, and removing Topics that Plaintiff agreed to withdraw at Nurture's request.[7] No new topics were added. Plaintiff now moves to compel Nurture to designate a corporate representative on Topics 5(d), 8, 10, 14, and 15 in Plaintiff's November 6, 2023 Amended Notice of Deposition.

The parties have met and conferred in good faith on multiple occasions and have made some progress. Plaintiff now seeks the Court's intervention to resolve outstanding issues and avoid further delays.

## **ARGUMENT**

I.    **Nurture Should be Ordered to Supplement Its Responses to Interrogatories No. 6, 9, 11, 14, 17, 18, 19, 20, and 21, as the Requested Information is Directly Relevant to the Parties Claims and Defenses and Pose Minimal Burden.**

---

[3] **Exhibit C**, Nurture's First Supplemental Responses to Plaintiff's Second Set of Interrogatories.
[4] **Exhibit D**, Plaintiff's Notice of 30(b)(6) Deposition of Nurture.
[5] **Exhibit E**, Nurture's Responses and Objections to Plaintiff's 30(b)(6) Topics.
[6] **Exhibit F**, Nurture's Letter RE Plaintiff's Notice of 30(b)(6) Deposition of Nurture dated November 6, 2023.
[7] **Exhibit G**, Plaintiff's First Amended Notice of 30(b)(6) Deposition of Nurture.

Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "Discovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc*., 561 F.2d 613, 616–17 (5th Cir. 1977).

The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper. *Areizaga v. ADW Corp*., 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp*., 483 F.2d 300, 307–08 (5th Cir. 1973)). "You already know the answer" generally is not a proper objection or answer to a Rule 33 interrogatory. *VeroBlue Farms USA Inc. v. Wulf*, 3:19-CV-764-X, 2021 WL 5176839, at *27 (N.D. Tex. Nov. 8, 2021).

Rule 33(d)(1) requires that answers using the business records option must specify the records to be reviewed in enough detail so that the interrogating party can locate and identify them as easily as the responding party. Thus, it is improper to direct the interrogating party to a mass of business records or offer to make all of the party's business records available. *See* 8B Wright, Miller & Marcus, *Federal Practice & Procedure* § 2178 (Civil 3d 2010); *Heerden v. Board of Supervisors of Louisiana State University*, 2011 WL 293758 (M.D. La. Jan.27, 2011).

Plaintiff describes the remaining deficiencies in Nurture's Responses to Interrogatories No. 6, 9, 11, 14, 17, 18, 19, 20, and 21 below.

**Interrogatory No. 6**: *Identify all Heavy Metal Testing performed on Nurture's Baby Food products or the ingredients used in Nurture's Baby Food products, conducted for any reason by Nurture, Nurture's Contract Manufacturers, Nurture's Suppliers, or any other entity acting on behalf of Nurture, Nurture's Contract Manufacturers, or Nurture's Suppliers. For all testing, please list:*

3

a. *The Baby Food product or ingredient tested;*
b. *The Test parameters;*
c. *The Date of the Test results;*
d. *The entity ordering the Test;*
e. *The Test methodology;*
f. *The laboratory conducting the Test;*
g. *The Limit of Detection for the Test;*
h. *The reason(s) the Test was performed;*
i. *The Test results;*
j. *Any action taken as a result of the Test results; and*
k. *Any certificates of analysis concerning the Heavy Metal Test results.*

Nurture responds to Interrogatory No. 6, pursuant to Rule 33(d), by attaching a list of 4,948 Bates numbers for its internal heavy metal test results. Though subsections (b)-(g), (i), and (k) have been answered through Nurture's document production and its list of Bates numbers, Nurture's list contains numerous duplicates and near duplicates, re-tests, and some test results for what appear to be unreleased product trials. For Plaintiff's experts to calculate Plaintiff's dose and exposure of heavy metals due to Nurture's products, Plaintiff must have a complete set of unique heavy metal test results. At present, because of the way the products are identified on the test results, Plaintiff has no way of removing near-duplicate test results and test results done for research and development purposes on unreleased products that Jimmy did not consume. Thus, the burden of obtaining the answer to Interrogatory No. 6 is not substantially the same for both parties, and Rule 33(d) does not apply. Plaintiff requests that Nurture be ordered to provide Plaintiff with a list of its de-duplicated finished product test results for the products Plaintiff consumed.

**Interrogatory No. 9**: *Identify all final versions of policies, procedures, standard operating procedures, or protocols concerning Heavy Metals or the Manufacture/Processing, Testing, content of Labels or Labeling, quality or food safety, risk assessment, review of scientific or technical literature, sourcing, supply chain, Hazard Analysis, product and ingredient monitoring, packaging, sale, or marketing of Nurture's Baby Food products. For each, please identify the Dates in effect.*

Nurture responds to Interrogatory No. 9, pursuant to Rule 33(d), by attaching a list of 101 Bates numbers for various Standard Operating Procedures or "SOPs." Plaintiff's review of each

of the 101 documents provides only a partial response to Interrogatory No. 9. First, some of the SOPs Nurture lists are undated, and Plaintiff has no way of determining when these policies and procedures took effect. Relatedly, Nurture's SOPs do not indicate when or if the SOP was discontinued or replaced by an entirely new SOP, instead of a new version. Many corporations have document or version control systems in place to track their internal policies and procedures to avoid confusion. Plaintiff does not have access to any such systems and cannot determine the information requested in Interrogatory No. 9 from the documents produced by Nurture.

Additionally, it is unclear which categories of policies and procedures Nurture has withheld pursuant to its objections and which do not exist. Nurture does not appear to have listed policies and procedures concerning the content or review of its product labels or labeling, its review of scientific literature, ingredient sourcing, or hazard analysis. It is unclear whether such policies and procedures do not exist or have not been produced. If Nurture does not have policies and procedures concerning the content or review of its product labels or labeling, its review of scientific literature, ingredient sourcing, or hazard analysis, Plaintiff asks that Nurture be ordered to affirmatively so state.

> **Interrogatory No. 11**: *Identify all actions or efforts taken by Nurture to reduce the levels of Heavy Metals in its Baby Food products to levels as low as reasonably achievable; levels as low as reasonably practical; levels that are unavoidable; or levels that are Significantly Minimized. For each action or effort, please state:*
>
> a. *The Date the action or effort began and ended;*
> b. *The extent to which the action or effort varied by Contract Manufacturer, Supplier, time period, Baby Food product, or ingredient; and*
> c. *The individuals involved in the action or effort.*

Nurture responds to Interrogatory No, 11, in part, by improperly incorporating deposition testimony from the *NC v. Hain, et al. litigation* and referencing entire custodian files in lieu of providing a substantive Response. Interrogatory No. 11 seeks information about Nurture's

efforts to reach the lowest level of heavy metals achievable in its products. This information is relevant to Plaintiff's design defect claim, as it is related to the feasibility of producing baby food with considerably lower levels of heavy metals than the contained in Nurture's products. This information is also relevant to many of Nurture's affirmative defenses, including those concerning compliance with industry standards, compliance with relevant regulations, the safety of the products based on the "state of the scientific and technological knowledge at the time Nurture's products were sold," and its two "good faith" affirmative defenses. (DE 211, Eighth Affirmative Defense, p. 26, Eleventh Affirmative Defense, p. 27, Twelfth Affirmative Defense, p. 27, Thirty-Fifth Affirmative Defense, p. 31, and Forty-First Affirmative Defense, p. 32).

This information cannot be readily obtained through deposition testimony or Nurture's document production. For example, Nurture's Response to Interrogatory No. 11 makes the bare assertion that it engaged in "sourcing and supply chain development." It is unclear what this entails, and it is impossible to pinpoint when Nurture began discussing heavy metal levels with suppliers as one of its purchasing criteria. Plaintiff requests that Nurture be ordered to respond to Interrogatory No. 11.

> **Interrogatory No. 14**: *Identify all actions or efforts by Nurture to control Heavy Metal levels in its Baby Food products and the ingredients used in those products throughout its supply chain, including, but not limited to, actions or efforts concerning Supplier approval, Contract Manufacturer approval, Food Safety Plans, HACCPs, Hazard Analysis, corrective actions, risk assessment, Verification and Validation activities, documentation requirements, records review, Audits, questionnaires, sourcing, and testing. For each, please state the Dates on which the actions or efforts occurred.*

Nurture responds to Interrogatory No, 14, in part, by improperly incorporating deposition testimony from the *NC v. Hain, et al.* litigation, instead of responding fully and substantively. Interrogatory No. 14 seeks information about Nurture's systems for controlling heavy metals in its supply chain. This information is relevant to Plaintiff's design defect claim, as it is related to the

feasibility of producing baby food with considerably lower levels of heavy metals than the contained in Nurture's products. This information is also relevant to many of Nurture's affirmative defenses, including those concerning compliance with industry standards, compliance with relevant regulations, the safety of the products based on the "state of the scientific and technological knowledge at the time Nurture's products were sold," and its two "good faith" affirmative defenses. (DE 211, Eighth Affirmative Defense, p. 26, Eleventh Affirmative Defense, p. 27, Twelfth Affirmative Defense, p. 27, Thirty-Fifth Affirmative Defense, p. 31, and Forty-First Affirmative Defense, p. 32). Plaintiff requests that Nurture be ordered to respond to Interrogatory No. 14.

> **Interrogatory No. 17**: *Identify all statements by Nurture concerning Heavy Metals; toxins, chemicals, or toxicity; brain development; and intellectual, developmental, or behavioral disability or delay made to consumers or to the public in any form, including, but not limited to, statements made via social media, advertisements, publications, press releases, videos, labeling, website, books, newsletters, chats, email, or interview. For statement, please specify:*
>
> > *a.  The Date(s) of the statement;*
> > *b.  The speaker of the statement, if available; and*
> > *c.  Any documentation memorializing the statement.*

Nurture failed to substantively respond to Interrogatory No. 17, stating only that, pursuant to Rule 33(d), "to the extent responsive information exists, Plaintiff may ascertain this information from Nurture's production of custodial documents, including documents from Laura Jones, Anne Laraway, Jason Rosecast, and Megan Sutton." Reference to thousands of documents, some of which may contain some responsive information, does not comply with Rule 33(d).

This information is relevant to Plaintiff's failure to warn claim and causation, which Nurture has vehemently challenged, claiming that heavy metals in baby food cannot be a substantial contributing factor in the development of Plaintiff's injuries. Because Nurture argues that heavy metals in baby food cannot be a substantial contributing factor in impaired brain

development; autism; or any other intellectual, developmental, or behavioral disability or delay; responding to Interrogatory No. 17 should not be "overly broad and burdensome," as the number of statements to the public on this subject should be fairly small. To the extent such statements were made, Plaintiff should be permitted to discover those, especially statements that seem at odds with Nurture's positions in this litigation.

For example, Plaintiff was surprised to find, through independent research, various public statements concerning the impact of heavy metals that were not produced by Nurture during discovery. For example, on May 1, 2014, Nurture tweeted the following:



Even more surprisingly, Plaintiff stumbled across a book, co-authored by Nurture and once advertised on the company website titled, *HappyBaby: The Organic Guide to Baby's First 24 Months*, depicted below:



This book, which remains available for sale online, contains a heading titled, "Possible Health Effects of Toxic Exposures," under which there is a subheading titled, "Autism." The book also contains the following statements:

- "We suspect that it's not genes alone that cause the condition. A growing field of study is focusing on possible environmental triggers that may increase a child's risk of developing autism."
- "One substance that is being investigated as a potential environmental trigger for autism is mercury…the main source of mercury exposures in babies, children, and Mamas is from dietary sources."
- "Baby's brain more than doubles in size during the first year, so it's particularly vulnerable to the effects of certain toxins. The National Academy of Sciences estimates that 1 in 4 developmental behavioral problems in children may be linked to either genetic or environmental factors like exposures to lead, mercury, and pesticides."
- "Lead exposure is one of the more common toxic exposures of childhood. This metal, found in contaminated soil and dust, causes behavior problems, learning disabilities, and memory deficits."

Such statements are clearly relevant to Plaintiff's claims and Nurture's affirmative defenses, yet Plaintiff only discovered their existence by happenstance and substantial time conducting web searches. Nurture employees are surely aware of the existence of such statements, and identifying them requires access to Nurture's employees, which only Nurture has. Plaintiff should not be

forced to litigate this case using only the statements located through web searches. Plaintiff requests that Nurture be ordered to provide a Response to Interrogatory No. 17.

> **Interrogatory No. 18**: *Identify any Communications or Meetings in which any Nurture agent, employee, officer, contractor or retained expert participated regarding warning the public of a potential risks associated with Heavy Metal-containing Baby Food products, whether by amendment of the product label or any other avenue. For each instance, identify:*
>
> > a.  *The individuals and/or entities involved;*
> > b.  *The detailed substance of the discussion;*
> > c.  *The ultimate decision or action taken by Nurture; and*
> > d.  *The Date on which each Communication or Meeting took place.*

Nurture failed to provide a Response to Interrogatory No. 18. Plaintiff has asserted a failure to warn claim, and Nurture has asserted two "good faith" affirmative defenses. (DE 211, Thirty-Fifth Affirmative Defense, p. 31, and Forty-First Affirmative Defense, p. 32). Interrogatory No. 18 seeks information directly relevant to both. Nurture cannot claim that its actions were in good faith and in accordance with the state of the art and human knowledge at the time without permitting Plaintiff to inquire into Nurture's decision-making on the subject.

The burden posed by Interrogatory No. 18 is minimal. Nurture has never included language regarding heavy metals in its product labels and steadfastly maintains that there is no need to warn the public regarding heavy metals in its products. If Nurture never considered issuing such a warning, then identifying internal meetings and communications poses. Nurture need only state that such meetings and communications did not occur. If these meetings or communications occurred, Nurture employees must be well-aware of them and need only be asked. Plaintiff requests that Nurture be ordered provide a response to Interrogatory No. 18.

> **Interrogatory No. 19**: *Identify any scientific literature or technical literature reviewed, evaluated, or analyzed by Nurture concerning the association, correlation, or relationship between heavy metals and autism, developmental delay, or any other intellectual or behavioral disability; the levels or presence of heavy metals in food; and the reduction of levels of heavy metals in food. For each, please identify:*

    a.   *The Date the scientific or technical literature was reviewed, evaluated, or analyzed;*

    b.   *The individual reviewing, evaluating, or analyzing the scientific or technical literature;*

    c.   *The location in which the scientific or technical literature is stored or maintained by Nurture;*

    d.   *The conclusions drawn from the scientific or technical literature;*

    e.   *The way in which the scientific or technical literature was incorporated into any Hazard Analysis or control;*

    f.   *Any actions taken as a result of the scientific or technical literature; and*

    g.   *Any records that concerning Nurture's review, evaluation, or analysis of the study.*

Nurture did not provide a substantive response to Interrogatory No. 19 and referring Plaintiff, pursuant to Rule 33(d), to deposition testimony taken in *NC v. Hain Celestial Group et al.*, which is improper.

Plaintiff asks that Nurture identify the scientific literature it reviewed concerning matters that are the subject of this litigation. Such Interrogatories are routine in similar litigation, and this information is relevant to Plaintiff's design defect claim, as well as Nurture's affirmative defenses concerning compliance with industry standards, compliance with relevant regulations, the safety of the products based on the "state of the scientific and technological knowledge at the time Nurture's products were sold," and its two "good faith" affirmative defenses. (DE 211, Eighth Affirmative Defense, p. 26, Eleventh Affirmative Defense, p. 27, Twelfth Affirmative Defense, p. 27, Thirty-Fifth Affirmative Defense, p. 31, and Forty-First Affirmative Defense, p. 32).

If Nurture did not have a system through which it controls and tasks employees with the review of scientific literature; did not identify, download, and maintain scientific literature in a central repository; and did not incorporate scientific literature into its control of its supply chain, that information is directly relevant to Plaintiff's case. If Nurture failed to take any steps to stay abreast of the scientific literature, that is directly relevant to Plaintiff's case. Plaintiff requests that Nurture be ordered to provide a Response to Interrogatory No. 19.

**Interrogatory No. 20**: *Identify all Nurture or Danone employees, departments, teams, or task forces with responsibility concerning or involvement in determining the content of Nurture's Baby Food Labels, Labeling, warnings, caution statements, or food safety statements. Please describe the role of each concerning Nurture's Baby Food Labels, Labeling, warnings, caution statements, or food safety statements.*

Nurture responds to Interrogatory No. 20 by stating:

Nurture identifies the following departments that in some capacity were involved in determining the content of Nurture's Baby Food Labels, Labeling, warnings, caution statements, or food safety statements: (1) Regulatory, (2) Quality and Food Safety, (3) Marketing, (4) Research and Development, and (5) Legal.

This Response is incomplete because it fails to describe the role of each department concerning Nurture's labels, does not include reference to any Danone departments, teams or task force; and fails to list a single Nurture or Danone employee involved in determining the content of Nurture's labels.

Plaintiff has asserted a failure to warn claim and requires a complete response to Interrogatory No. 20 to prepare for upcoming depositions, identify additional fact witnesses, propound third party discovery, and evaluate entries on Nurture's privilege log. Plaintiff request that Nurture be ordered to fully respond to Interrogatory No. 20.

**Interrogatory No. 21**: *Describe Shazi Visram's title, role, involvement, or ownership interest in Nurture or Nurture's Baby Food at all times from 2012 to present. For each, please specify the Dates. If at any time Ms. Visram did not have an official title or role but served a marketing, public relations, sales, or other unofficial function, please specify.*

Nurture responds to Interrogatory No. 21 only in part, stating:

Ms. Visram was the founder of Happy Family and, from 2003 until December 2017, Ms. Visram's title was "Co-Founder and Chief Executive Officer." From December 2017 until approximately December 2020, Ms. Visram was a spokesperson for the company and held the title "Chairmom of the Board." From December 28, 2020, through December 31, 2022, Ms. Visram continued to serve as a spokesperson for the company, but no longer served on Happy Family's Board.

Nurture objects to providing any additional information, as it "implicates Ms. Visram's privacy rights." After months of attempting service and difficulties with scheduling, Ms. Visram's

deposition is currently scheduled for November 21, 2023. It is routine for plaintiffs in litigation to discover current (and former) company executives' compensation, as evidence of a witness's relationship to a party is generally considered discoverable.

Ms. Visram acted as the public face of Nurture for many years, and is active on social media, television, and various podcasts. A photo of Ms. Visram's son, who like Plaintiff here has autism, is, to this day, featured on Nurture's product packaging. Ms. Visram often acted as a spokesperson for Nurture and has made public statements about heavy metals on various occasions. Plaintiff requests that Nurture be ordered to supplement its Response to include the requested information.

**Interrogatory No. 22**: *Identify the amount of each of Nurture's Baby Food products sold each year from 2012 to present.*

Nurture failed to substantively respond to Interrogatory No. 22. Since third party organizations began issuing statements and reports concerning the heavy metals in Nurture's baby foods, Nurture has made numerous claims about its internal heavy metal testing practices, implying that this testing ensures that its baby foods are safe. Nurture's employee witnesses have testified to this in this litigation. Plaintiffs, on the other hand, argue that Nurture's heavy metal testing was ad hoc, ineffectual, and performed on such a small fraction of the products sold that it could not possibly capture the full range of heavy metal levels that Nurture sold to consumers. Plaintiff also intends to argue, through expert testimony, that Nurture's testing practices were inconsistent with its regulatory obligations.

Plaintiff seeks to determine the number of batches, lots, or units sold by Nurture for each product consumed by Plaintiff in order to show the number of Nurture products that Nurture tested relative to the amount it sold. This information is needed for Plaintiff's expert reports and to illustrate this crucial point for the jury. This information is readily available for most companies,

13

and producing it poses no burden. Plaintiff requests that Nurture be ordered to provide a Response to Interrogatory No. 22.

## II.    Nurture Should Be Ordered to Designate a Corporate Representative Concerning Topics 5(d), 8, 10, 14, and 15 in Plaintiff's First Amended Notice Without Delay.

Nurture has refused to designate a witness concerning Topics 1, 5(d), 8, 10, 14, and 15, on which Nurture currently refuses to provide testimony. These Topics are stated with reasonable particularity and are relevant to the parties claims and defenses. Each Topic is addressed below.

Topic 5(d) concerns amount of heavy metal testing performed relative the number of batches, lots, or units sold by Nurture for each product consumed by Plaintiff in order to show the number of Nurture products that Nurture tested relative to the amount it sold. This information is needed for Plaintiff's expert reports and to demonstrate for the jury that Nurture's testing did not ensure that its products were safe.

Topic 8 concerns Nurture's market research related to heavy metals, "toxins," and consumer perceptions of the meaning of "organic." This Topic is relevant to Nurture's affirmative defense that Plaintiff possessed or should have possessed good and adequate knowledge which negated any need for warning. (DE 211, Forty-Third Affirmative Defense, p. 33).

Topic 10 concerns Nurture's efforts to control heavy metals in its supply chain. As previously described, this is not only relevant to feasibility but also Nurture's affirmative defenses, including those concerning compliance with industry standards, compliance with relevant regulations, the safety of the products based on the "state of the scientific and technological knowledge at the time Nurture's products were sold," and its two "good faith" affirmative defenses. (DE 211, Eighth Affirmative Defense, p. 26, Eleventh Affirmative Defense, p. 27, Twelfth Affirmative Defense, p. 27, Thirty-Fifth Affirmative Defense, p. 31, and Forty-First Affirmative Defense, p. 32).

14

Topic 14 concerns the development, approval, content, and application of Nurture's labels for the products consumed by Plaintiff. This is clearly relevant to Plaintiff's failure to warn claim, and Plaintiff must be able to admit the product labels into evidence and determine how Nurture arrived at the content of those labels.

Topic 15 concerns Nurture's interaction with other baby food manufacturers and trade groups concerning heavy metals in baby food. Nurture's current production of documents suggests some level of information sharing and coordination among manufacturers, and this information is relevant to Nurture's affirmative defenses, including those concerning compliance with industry standards, compliance with relevant regulations, the safety of the products based on the "state of the scientific and technological knowledge at the time Nurture's products were sold," and its two "good faith" affirmative defenses. (DE 211, Eighth Affirmative Defense, p. 26, Eleventh Affirmative Defense, p. 27, Twelfth Affirmative Defense, p. 27, Thirty-Fifth Affirmative Defense, p. 31, and Forty-First Affirmative Defense, p. 32).

## CONCLUSION

Based on the foregoing, Plaintiff respectfully asks the Court to overrule Nurture's objections and order Nurture to fully respond to Plaintiff's Second Set of Interrogatories and designate a corporate witness to testify regarding the Topics in Plaintiff's First Amended Notice of 30(b)(6) Deposition without delay.

Date: November 7, 2023                    Respectfully submitted,

*/s/ Madeleine Clavier*
Madeleine Brumley Clavier (#37432)
Aimee H. Wagstaff (*pro hac vice*)
Wagstaff Law Firm
940 N Lincoln St.
Denver, CO 80203
Tel: (720) 208-9402
mclavier@wagstafflawfirm.com

15

awagstaff@wagstafflawfirm.com

Janna L. Maples (*pro hac vice*)
Walsh Law PLLC
1500 4th Avenue N
Ste Apt 202
Nashville, TN 37208
Tel: (615) 879-7804
Fax: (202) 780-3678
jmaples@alexwalshlaw.com

Alexandra M. Walsh (*pro hac vice*)
Walsh Law PLLC
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
Tel: (202) 780-4127
Fax: (202) 780-3678
awalsh@alexwalshlaw.com

Lindsey A. Cheek (#34484)
The Cheek Law Firm, LLC
650 Poydras St., Suite 2310
New Orleans, LA 70130
Phone: (504) 304-4333
Fax: (504) 324-0629
lcheek@thecheeklawfirm.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 7, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record registered in the federal CM/ECF system.

/s/ *Madeleine Clavier*