**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MARGARET WATKINS AND JAMES WATKINS, ON BEHALF OF THEIR MINOR SON, JMW | CASE NO. 2:22-CV-551 |
| Plaintiff, | JUDGE DARREL J. PAPILLION |
| v. | |
| NURTURE, LLC; HAIN CELESTIAL GROUP, INC.; AMAZON.COM SERVICES LLC; WHOLE FOODS MARKET SERVICES, INC.; AND DOES 1-100 | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| Defendants. | |

**REDACTED MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL UNREDACTED RECORDS**

Defendants Nurture, LLC ("Nurture") and Hain Celestial Group, Inc. ("Hain") (collectively, "Defendants") submit this memorandum in support of their Motion to Compel Plaintiff to Produce Unredacted Records. Specifically, Defendants seek to compel unredacted versions of the following records, all of which Plaintiff produced with extensive redactions:

Redacted

Defendants believe that the widespread redactions to these records are unnecessarily overbroad and conceal relevant, discoverable information. For the reasons set forth below, Defendants ask the Court to compel production of unredacted records subject to the protective order entered in this case.

## INTRODUCTION

Plaintiff JMW ("Plaintiff") asserts through his parents and guardians *ad litem* that he developed autism spectrum disorder (ASD) from eating baby food manufactured or sold by Defendants. Plaintiff's causation theory is novel. The prevailing view in the scientific community is that ASD is a heritable disorder primarily driven by genetic factors.[1] Moreover, the genetic factors that contribute to ASD overlap with those that underpin *other* neurodevelopmental and psychiatric conditions, including depression, anxiety, substance use, ADHD, and others. Accordingly, for Defendants to demonstrate that Plaintiff's ASD was caused by genetics, rather than baby food, Defendants (and their experts) must understand the nature and extent of psychiatric and neurodevelopmental conditions, if any, in JMW's family members.

Additionally, to effectively defend Plaintiff's claim that he is severely impacted by his ASD and will continue to be throughout his life, the existence and degree of behavioral or emotional issues in and diagnoses and related treatment for Plaintiff's caretakers and family members who comprise his household are directly relevant to Plaintiff's development, ability to progress through targeted interventions, and long-term prognosis.

Though the four sets of records that are the subject of the present motion relate directly to Plaintiff's genetics and home environment, Plaintiff produced these records to Defendants with pervasive—sometimes, near wholesale—redactions. Collectively, Plaintiff redacted hundreds of full pages from these records such that Defendants are unable to determine, even at a high level, the type of information being withheld. Other records have been redacted to such an extent that

---

[1] *See* Cirnigliaro et al., *The contributions of rare inherited and polygenic risk to ASD in multiplex families*, PROCEEDINGS OF THE NATIONAL ACADEMY OF SCIENCES, July 28, 2023, Vol. 120, Issue 31, e221563210(noting "ASD is also highly heritable" and "[t]he majority of [] risk genes [for ASD] appear to act pleiotropically, contributing to a broad range of neurodevelopmental disorders in addition to ASD.")

the small amount of visible information is incomprehensible. No log of redactions from which Defendants would be able to ascertain the basis of the redactions has been provided. Based on the limited visible portions of the records, Defendants believe Plaintiff is withholding relevant and discoverable information that should be produced subject to the Parties' protective order.

## RELEVANT BACKGROUND

The records at issue in this Motion have been the subject of a lengthy dispute between the parties. Defendants initially requested medical and psychiatric authorizations from Plaintiff's family members *a year ago* in November 2022. *See* Ex. 1, Defendants' Document Requests to Plaintiff. Mr. Watkins, as counsel for Plaintiff at that time, refused to provide any release forms. In February 2023, Mr. Watkins withdrew as counsel. Plaintiff's current lead counsel thereafter agreed to the release of medical records for Plaintiff's parents, but not any psychiatric records. After numerous failed attempts to meet and confer, Defendants brought a Motion to Compel on July 25, 2023, seeking production of any psychiatric records from Plaintiff's parents and medical and any psychiatric records from Plaintiff's sibling. Rec. Doc. 126-1.

The Court granted Defendants' Motion in part as to ███████ Redacted ████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████ *See* Ex. 2, August 23, 2023 Transcript of Motion Hearing, Docket No. 22-CV-551 ("Tr.") at 23:24-24:2, 24:10-13, 34:23-35:1. The Court directed Defendants to have their experts prepare a list of records and information necessary to render their opinions. *Id.* at 13:11-16. Based on that list, Plaintiff's counsel was to review the records, redact any "irrelevant" information, and produce the redacted documents to defense counsel. *Id.* at 13:17-20.

The Court deferred its ruling on Defendants' motion to compel Plaintiff's sibling's records pending a contradictory hearing. Minute Entry, Rec. Doc. 178. That hearing was ultimately cancelled as moot following Plaintiff's counsel's representation that his sibling's records would be provided to Defendants. Consent Motion to Cancel Contradictory Hearing, Rec. Doc. 226; Order, Rec. Doc. 226-1.

Defendants provided Plaintiff with a list of information their experts would need to complete their assessments. Ex. 3, Defendants' experts' list of documents. This list captured various categories of records and information related to any family history of behavioral, cognitive, neurodevelopmental, mental health and psychiatric disorders, including (1) treatment of those conditions, including medications, (2) symptoms or signs consistent with those conditions, including self-reported symptoms, (3) results of any testing/assessment for those conditions, (4) other family history of those conditions, and (5) any educational and behavioral difficulties. *Id.* Defendants' experts also identified potentially relevant categories of providers/sources of necessary information, among which were "health care providers," "psychologists," "therapists," "family therapists," and "schools, including school psychologists and [records] from disciplinary events." *Id.*

Plaintiff produced four sets of heavily redacted records in response to Defendants' list:



Defendants believe Plaintiff's excessive redactions to these records withhold relevant and discoverable information.

Defendants' counsel attempted to resolve this discovery dispute before filing the present Motion. On October 25, 2023, Defendants sent meet and confer correspondence to Plaintiff's counsel, requesting unredacted copies of the records and setting forth in detail the reasons the records should be produced. Ex. 4, October 25, 2023 Correspondence from Mary Gately. Recognizing the sensitive nature of the information, Defendants' counsel offered to agree to treat these records with a heightened degree of protection. *Id.* Plaintiff's counsel responded on November 2, 2023, disregarding Defendants' counsel's proposal for heightened protection and asserting that Plaintiff's redactions were proper. Ex. 5, November 2, 2023 Correspondence from Madeleine Brumley Clavier.

## ARGUMENT

### A.     The Subject Records Contain Highly Relevant, Discoverable Information.

The scope of discovery under Rule 26(b) is broad. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Under Rule 26, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." *ING Bank N.V. v. M/V Portland, IMO No. 9497854*, No. 3:15-cv-00805-JWD-RLB, 2016 WL 3365426, at *8 (M.D. La. Jun. 16, 2016) (internal quotation marks omitted) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)); *Jeld-Wen, Inc., v. Nebula Glass Int'l, Inc.*, No. 05-60860-CIV, 2007 WL 1526649, * 1 (S.D. Fla. May 22, 2007) ("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action.").

The records at issue in this Motion are unquestionably relevant to significant issues in the present lawsuit. First, as part of their defense of this matter, Defendants are entitled to discover evidence of JMW's genetic propensity to develop ASD based upon any relevant health conditions in his family. *See Kirk v. Schaeffler Grp. USA, Inc.*, No. 3:13–cv–05032–DGK, 2014 WL 2807681, at *1-3 (W.D. Mo. Jun. 20, 2014) (plaintiff's mother's medical records were directly relevant to the "crucial issue" as to whether the plaintiff's injury had a genetic cause). Because ASD has been genetically linked to a family history of other psychiatric and neurodevelopmental disorders, Defendants must understand the full scope of any such conditions in Plaintiff's family members. *See* Brainstorm Consortium et al., *Analysis of shared heritability in common disorders of the brain*, SCIENCE, 2018 Jun 22, Vol. 360, Issue 6395 (revealing genetic overlap across different psychiatric disorders); *see also* Cross-Disorder Group of the Psychiatric Genomics Consortium, *Genomic Relationships, Novel Loci, and Pleiotropic Mechanisms across Eight Psychiatric Disorders*, CELL, 2019 Dec 12, Vol. 179, Issue 7, 1469-1482 (finding that ASD genes overlap with depression, ADHD, schizophrenia, and bipolar disorder).

Second, Defendants must be permitted to explore through discovery factors which may affect JMW's damages, which he claims are extensive and permanent. The family dynamic in JMW's home and among caregivers involved in JMW's care and treatment for his ASD is relevant to his development, progress and, ultimately, long-term outcome. *See Ruelas v. Western Truck & Trailer Maint., Inc.,* No. P:18-CV-00002-DC, 2019 WL 13150021, at *4 (W.D. Tex. Jun. 20, 2019) (discovery related to conditions affecting damages is relevant); *see also, e.g.,* Eshraghi et al., *Implications of parental stress on worsening of behavioral problems in children with autism during COVID-19 pandemic: "the spillover hypothesis"*, MOL PSYCHIATRY, 2022 Apr, Vol. 27, Issue 4, 1869–1870 (finding that "[t]he increase in parental stress levels may alter parenting

behaviors which, in turn, can have an effect on their child's ASD symptoms and behavior problems" and "there are environmental and other family system factors that can impact outcomes"); Estes et al., *The effects of early autism intervention on parents and family adaptive functioning*, PEDIATR MED, 2019 Jun, 2:21 ("Elevated levels of parenting-related stress and psychological distress in parents of young children with ASD have the potential to disrupt family function and may also impact the effectiveness of early interventions [in children with ASD]."). Accordingly, records revealing any disruptive behaviors, mental or emotional issues, and familial stress and conflict among family members who comprise JMW's household and are involved in JMW's treatment for ASD are highly relevant to JMW's claimed damages in this case.

Based on the limited visible portions of the four sets of records that are the subject of this Motion, Defendants believe Plaintiff's redactions improperly withhold information relevant to Plaintiff's genetic propensity to develop ASD and his ability to make progress in his disorder. Without access to this information, Defendants will be deprived "of the discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Jones v. Forrest City Grocery, Inc.*, No. 4:06CV00944-WRW, 2007 WL 841676, at *1 & n.3 (E.D. Ark. Mar. 16, 2007) (quoting *Trevion v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983)).[2]

### B. Plaintiff Cannot Justify the Overbroad Redactions to the Records.

Given the low bar for relevance and the highly probative nature of the records at issue, Plaintiff cannot meet his burden to demonstrate that the redacted information is irrelevant. As the

---

[2] To the extent Plaintiff seeks to analogize his redactions to personal records with Defendants' redaction of confidential information from their document productions, the comparison is inapt. Because Defendants Nurture and Hain are direct competitors in the highly competitive baby food market, a protective order is not necessarily sufficient to protect the release of confidential information. However, the same confidentiality concerns are not present with respect to medical and academic information produced under a protective order.

party resisting discovery, Plaintiff bears the burden of establishing facts sufficient to justify the withholding of information from the defense. *See Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 19-11793, 2021 WL 4243380, at \*2 (E.D. La. Jul. 1, 2021) (Currault, M.J.) ("Discovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.'") (citation omitted). Here, Plaintiff has provided no explanation for the extensive and wholesale redactions to these records, even after Defendants pressed for further information. This is because, as demonstrated below, Plaintiff's redactions to the four sets of records were improperly overbroad.

Redacted

Redacted

Redacted

Based on the limited viewable portions of Redacted records, Defendants do not believe the significant redactions cover "completely irrelevant information." Ex. 2, Tr. at 12:9-11. Defendants believe additional relevant information exists in these records and should be provided.

### 2.     Plaintiff Over Redacted Records for His Sibling

Plaintiff similarly withheld relevant information about his sibling, Redacted, in records from

Redacted

Plaintiff produced these records to Defendants with, collectively, over one hundred whole-page redactions. Again, based on the limited visible portions of the records as well as the types of records (e.g., Redacted ), Defendants believe Plaintiff is withholding responsive information.

Redacted

There is no indication, either from the document itself or a separate explanation from Plaintiff, as to why the redacted lines contain irrelevant information. Rather, the discussion surrounding the redacted paragraphs suggests they contain relevant information regarding Redacted

Redacted likewise contain unexplained, heavy redactions. Thirty-five pages have been redacted entirely, providing Defendants with very limited ability to discern even the type of record being withheld (e.g., imaging, visit notes, hospital admission, etc.). Redacted

████████ Redacted ████████  However, certain redacted records appear directly related to ██Redacted██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

       ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  Again,

Defendants' experts must have the opportunity to fully consider ██Redacted██'s relevant diagnoses to

form their opinions in this case.

Finally, approximately eighty full pages from ████████ Redacted ████████

████████████████████████████████████████████████

████████████████████  Plaintiff's redactions are so extensive that, again, Defendants cannot

discern even the type of record under the redactions. ████████ Redacted ████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Redacted ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**CONCLUSION**

For the foregoing reasons, Defendants request that the Court issue an Order compelling

Plaintiff to produce unredacted copies of ████████ Redacted ████████

████████████████████████████████████

Dated: November 10, 2023          Respectfully submitted,

**IRWIN FRITCHIE URQUHART & MOORE LLC**

*/s/ Camala E. Capodice*
QUENTIN F. URQUHART, JR. (La. Bar No. 14475)
CAMALA E. CAPODICE (La. Bar No. 29117)
GABRIEL J. WINSBERG (La. Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101
qurquhart@irwinllc.com
ccapodice@irwinllc.com
gwinsberg@irwinllc.com

**DLA PIPER LLP (US)**
Lyn Pruitt (admitted *pro hac vice*)
10809 Executive Center Drive, Suite 205
Little Rock, AR 72211
Telephone: (214) 743-4582
lyn.pruitt@dlapiper.com

Mary E. Gately (admitted *pro hac vice*)
Paul D. Schmitt (admitted *pro hac vice*)
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4507
mary.gately@dlapiper.com
paul.schmitt@dlapiper.com

*Counsel for Nurture, LLC*

*s/ Emily E. Eagan*
EMILY E. EAGAN (#29166)
JOHN C. WEGMANN (#38437)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
Suite 4800 – Hancock Whitney Center
701 Poydras Street
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Email: eeagan@glllaw.com
Email: jwegmann@glllaw.com

AND

*/s/ Michael X. Imbroscio*
Michael X. Imbroscio (*Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 778-5868
Email: mimbroscio@cov.com

*Counsel for The Hain Celestial Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Camala E. Capodice*

15