# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARGARET WATKINS AND JAMES WATKINS, ON BEHALF OF THEIR MINOR SON, JMW, | CIVIL ACTION NO. 22-551 |
| *Plaintiff*, | JUDGE DARREL JAMES PAPILLION |
| v. | |
| NURTURE, LLC; HAIN CELESTIAL GROUP, INC.; AMAZON.COM SERVICES LLC; WHOLE FOODS MARKET SERVICES, INC.; and DOES 1-100, | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| *Defendants*. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL UNREDACTED RECORDS

NOW INTO COURT, comes Plaintiff, who respectfully submits this brief in opposition to Defendants' Motion to Compel Unredacted Records.

Defendants' Motion to Compel should look familiar to the Court. It is essentially the same Motion that Defendants already brought, and the Court already denied, for unfettered access to highly sensitive information including the completely unredacted psychotherapy notes of ██ ████████ and unlimited access to unredacted sets of all medical, psychiatric, and educational records of a minor child who is not even party to this lawsuit.[1] *See* Rec. Doc. 126-1; Rec. Doc. 178. The current motion does two things: (1) regurgitates arguments that this Court has previously considered and rejected, and (2) attempts new, previously unarticulated theories for why Defendants should have access to the information that Plaintiff redacted pursuant to this Court's

---

[1] While the Court, constrained by its ability under Louisiana law to order the records of a non-party without a prior contradictory hearing, deferred as to JMW's half-sibling's records, the Court clearly indicated it was *not* inclined to order the wholesale production of JMW's half-sibling's every medical, psychological, and educational record. *See* Rec. Doc. 254, Ex. 2 at 8:22-9:3; 12:9-11; 44:2-4; 44:10-18.

Order and guidance. Defendants' rehashed arguments fail for the same reason the Court initially rejected them, and the new arguments have zero basis in science or law.

Defendants first contend that they are entitled to completely unredacted therapy notes because "records revealing any disruptive behaviors, mental or emotional issues, and familial stress and conflict among family members who comprise JMW's household and are involved in JMW's treatment for ASD" are relevant to JMW's damages. Rec. Doc. 254 at 7.  This stunningly broad theory of relevance is not only severely attenuated (and wrong), it also completely degrades the privacy interests so deeply implicated by the private communications a person has with his or her mental health therapist. The Court has been very clear in its previous guidance: Defendants may obtain access to confidential and sensitive mental health records *only* if one of their experts deem those records necessary to render an expert opinion. Rec. Doc. 178. Defendants' new and wide-ranging damages theory is completely untethered to any expert need.



Defendants' insistence that they must know █████████████████████████████ ████████████████████████████████████ is equally unfounded.  According to Defendants, they need to delve into these private details of ██████████ personal life to assess JMW's propensity to develop ASD. Yet, Defendants cite no literature linking ████████████████ ███████████████ to the development of ASD; nor do they explain how knowing ████ ████████████████████████ sheds light on the heritability of his child's autism.

Lastly, Defendants continue to seek the complete medical, psychiatric, and educational records of JMW's minor half-sibling (hereinafter "██████"), objecting to any ***redactions at all*** of these non-party records.  Defendants would like these records to "demonstrate *any* behavioral difficulties" ██████ might have and to "indicate severity of…*undiagnosed* learning difficulties." Rec. Doc. 254 at 13 (emphasis added). If Defendants believe they can avoid liability by attributing JMW's ASD entirely to "genetic propensity," rather than the neurotoxins in their baby food, that is their right. But the notion that this anticipated defense entitles them to root around unconstrained in the private medical records of a non-party child is specious.

2

In short, Defendants' demands completely disregard the Court's prior Order and guidance and are inconsistent with legitimate discovery objectives. Plaintiffs respectfully request that this Court deny Defendants' motion in full.

## RELEVANT BACKGROUND

On July 25, 2023, Defendants Nurture and Hain filed a motion to compel the psychotherapy notes for ███████████████████████████████████████████ and the psychiatric, medical, and educational records for JMW's minor half-sibling, ████ Rec. Doc. 126. In their motion to compel, Defendants argued that the records sought were likely to contain information necessary to assess JMW's genetic propensity to develop ASD. Rec. Doc. 126-1. In opposing the motion, Plaintiff argued that psychotherapy notes were separate and distinct from the medical record and were "not intended to communicate to, or even be seen by, persons other than the therapist." Rec. Doc. 166 at 7 (quoting 65 F.R. 82622-23. Additionally, Plaintiff argued that the disclosure of these notes is disfavored and runs counter to important policy goals of creating a zone of confidentiality necessary for individuals to successfully seek treatment. Rec. Doc. 166 at 7, citing *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) and Advisory Committee's Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972). Plaintiff also argued that the production of ████ entire medical, psychiatric, and educational records was overbroad and sought disclosure of information not necessary to assess JMW's genetic propensity to develop ASD. Rec. Doc. 166 at 8-10.

On August 23, 2023, the Court held oral argument on Defendant's motion. At oral argument, counsel for Defendants repeatedly emphasized the need to assess JMW's family history and genetics. *See* Rec. Doc. 254, Ex. 2 at 5:20-24; 7:20-24; 8:1-4; 11:13-14. At one point counsel for Defendants also suggested that these records may contain information about JMW's possible co-exposures. *Id*. at 10:17-22. No other rationale for seeking these records was ever put forth.

At oral argument, the Court said quite clearly that while Defendants are entitled to discover medical records related to the assessment, testing, evaluation, diagnosis, medication, and treatment of conditions their experts believe are related to JMW's genetic propensity to develop ASD, the

requests that formed the basis of Defendants' motion were overbroad, overinclusive, and an invasion of privacy. Rec. Doc. 254, Ex. 2 at 8:22-9:3 (the Court: "My problem is you're phrasing it as a broad, can we get medical, psychiatric, and educational records and I think that's not the issue. To me the issue is how much or what portions of those records are relevant and discoverable and proportional to the needs of the case. Not everything. Because, clearly, everything is not going to be relevant, and you're overbroad."); *Id*. at 12:9-11 (the Court: "But you wouldn't get all of the notes because that's overinclusive, and it is an invasion of privacy that's unnecessary if it's completely irrelevant information.").

With the benefit of briefing and argument, the Court charted a middle ground. With regard to the psychotherapy notes of ███████████████ the Court said that Defendants were to provide plaintiffs with a list prepared by Defendants' experts with "very strict guidelines" on what the experts needed that identified "the particular parameters or topics or things they would deem relevant to their opinions." Rec. Doc. 254, Ex. 2 at 12:5 and at 18:19-21; *See also* Rec. Doc. 178 at 2. Plaintiff was then to "produce redacted records and responsive relevant records rather than every medical record that covers every potential topic." Rec. Doc. 254, Ex. 2 at 18:22-24.[2] With regard to ██████ records, the Court signaled an inclination to take a similar approach.[3] *See* Rec. Doc. 254, Ex. 2 at 35:5-7.

On August 30, 2023, counsel for Nurture sent a list of information that they represented that Defendants' experts would need to complete their assessment. Rec. Doc. 254, Ex. 3. On September 1, 2023, the parties met and conferred. Plaintiff expressed his view that Defendants'

---

[2] Consistent with these comments, Court's subsequent Order stated that, "Nurture's experts will prepare a list of necessary information needed from Plaintiffs' records to enable the experts to render their opinions, after which Plaintiffs' counsel must review the records, redact any non-responsive information, and produce the redacted documents to Defense counsel." Rec. Doc. 178 at 2.

[3] The Court also scheduled a contradictory hearing. *See* Rec. Doc. 254, Ex. 2 at 35:5-7; Rec. Doc. 178 at 2). That hearing was first continued based on the parties' representations that they were working towards resolution of the discovery requests. *See* Rec. Doc. 190, 191. This hearing was later canceled subsequent to Plaintiff's agreement to collect the records and to produce relevant portions records in line with the Court's guidance at the hearing. Rec. Doc. 229.

list was overbroad and ill-defined. Among other things, Plaintiff noted that the list sought records and therapy notes containing, "self-reported symptoms and/or signs consistent with any…mental health or psychiatric disorder," and "information regarding…behavioral abnormalities." Plaintiff counsel expressed concerns that, without further definition or explanation, "any mental health disorder" was overbroad as there are many conditions in the DSM-5 that have no relationship to ASD.[4] Plaintiff pointed out that Defendants' overbroad list was inconsistent with the Court's comments suggesting that records pertaining to psychiatric conditions not tied to a genetic predisposition to develop ASD were irrelevant and not subject to discovery. *See* Rec. Doc. 254, Ex. 2 at 44:10-18, (the Court: "[T]here may be some psychological disorder that has never been tied to ASD…that wouldn't be relevant. If there's no science that ties it to the ASD…it doesn't get discovered because there's no tie, so it's not relevant.").

Plaintiff also expressed concern that Defendants' request for records pertaining to any, "signs consistent with any…psychiatric disorder" could be interpreted to include the full spectrum of human emotion (ex. sadness as consistent with depression, elation as consistent with mania, anger as consistent with oppositional defiance disorder, worry as consistent with generalized anxiety disorder, etc.) that would result in the overproduction of completely irrelevant and highly private information that has no bearing on JMW's genetic propensity to develop ASD. Rec. Doc. 254, Ex. 3 at 1. Plaintiff also expressed concern that "information regarding….behavioral abnormalities" was impossibly vague. *Id*. Despite Plaintiff's concerns, Defendants declined to narrow or further clarify what was being requested and said that Plaintiff's counsel understood what Defendants' experts were looking for based on experience in past baby food litigation. Coming out of the meet and confer, Plaintiff agreed to provide a list of ██████ providers who might have records related to ██████ or other arguably relevant diagnoses and begin collecting those records. The parties agreed that upon Plaintiff's production of these records and those of

---

[4] Those disorders include but are not limited to sleepwalking (307.46) (F51.3), erectile disorder (302.72) (F52.21), specific phobia (300.29) (F40.298), caffeine withdrawal (292) (F15.93), enuresis (307.6) (F98.0), and gender dysphoria (302.6) (F64.9).

 pursuant to the Court's order and guidance, the parties could further discuss any disagreements.

Plaintiff followed the process ordered by the Court. Plaintiff collected and produced relevant portions of ████████ therapy notes from ████████ Plaintiff also produced a certification signed by ████████ stating that she had no records to produce.

Plaintiff also collected and produced relevant portions of ████ records from ██ ████████████████████████████████████████████

Additionally, Plaintiff collected and produced records from the ████████████ ████████████ after redacting only the personal identifying information those records contained. Plaintiff also produced a certification from ████████ indicating that she had provided the complete file in her possession.

On October 25, 2023, Plaintiff received correspondence from counsel for Defendants. That correspondence detailed Defendants' dissatisfaction with Plaintiff's production and redactions and asserted that additional information contained in the therapy notes and records should be produced.[5] *See* Rec. Doc. 254, Ex. 4. Defendants' October 25, 2023 letter argued that Plaintiff's redactions were improper on the basis of wholly new rationales for seeking ████████ therapy notes that had not been raised in their prior motion and argument and that contravened the Court's guidance on the issue. *Id*. Plaintiff sent a lengthy response that included detailed explanations for what portions of the therapy notes and records Plaintiff did and did not produce and why. *See* Rec. Doc. 254, Ex. 5. At a high level, Plaintiff communicated that he had produced those portions of notes and/or records that contained:

- Any reference to an actual diagnosis of any mental health condition or psychiatric disorder.

---

[5] Despite Defendants' assertions that their meet and confer correspondence requested "unredacted copies of the records and setting forth in detail the reasons the records should be produced" (Rec. Doc. 254 at 5), the October 25, 2023 plainly does not contain a request for complete and unredacted versions of any note or record or purport to substantiate any rationale for why unredacted versions of any therapy note or record was warranted in this case.

- Any reference to symptoms of any diagnosed mental health condition or psychiatric disorder.
- Any reference to a family history of any diagnosed mental health condition or psychiatric disorder.
- Any reference to any suspected diagnosis or condition for which that person sought medical evaluation, care, or treatment except where any such reference is in regards to distant relatives (i.e. cousins or beyond).
- Any reference to any medications used for treatment of any mental health condition or psychiatric disorder.
- Any reference to information regarding developmental milestones, motor development, speech development, educational difficulties, and behavioral issues.

Rec. Doc. 254, Ex. 5 at 3. Plaintiff also indicated that he would continue to produce portions of any medical records and therapy notes for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that reflect this information. Shortly after sending the letter, Plaintiff produced additional records for ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓. Defendants did not reach out to Plaintiff to ask for additional clarification or to ask for some additional discrete category of information or subset of documents be produced. Instead, Defendants responded by filing the instant Motion seeking complete and unredacted sets of ▓▓▓▓▓▓ psychotherapy records and complete and unredacted sets of medical, psychiatric, and educational records for ▓▓▓ [6]

## ARGUMENT

While discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials, discovery, nevertheless, has "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Under Rule 26(b)(2)(c), "the court must limit the frequency of extent of discovery allowed by these rules if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, and less expensive [and] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. Pro.

---

[6] Plaintiff has also since produced a signed certification from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ indicating that they have no additional records for ▓▓▓▓▓▓▓ beyond what was already produced; additional records from ▓▓▓▓▓▓▓▓▓; and additional records from ▓▓▓▓▓▓▓▓▓▓▓▓▓.

26(b)(2)(C)(i)-(ii). Permissive discovery rules have "never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 19-11793, 2021 WL 4243380 (E.D. La. July 1, 2021) (Currault, M.J.) (quoting *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). "[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

As detailed further below, Plaintiff's production of ███████ therapy notes and ████ medical, psychiatric, and educational records is in keeping with the Court's Order and guidance indicating that Defendants are not entitled to unredacted versions of these notes and records. Plaintiff's production provides all of the, "portions of records that are relevant and discoverable and proportional to the needs of this case" and balances Defendants' need for information relevant to their defenses with the significant privacy interests at play. *See* Rec. Doc. 254, Ex. 5 at 3, quoting Rec. Doc. 254, Ex. 2 at 8:25-9:2.

As to the therapy notes of ███████, Defendants' Motion for wholly unredacted therapy notes is an untimely objection to this Court's prior Order. *See* Local Rule 72.2; Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to."). This Court should deny Defendants' Motion on this basis alone.

Even if not untimely, there is no reason for this Court to retread old ground. This Court has already decided that, given the substantial privacy interests at play, discovery of the unredacted therapy notes of ███████ is not proportional to Defendants' need for discovery on their genetic causation defense. And Defendants' new rationales for seeking what this Court previously denied are even less compelling. These new rationales are not supported either by Defendants' experts or by the literature Defendants cite in support.

Furthermore, as the Court made clear at the August 23, 2023 hearing, the Court cannot compel the disclosure of the records of a non-party without prior contradictory hearing, so this issue too is not properly before the Court. Regardless, the Court previously indicated that the

discovery of the complete medical, psychiatric, and educational records of ██████ is not at all proportional to the needs of the case. *See* Rec. Doc. 254, Ex. 2 at 8:22-9:3; *Id*. at 44:2-4**.** Nothing has changed so as to warrant reconsideration of that inclination. If anything, the contents of the records produced by Plaintiff to-date demonstrate that evaluating JMW's genetic propensity to develop ASD does not necessitate production of an unredacted set of ██████ medical, psychiatric, and educational records.

### A. Defendants Should Not Be Permitted to Belatedly Request Reconsideration of This Court's Order or Advance New Rationales for Relevancy Waived When Not Previously Raised. Regardless, the New Rationales are Uncompelling.

Defendants' Motion amounts to an untimely request for reconsideration. *See* Local Rule 72.2; Fed. R. Civ. P. 72(a). Regardless, with regards to Defendants' arguments about the need for these records to assess the genetic propensity to develop ASD, there is nothing new to consider. On this point, Plaintiff stands by his arguments articulated in his opposition to Defendants' first Motion to Compel including that therapy notes are highly sensitive, not part of the medical record, and likely to contain only minimal relevant information. *See* Rec. Doc. 166, Rec. Doc 254, Ex. 2. Additionally, arguments for why ██████ therapy notes are relevant not raised in prior briefing or at argument on this issue are waived.

Specifically, at no point in time, either in the prior motion to compel or at oral argument, did counsel for Defendants argue that "records revealing any…familial stress and conflict among family members…are highly relevant to JMW's claimed damages in this case" or that "the family dynamic in JMW's home and among caregivers involved in JMW's care and treatment for his ASD is relevant to his development, progress and, ultimately, long-term outcome." Rec. Doc. 254 at 7, 6. In fact, at oral argument, counsel for Defendants assured the Court that the opposite was true— that Defendants were only seeking information necessary to evaluate JMW's genetic propensity to develop ASD. *See* Rec. Doc. 254, Ex. 2 at 11:12-14 (Ms. Pruitt: "It's not the stress and all of that that goes to the damages. This is about comparing the family history and evaluating the history of what's going on.") In any event, the Court has already rejected the idea that the production of notes

evincing the personal issues and stresses of either of the Watkins parents is warranted in this case. *See* Rec. Doc. 254, Ex. 2 at 6:17-25 (the Court: "with Mr. and Mrs. Watkins, once they dismiss their own personal emotional distress claim, ***the extent of their distress is now a nonissue***. Like their diagnoses, their conditions still, I completely agree, relevant to you. But the extent or nature of what their issues are is less ***is no longer relevant*** because they're no longer seeking damages, so you don't need to assess how severe they've been impacted by their son's ASD or any other things going on in their lives…") (emphasis added). The Court should prevent Defendants from belatedly seeking reconsideration of its Order issued over six weeks ago and from belatedly asserting new theories of relevancy Defendants previously not only waived but disavowed.

The lack of support for Defendants' argument by Defendants' own experts provides a second sufficient reason to deny Defendants' Motion. Despite being ordered by the Court to "prepare a list of necessary information needed from Plaintiffs' records to enable the experts to render their opinions" (Rec. Doc. 178 at 2) and despite the overbreadth of the list prepared by Defendants' counsel, the list does not indicate that Defendants' experts need to see "records revealing any disruptive behaviors, mental or emotional issues, and familial stress and conflict among family members"[7] to complete their assessment.[8] *See* Rec. Doc. 254, Ex. 3. The untimely and specious nature of Defendants' about-face on this issue, unsupported by their own list from their own experts, is reason enough for the Court to deny this Motion.

Additionally, Defendants' new argument for relevancy and discoverability of unredacted therapy notes of ▮▮▮▮▮▮▮▮ is highly conjectural and not at all grounded in the law or science. As best Plaintiff can understand it, Defendants contend that ▮▮▮▮▮▮ unredacted therapy notes *might* reveal familial stress and conflict in the Watkins' home; and, to the extent stress and conflict exists, that that stress and conflict *might* be affecting the Watkins' behavior, which *might* be affecting the treatment of JMW's ASD, which *might* affect JMW's prognosis. Defendants advance

---

[7] Rec. Doc. 254 at 7.
[8] Defendants cannot have it both ways. Either records revealing family stress and conflict are not necessary to their expert's assessment or Defendants failed to comply with this Court's August 23, 2023 Order. Neither supplies a sufficient rationale for giving Defendants another bite at the apple.

this argument without pointing to any caselaw supporting the idea that a plaintiff's caregiver stress is grounds for a reduction in plaintiff's damages award. Plaintiff is aware of none. There are simply too many layers of attenuation in Defendants' theory of relevancy to justify the production of highly sensitive therapy notes of a non-party to the litigation.

Nor do Defendants' authorities provide any support for the argument that the unredacted therapy notes of ███████ should be produced because the notes might reveal evidence of ███ ███ stress which might impact JMW's prognosis (much less any support for the argument that caregiver stress is grounds to reduce a plaintiff's damages). Defendants cite *Ruelas v. Western Truck & Trailer Maint., Inc.*, No. P:18-CV-00002-DC, 2019 WL 13150021, at *4 (W.D. Tex. Jun. 20, 2019) for the proposition that "discovery related to conditions affecting damages is relevant." Rec. Doc. 254 at 6. In *Ruelas*, a case in which the plaintiff sought damages related to a back injury he alleged was caused by an auto accident, the trial court granted a trial continuance to permit additional discovery as to plaintiff's condition following his back surgery scheduled to take place 22 days prior trial. The *Ruelas* Court reasoned the jury could not ascertain the plaintiff's damages without knowing what impact plaintiff's surgery would have in ameliorating the very injury at issue in the case. At most, *Ruelas* provides support for the unremarkable proposition that information related to a plaintiff's treatment the injury he alleges was caused by defendants' conduct is discoverable. The case provides absolutely no support for compelling discovery of the unredacted therapy notes of a plaintiff's parent who is not a party to the litigation. It also provides no support for the argument that a plaintiff's parents' stress is relevant to a plaintiff's damages award.

The "studies" cited by Defendants fair no better. *See* Rec. Doc. 254 at 6-7. Eshraghi et al., is not a peer-reviewed paper. It is a two-page comment that discusses the "*emerging evidence* supporting the 'spillover *hypothesis*'" and concludes that "[b]ased on the *notion* of the spillover *hypothesis*, it is reasonable to *speculate* that improving parental mental health will likely have consequential positive effects…so that…their child may have increased benefits and response to

therapy."[9] Estes et al. is a review of the research on the effects of early intervention for children with ASD on their parents.[10] Estes et al. starts with the assumption that parents contribute to "activities families employ to support positive outcomes for children with ASD…" and their ability to do so "is, in part, related to their levels of stress and psychological well-being." *Id*. at 1. It does not provide independent support for the "spillover theory" or buttress Defendants' call for the production of the unredacted therapy notes of ██████████ here.

Setting aside the weak, if any, support provided by Defendants' cited authorities for Defendants' argument on this point, the "spillover hypothesis," even if proven true, could not alone justify discovery of █████████ highly sensitive therapy notes or a reduction of Plaintiff's damages. Moreover, the medical records documenting JMW's ASD treatment and progress contain no suggestion that the Watkins are negatively impacting JMW's progress and treatment. The absence of any indication from JMW's treatment records that JMW's parents' stress, mental state, or family dynamic was negatively impacting JMW's care and/or prognosis is even more remarkable considering that multiple providers treat JMW at his home for his ASD on a weekly basis and presumably, have a front row seat to "the family dynamic in JMW's home."  Rec. Doc. 254 at 6. The Court should not allow Defendants to go on a fishing expedition through ████████, therapy notes for evidence of "mental or emotional issues" or "familial stress and conflict." Rec. Doc. 254 at 7.

In short, allowing Defendants access to ██████████ unredacted therapy notes based on a hypothesis is incongruent with the Court's prior Order and guidance; incongruent with Defense counsel's prior representations to the Court; and unsupported by law, science, or reason. The Court should deny Defendants' blatant attempt to go on a "fishing expedition through medical records because that's not what we do in discovery." Rec. Doc. 254 at 13:2-3.

---

[9] Eshraghi et al., *Implications of parental stress on worsening of behavioral problems in children with autism during COVID-19 pandemic: "the spillover hypothesis"*, MOL PSYCHIATRY, 2022 Apr, Vol. 27, Issue 4, 1869–1870. (Emphasis added).
[10] Estes et al., *The effects of early autism intervention on parents and family adaptive functioning*, PEDIATR MED, 2019 Jun, 2:21.

**B. Plaintiff's Redactions of ███████ Therapy Records Were Proper.**

    **a. Defendants' Complaints that Plaintiff has Redacted Information Without Explanation is Unsupported by the Record.**

Defendants assert that Plaintiff redacted whole pages of the ███████ therapy notes "with no explanation as to what information was withheld or why." Rec. Doc. 254 at 8. That is unsupported by the record. As Plaintiff's counsel stated in an October 18, 2023 email sent concurrently with the ███████ therapy notes, Plaintiff produced:

- Any reference to an actual diagnosis of any mental health condition or psychiatric disorder.
- Any reference to symptoms of any diagnosed mental health condition or psychiatric disorder.
- Any reference to a family history of any diagnosed mental health condition or psychiatric disorder.
- Any reference to any suspected diagnosis or condition for which that person sought medical evaluation, care, or treatment except where any such reference is in regards to distant relatives (i.e. cousins or beyond).
- Any reference to any medications used for treatment of any mental health condition or psychiatric disorder.
- Any reference to information regarding developmental milestones, motor development, speech development, educational difficulties, and behavioral issues.

Rec. Doc. 254, Ex. 5 at 3.

Following Plaintiff's production of ███████ therapy notes, and in responding to Defendants' letter, Plaintiff provided detailed explanation as to what was and was not produced. Plaintiff's explanation made clear that Plaintiff had "not withheld any ███████ records evincing diagnoses or diagnostic codes." *Id*. at 5. Plaintiff's letter additionally provided detailed response and explanation for why more was not produced from the notes specifically listed as examples in Defendants' correspondence. *See* Rec. Doc. 254, Ex. 5 at 5-6. Plaintiff further explained that he was not producing notes that ████████████████████████████████████ ██████████████████████████████████████████████████████████████

███████████████ that did not bear on JMW's genetic propensity to develop ASD. *Id.* at 5-6. Upon receiving Plaintiff's letter, Defendants did not request additional information or explanation but instead filed the instant motion.

      **b.  The Limited Usefulness of the █████████ Psychotherapy Notes is Inherent to Psychotherapy Notes, Not Indicative of Over-Redacting.**

Defendants' Motion also complains of Defendants' inability to "determine the nature and severity of █████████ psychiatric conditions" or to "fully understand the nature and extent of the conditions present in █████████ family." Rec. Doc. 254 at 9, 10. Defendants attribute this to the extent of Plaintiff's redactions. *Id.* at 8-10. This argument is problematic because it presupposes that the therapy notes contain the information Defendants assert an entitlement to. And it is this presupposition and fundamental misunderstanding as to what therapy records are and what they do and do not contain that grounds Defendants' attempts to invade the privacy █████████ should reasonably expect to enjoy with ███ therapist. As Plaintiff explained at length in his opposition to Defendants' first motion to compel, psychotherapy notes, by definition, do not contain information about the patient's "medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date." Rec. Doc. 166 at 6, quoting 45 C.F.R. § 164.501. It should go without saying that therapy notes likewise do not contain diagnostic, prognostic, evaluative or other medical information relating to the patient's blood relatives, much less the patient's in-laws. That Defendants can "glean little or no useful information" regarding JMW's family history and the nature and extent of any psychiatric conditions █████████ may or may not have from █████████ therapy notes should be unsurprising given that therapy notes typically do not — and in this case definitively do not — contain such information.  They "are of little or no use to others not involved in the therapy… [and are] not intended to communicate to, or even be seen by, persons other than the therapist." Rec. Doc. 166 at 6, quoting 65 F.R. 82622-23.

In his prior opposition, Plaintiff previewed for Defendants and for the Court that the ███ ███ therapy notes contained fragmented phrases, the meaning or import of which was frequently difficult to concern. *See* Rec. Doc. 166 at 7, ("A psychotherapist's handwritten notes, taken contemporaneously during private "talk therapy" or counseling sessions, often contain incomplete fragments and blend the therapist's thoughts and questions with statements made by the patient.") At oral argument, counsel for Plaintiff attempted to convey that because ████████ notes were often not written in a linear, top-to-bottom, left-to-right fashion; consequently, production of any arguably relevant portions from these handwritten notes leant itself to a "potentially…very odd-looking redaction." *See* Rec. Doc. 254, Ex. 2 at 28:8-18; S*ee also id*. at 28:19-23 (the Court: "I think everybody understands -- everybody who's ever sat through a conference or a deposition knows what their notes looks like, and they're not always pretty. And I suspect that's what the therapists' notes look like.")

Plaintiff has since produced portions of the ████████ therapy notes that contain fragmented phrases, odd-looking redactions, and a dearth of information useful to other medical professionals. Defendants' Motion attempts to contort the inherent limitations of therapy notes and the differences between the kinds of information therapy notes and medical records contain raised by Plaintiff into a basis for compelling production of the notes without redaction. To allow this argument to succeed would completely erode patients' "willingness and ability to talk freely" upon which "successful psychiatric treatment" is "completely dependent." Advisory Committee's Notes to Proposed Rules, 56 F.R.D. 183, 242 (1972); *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996). This Court should not allow the complete and total invasion of privacy, disproportionate to the needs of the case, that producing the entire set of psychotherapy notes unredacted would be.

### c. Despite the Inherent Limitations of Therapy Notes, Plaintiff Has Provided Context for the Unredacted Portions of the ████████ Records Where It Exists and is Proportional to the Needs of the Case.

Defendants' Motion complains of the number of redactions in ████████ therapy notes, citing their numerosity as reason for their belief that Plaintiff's redactions are improper. This is

surprising given that, at oral argument on Defendants' first motion to compel, counsel for Defendants expressed agreement with the proposition that the therapy notes were likely to contain a lot of irrelevant information. *See* Rec. Doc. 254, Ex. 2 at 13:23-14:3 (the Court "But particularly with regard to the ███████████████ psychotherapy notes, I think there's going to be a lot of irrelevant information that does have some significant privacy interests. Ms Pruitt: I think the therapy notes, we could agree on that.").

Defendants' Motion also argues that Plaintiffs' redactions render Defendants unable to discern any context for the unredacted portions. Rec. Doc. 254 at 8. Defendants point to two examples from the ████ notes that they say exemplify the problem and demonstrate that Plaintiff has over-redacted. *Id*. at 9. However, as explained above, the existence of fragmented thoughts among the therapist's notes are inherent to the enterprise and, as explained in Plaintiff's letter to Defendants, Plaintiff did not produce more information from those therapy notes because they did not contain additional information that provided more color or context for the phrases visible in Plaintiff's production. *See* Rec. Doc. 254, Ex. 5 at 5-6. In other words, Plaintiff did not produce more context where there was none provided.

In contrast, where the therapy notes contained this context, Plaintiff, mindful of the Court's directive that the production "can't be over-redacted so it's useless," produced phrases that contained context despite there being no other reason for the context phrase's production. Rec. Doc. 254, Ex. 2 at 13:17. The record is replete with examples of Plaintiff producing information not independently discoverable because it provided context to other arguably relevant information. For example, where Plaintiff produced a portion of a note said, "███████████" Plaintiff also produced the phrase "██████████." Rec. Doc. 254, Ex. 7 at 18. Though this reference to a ████████████████████████████ has no independent relevance to the subject action, it was included in Plaintiff's production to provide the context for ████████ note about ████. Similarly, where Plaintiff produced a portion of a note that said "███████████████ ████████," Plaintiff also produced additional lines containing the words, "████████████ ███████████████████████████████████████

█████████" to provide context, despite information regarding ██████████

████████ not being independently relevant. *Id*. at 31.

Where another note said, "██████," Plaintiff produced that phrase and the one above

it that says "████████████████████" despite ████████████

████████████████ not being independently relevant or discoverable pursuant to the

Court's Order. *Id*. at 79. Additionally, where Defendants' expert list did not call for the production

of certain information, but Plaintiff determined it was or could be relevant, Plaintiff included it in

his production as well. For example, Plaintiff produced portions of the note that said,

"███████████" (*Id*. at 81) ███████████████████

███████████████████ *Id*. at 18-19. Simply put, Plaintiff has

produced context where it can be found but cannot produce context the notes do not contain. Where

the production evinces Plaintiff's good faith in producing information not strictly required, evinces

Plaintiff's good faith in producing context with no independent relevance to the allegations that

form the basis of this lawsuit, and there was no reason to believe that the therapy notes would

contain an abundance of information relevant to Defendants' genetics defense, the numerosity of

Plaintiff's redactions should not be used as a basis to compel discovery.

    **d. Defendants' Argument that ██████████ Therapy Records Are Discoverable Due to the Genetic Heritability of ████ is Unsound.**

Defendants also raise for the first time in this Motion an argument that they are entitled to

████████ unredacted therapy notes on the basis of "shared genetic factors between ████████

████████ and ASD." Rec. Doc. 254 at 9. This argument is built on a house of cards that crumbles

upon the slightest inspection. ████████████████████

████████████████████████████

████████████████████████████

████████████████████████. As anyone

who has ever described a penchant for cleaning as "OCD" can attest, colloquial use of medical

terminology does not a diagnosis or ailment create. ████████████████



Additionally, Defendants' contention that therapy notes containing information about "███████████████████████████████████████████████…[are] highly relevant to Defendants, given the shared genetic factors between psychiatric conditions like ████ and ASD" is highly flawed. Rec. Doc. 254 at 9. █████████████████████████ ██████████████████████████, the article Defendants cite for the proposition that ████ and ASD have shared genetic factors and records related to treatment of ██████ would be relevant to assessing a child's propensity to develop ASD does not actually support Defendants' Motion on this point. █████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████ ████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████, Defendants' own authority dispels any argument that ██████████ suffering from this condition could have any relevance on JMW's genetic propensity to develop ASD. Accordingly, based on Defendants' cited authority and the Court's guidance, records related to any treatment sought for ██████ should not be discoverable. *See* Rec. Doc. 254, Ex. 2 at 44:10-18 (the Court: "[T]here may be some psychological disorder that has never been tied to ASD…that wouldn't be relevant. If there's no science that ties it to the ASD…it doesn't get discovered because there's no tie, so it's not relevant.").

**C. Plaintiff's Production of ██████ Records Is Appropriate.**

---

11 █████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

As discussed previously, Defendants' Motion requests relief that the Court cannot provide absent a contradictory hearing.[12] Additionally, in requesting that the Court order Plaintiff "to produce unredacted copies of…medical, psychological, and scholastic records" for ████ Defendants bring the same request that the Court already indicated was overbroad. Rec. Doc. 254 at 14; *See also* Rec. Doc. 254, Ex. 2 at 8:22-9:3, (the Court: "My problem is you're phrasing it as a broad, can we get medical, psychiatric, and educational records and I think that's not the issue. To me the issue is how much or what portions of those records are relevant and discoverable and proportional to the needs of the case. Not everything. Because, clearly, everything is not going to be relevant, and you're overbroad."). To bring essentially the same motion with regards to ████ records unmitigated by the Court's guidance requesting relief the Court cannot, on this Motion alone, provide is a waste of judicial (and attorney) time and resources. Nonetheless, Plaintiff will address the substance of the Defendants' Motion with regards to the records of ████

Defendants claim that Plaintiff has overly-redacted the records from ████ without explanation. As Plaintiff explained in his November 2, 2023 correspondence, Plaintiff has not withheld any records from ████ ████ ████. As Plaintiff further explained in his letter, from the ████ ████, he has redacted only the information the Court was quite clear that Defendants are not entitled to. *See* Rec. Doc. 254, Ex. 2 at 36:23-37:4, (the Court: "But like the example I gave with the broken arm out of the tree, you don't get that stuff. You know, I don't know. If he goes in with the flu, you don't need that. If he has ⌐ I don't know. Pick your average childhood illness. If he got chickenpox, unless your expert says, I need to know if you have chickenpox, then you don't need the chickenpox records."). By way of further explanation, the redacted pages contain only

---

[12] The need for a contradictory hearing for the records already produced was obviated by ████ parents' agreement to produce a certain subset of information from the records pursuant to the Court's guidance. However, ████ parents do not agree to produce complete and unredacted versions of ████ medical, educational, and psychological records.

consents and information regarding ███ immunization history and therefore have no bearing on JMW's genetic propensity to develop ASD.

Plaintiff is aware that █████████████████████████████████████ Subsequently collected and produced records ██████████████████████████████████ ██████████████. However, none of the records from ██████████████████████████ ██████████████████████████ contain any assessment, diagnosis, medication, or treatment for ██████████████. The only record of █████ indicating prognosis are those █████ records that indicate ████████████████████████ Plaintiff is working diligently to try to locate additional records evincing any assessment, diagnosis, medication, treatment, or prognosis for ██████████████████████. These efforts are complicated by the fact that neither of ██████ parents recall the name of the physician who saw ██████████. Plaintiff requested complete records from ██████████████, which did not contain these records. Plaintiff also requested and has now received complete records from ██████████████, which likewise do not contain this information. Plaintiff is still waiting for records from one provider and hopes this outstanding set of records contains information related to ████████████████████ or at least some clue about where else Plaintiff might look for these records. Upon receipt and review of these records, Plaintiff will produce records that show any assessment, diagnosis, treatment, medication, or prognosis of ████████████████████ or any other condition possibly relevant to Defendants' genetics defense, pursuant to the Court's guidance.

While Defendants seek wholesale production of all of █████ educational records, Plaintiff does not believe Defendants are entitled to every report card and every scholastic assessment █████ has ever received because JMW's ASD is at issue in this case. *See* Rec. Doc. 254, Ex. 2 at 44:2-4, (the Court (in discussing a potential contradictory hearing) "But yes, I agree. I'm going to narrow the scope of the request. It's not going to be every educational record.") ████ ████████████████████, Plaintiff has already produced ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ On November 3, 2023, Plaintiff also produced ████████████████████



████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Plaintiff

believes that all of the clinically significant information regarding ████████████

████████████████████████████████ can be found therein. Plaintiff has also

recently produced a █████████████████████████████████████████

████████████████████████████ In light of Plaintiff's production of extensive records

detailing ████████████████, discovery of additional educational records of █████ in order

to assess JMW's genetic propensity to develop ASD is unwarranted. Plaintiff is particularly

troubled by Defendants' representation that discovery of ██████ complete educational record is

necessary because documents not produced by Plaintiff to-date could "indicate severity

of…undiagnosed learning disorders." Rec. Doc. 254 at 13. This statement is troubling to Plaintiff

to the extent it's indicative of Defendants' intention to have their experts root around in the

educational records of a non-party minor and assign to him learning disorders diagnoses that ███

████████████████████████████████████████████ did not support,

rather than review ██████ records to assess JMW's genetic propensity to develop ASD.

Defendants additionally take issue with Plaintiff's redaction of very limited portions of ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[13] Rec. Doc. 254 at 11, quoting Ghirardi et al., *Familial and genetic associations between autism spectrum disorder and other neurodevelopmental and psychiatric disorders*, J CHILD PSYCHOL PSYCHIATRY, 2021 Nov, Vol. 62, Issue 11, 1274-1284.

██████████████████████████████████████████████

███████████████████████████

Defendants' argument attempts to erase any distinction between experiencing human feelings of anxiousness generally or as a feature of an adjustment disorder and being diagnosed with an anxiety disorder. Against that backdrop, Plaintiff has produced sufficient information to understand the circumstances that cause ████████████████████████████████████ ██████████████████████████████████, while protecting ████████ significant privacy interests in his inner-most thoughts and the particulars of his feelings about something that has nothing to do with JMW's genetic propensity to develop ASD. Additional information about ██████████████████████████████ appears on the following page. *Id.* at 11. Given that ████████████████████████ are detailed in the ████████████████████ that Plaintiff has already produced, Plaintiff does not believe that he has withheld relevant and discoverable information proportional to the needs of the case.

## CONCLUSION

Plaintiffs respectfully request the denial of Defendants' Motion to Compel Discovery Unredacted Records in full. As detailed above, Defendants' Motion is untimely as to the therapy notes of ████████ and not properly before the Court as to the records of ████ Defendants' requests for completely unredacted sets of therapy notes and records lacks support in science or the law and contravenes this Court's prior Order and guidance. However, should this Court find that disclosure of further information is necessary, Plaintiffs request that order be narrowly tailored to avoid wholesale production of highly sensitive information unrelated to a party's claims or defenses and/or disproportionate to the needs of the case.

Dated:   November 21, 2023                Respectfully submitted,

                                          */s/ Madeleine Brumley Clavier*
                                          Madeleine Brumley Clavier (#37432)
                                          Aimee H. Wagstaff (*pro hac vice*)
                                          Wagstaff Law Firm

940 N Lincoln St.
Denver, CO 80203
Tel: (720) 208-9402
Email: awagstaff@wagstafflawfirm.com
       mclavier@wagstafflawfirm.com

Lindsey A. Cheek (#34484)
The Cheek Law Firm, LLC
650 Poydras St., Suite 2310
New Orleans, LA 70130
Phone: (504) 304-4333
Fax: (504) 324-0629
Email: lcheek@thecheeklawfirm.com

Alexandra M. Walsh (*pro hac vice*)
Walsh Law PLLC
14 Ridge Square NW
Suite 300
Washington, DC 20016
Tel: (202) 780-4127
Fax: (202) 780-3678
Email: awalsh@alexwalshlaw.com

Janna L. Maples (*pro hac vice*)
Walsh Law PLLC
1500 4th Avenue N
Ste Apt 202
Nashville, TN 37208
Tel: (615) 879-7804
Fax: (202) 780-3678
Email: jmaples@alexwalshlaw.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ Madeleine Brumley Clavier

24