IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARGARET WATKINS AND JAMES WATKINS, ON BEHALF OF THEIR MINOR SON, JMW<br><br>Plaintiffs,<br><br>v.<br><br>NURTURE, LLC; HAIN CELESTIAL GROUP, INC.; AMAZON.COM SERVICES LLC; WHOLE FOODS MARKET SERVICES, INC.; AND DOES 1-100<br><br>Defendants. | CASE NO. 22-551<br><br>JUDGE DARREL J. PAPILLION<br><br>MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendant, Nurture, LLC ("Nurture") respectfully submits this Memorandum in Support of its Motion for a Protective Order pursuant to Fed. R. Civ. P. 26(c). On November 6, 2023, Plaintiff served an amended Notice of Deposition Pursuant to Rule 30(b)(6) and Documents Requests Pursuant to Rule 34 (the "Amended Notice"). Plaintiff identified 16 topics to be covered during the deposition. For the reasons set forth below, Nurture requests that the Court enter an order (1) limiting the time period for inquiry to 2013 through 2021; (2) forbidding inquiry into Topics 5(d), 6, 14, and 15, and (3) limiting the areas of inquiry on Topic 8. Counsel for Nurture has met and conferred several times with Plaintiff's counsel regarding the 30(b)(6) Notice and the topics listed therein. Although the parties have narrowed the scope of this dispute, an impasse exists as to the issues raised in the present Motion.

1

**BACKGROUND**

As set forth in the Amended Complaint, James A. Watkins and Margaret Watkins, on behalf of their minor child JMW, assert that JMW developed autism spectrum disorder (ASD) as a result of his consumption of baby foods manufactured and sold by Defendants. As part of discovery efforts directed at Nurture, Plaintiff seeks deposition testimony from a Rule 30(b)(6) witness as to 16 topics (with numerous accompanying sub-topics).

This is not the first baby food case of its type. Recently, Nurture was one of several defendants in a baby food case in the complex division of the Los Angeles Superior Court in California (*NC, a minor, v. Hain Celestial Group, Inc., et al.*, Case No. 21STCV22822). During the course of discovery in the California state court proceeding earlier this year, plaintiff's counsel in that case – the very same attorneys acting as Plaintiff's counsel in this case – noticed and took depositions of three Nurture employees as corporate representatives of Nurture, who testified as to 48 topics for over ten hours on the record. The depositions were conducted pursuant to California Code of Civil Procedure § 2025.230, which requires a corporate entity to "designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent." A "person most qualified" ("PMQ") deposition is the California equivalent to a Rule 30(b)(6) deposition.

After Plaintiff's counsel was retained in this case, Nurture and Plaintiff came to an agreement on June 6, 2023, whereby Nurture would deem produced in this case the company documents previously produced in the *NC* case, as well as the deposition transcripts for Nurture's witnesses, including the PMQ deposition transcripts. Thus, Plaintiff is in possession of those documents and transcripts, and has been for several months, because Plaintiff's counsel

2

took the depositions of Nurture witnesses in *NC*. Importantly, Plaintiff's counsel has declined to provide assurances that they will not re-ask questions previously asked of Nurture's California PMQ witnesses.

On August 24, 2023 Plaintiff served a Notice of Video Deposition Pursuant to Rule 30(b)(6), along with accompanying document requests. *See* Exhibit 1. In the Rule 30(b)(6) Notice, Plaintiff identified 27 topics for which it directed Nurture to designate one or more employees, agents, or representatives to testify. Of these 27 topics, the majority appeared in some form on the PMQ Notice in the *NC* litigation, and therefore had already been explored in deposition testimony by Plaintiff's counsel. Further, many of the topics were not described with enough particularity for Nurture to prepare a witness. For example, original Topic 10 was "The production process for the Nurture Products At Issue" and original Topic 18 was "Nurture's efforts to control the levels of Heavy Metals in its Baby Food products." *See* Exhibit 1. Nurture served its Objections and Responses on September 18, in which Nurture asserted, *inter alia*, that the topics were overly broad, unduly burdensome, and not sufficiently particularized, and that questions and testimony as to many of the topics would be cumulative and duplicative of prior testimony. *See* Exhibit 2.

Through a series of meet and confer sessions in September and October, Plaintiff and Nurture narrowed the scope of the disputes regarding the deposition topics. Most notably, during a meet and confer session on October 30-31, Plaintiff narrowed some of the topics in the deposition notice, and Nurture made significant concessions as to previous objections it had raised. On November 2, Nurture sent correspondence to Plaintiff memorializing agreements and outlining some of the disagreements that still existed. *See* Exhibit 3. Plaintiff never responded in writing to that correspondence to dispute Nurture's characterizations of the previous meet and

3

confer discussion or Nurture's understanding of what information Plaintiff was seeking as to each Topic. On the following day, Nurture offered to make a Rule 30(b)(6) witness available for a deposition on December 15. *See* Exhibit 4. On November 6, Plaintiff served the Amended Notice without noting Nurture's offered date. *See* Exhibit 5. Plaintiff's counsel ultimately accepted the December 15 date but had not re-issued the notice as of the afternoon of the filing of this Motion. *See* Exhibit 6.

On November 7, Plaintiff filed a Motion to Compel, in part asking the Court to order Nurture to designate a corporate witness to testify regarding Topics 5(d), 8, 10, 14, and 15, "without delay." Rec. Doc. 250. Plaintiff later withdrew that Motion to remedy Plaintiff's disclosure of Nurture's confidential information on the public docket (Rec. Doc. 252), but in the interim, Nurture agreed to meet and confer further with Plaintiff regarding the issues raised in the Motion. On November 10, the parties met and conferred, and Nurture clarified that the parties were not at an impasse regarding Topic 10. Also during that session, Plaintiff's Counsel expressly represented that she would refile the Motion by Sunday, November 12. Plaintiff did not re-file the Motion until November 21.

On November 20, Nurture sent correspondence to Plaintiff outlining its understanding of the dispute and the parties' impasse. *See* Exhibit 7. In that correspondence, counsel for Nurture made clear that unless Plaintiff responded by noon New Orleans time on November 21st, Nurture would seek a protective order as to Amended Notice Topics 5(d), 6, 8, 11, 14, and 15. *Id.* at 2. Plaintiff's counsel replied by email just before noon on the 21st, and the parties subsequently spoke by phone. Although they resolved their dispute as to Topic 11, disputes as to the other topics remain.

4

The Amended Notice identifies 16 topics (and additional sub-topics). Nurture agreed to present and prepare a witness on the majority of the Topics – 1, 2, 3, 4, 5(a)-(c), 7, 9, 10, 12, 13, and 16. For the most part, these topics relate to factual issues of quality and food safety that are central to the case, *e.g.*, ingredient sourcing and heavy metal testing. Nurture has not agreed to present and prepare a witness on Topics 5(d), 6, 14, and 15, and seeks limits from the Court on Topic 8. As explained below, these topics are irrelevant, insufficiently particularized, overly broad, unduly burdensome, or cumulative and duplicative of prior testimony.

## LAW AND ARGUMENT

**I.    Legal Standard**

Under Fed. R. Civ. P. 26(c)(1), a party from whom discovery is sought may move for a protective order in the court where the action is pending. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the disclosure or discovery;" and/or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" *Id*. "The party seeking the protective order must establish good cause for the entry of the order by making a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Jones v. Arcadia Nursing & Rehab. Ctr., L.L.C.*, No. CV 15-2910, 2018 WL 11411266, at *3 (W.D. La. Sept. 27, 2018) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Rule 30(b)(6) requires the deposing party to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "[T]o prepare their Rule 30(b)(6) deponent

adequately, the noticing party must identify each and every topic with sufficient specificity." *Chauvin v. United Parcel Serv., Inc.*, No. CV 23-392, 2023 WL 4175100, at *8 (E.D. La. June 26, 2023). Therefore, "[t]he court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous." *Sartin v. Exxon Mobil Corp.*, No. CV 22-603-JWD-RLB, 2023 WL 4836662, at *3 (M.D. La. July 27, 2023); *see also Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 44366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague, and ambiguous). "For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. . . . If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Rahman v. Allstate Insurance Co.*, Civil Action No. 22-2052, 2023 WL 6582993, at *4 (E.D. La. Oct. 10, 2023).

When topics listed in a Rule 30(b)(6) notice have already been examined in a previous company deposition, another Rule 30(b)(6) deposition on the same topics "would be unreasonably cumulative or duplicative of the earlier deposition" and therefore "[n]o further Rule 30(b)(6) deposition testimony will be permitted" as to those topics. *In re Katrina Canal Breaches Consolidates Litig.*, No. 05-5531, 2008 WL 4833023, at *1 (E.D. La. July 2, 2008) (prohibiting second 30(b)(6) examination of same topics in first 30(b)(6) deposition because "plaintiffs already have had ample opportunity to obtain through deposition testimony the

information sought in this second Rule 30(b)(6) deposition"), *report and recommendation adopted*, 2008 WL 4882392 (Nov. 4, 2008). "A Rule 30(b)(6) deposition is not to be used to re-ask all of the questions a party has previously explored with multiple witnesses." *BAT LLC v. TD Bank, N.A.*, 2019 WL 13236131, at *5 (E.D.N.Y., Sep. 24, 2019).

**II.     Good Cause Exists to Issue a Protective Order.**

    **A.     The Court Should Limit the Time Period for Inquiry to 2013 Through 2021.**

Plaintiff's "Relevant Time Period" is overly broad and burdensome. JMW was born in 2018, he allegedly stopped consuming baby food in February 2021, and the lawsuit was filed in February 2022. Still, Plaintiff's Amended Notice seeks to impose on Nurture a duty to prepare and present a witness to testify "[e]xcept as otherwise specified" from 2013 "*to the present, inclusive.*" *See* Ex. 5 at 6 (emphasis added).[1] What Nurture is or is not doing today is irrelevant to Plaintiff's claims and is not proportional to the needs of the case, considering the timeframe when JMW allegedly consumed Nurture's baby food. Further, it is unduly burdensome (and impractical) to require Nurture to prepare a representative to testify regarding highly factually detailed information covered by the topics—like Nurture's representations regarding ingredient sourcing, Nurture's efforts to determine the lowest amount of Heavy Metals available in "any ingredient," Nurture's production process and supply chain, and audits—for a period of *ten years* when JMW allegedly consumed Nurture's baby food for a period of only *two-and-a-half years*. The Court should limit the "Relevant Time Period" in the Amended Notice to the beginning of 2013 to the end of 2021, the year Plaintiffs allege they stopped feeding JMW baby food.

---

[1] The Amended Notice identifies the "Relevant Time Period" as "2012 to the present, inclusive," but the original Notice identified the "Relevant Time Period" as "2013 to the present, inclusive." *See* Ex. 1 at 8, Ex. 5 at 6. It is Nurture's understanding based on representations from Plaintiff's Counsel that the 2012 in the Amended Notice was a typographical error. *See* Ex. 7 at 2.

7

### B. The Court Should Forbid Inquiry into Topics 5(d), 6, 14, and 15.

Additionally, inquiry into topics 5(d), 6, 14, and 15 should be prohibited. These topics are irrelevant, insufficiently particularized, overly broad, unduly burdensome, or cumulative and duplicative of prior testimony, for the reasons set forth below.

#### 1. Topic 5(d)

Topic 5(d) is improper for a Rule 30(b)(6) deposition, and is overly broad and unduly burdensome, even if marginally relevant. Topic 5(d) directs Nurture to designate a representative to testify regarding "[t]he amount of Heavy Metal testing performed on lots, batches, and units of each of Nurture's Baby Food products *relative* to the number of lots, batches, and units of each of Nurture's Baby Food products sold." *See* Exhibit 5 at 8 (emphasis added). It is Nurture's understanding based on meet and confer discussions that Plaintiff seeks this information in the form of Rule 30(b)(6) testimony for *each year* from 2013 through 2022 for each individual SKU (stock keeping unit, or the number assigned by retailers to a particular product) that JMW allegedly consumed – *i.e.*, for 35 SKUs by Nurture's count, according to purchase records of those products.

First, Topic 5(d) is improper for a Rule 30(b)(6) deposition. Nurture's representative "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Nurture's representative is not required to draw certain conclusions for Plaintiff from a comparison of the testing performed "relative" to the "lots, batches, and units" sold.

Second, Topic 5(d) is unduly burdensome. It is not feasible to prepare a witness to answer questions about the testing performed on lots, batches, and units of 35 different SKUs for a period of nine years "relative" to the "lots, batches, and units" sold. *See, e.g., United States ex. rel. Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006) ("Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there

must be a limit to the specificity of the information the deponent can reasonably be expected to provide. Without a photographic memory, [the witness] could not reasonably be expected to testify as to the loan numbers ... for sixty-three different loans."). Plaintiff is essentially asking Nurture to compile a bespoke list and have the witness testify to it and provide a mathematical calculation as to the data therein. That is not the purpose of a Rule 30(b)(6) deposition.

Third, even if Topic 5(d) were a proper area of inquiry for a Rule 30(b)(6) deposition, it is overly broad. JMW only allegedly consumed Nurture's baby food products from August 2018 to February 2021, yet Plaintiff asks Nurture to prepare a witness to make the requested comparisons based on data for each year from 2013 through 2022. All of these reasons render Topic 5(d) improper.[2]

### 2. Topic 6

As for Topic 6, it is unreasonably cumulative and duplicative, and the information sought can be obtained from the previous deposition transcripts of Nurture's corporate representatives. As noted above, Plaintiff's counsel previously deposed three Nurture employees as corporate representatives of Nurture in the *NC* case; those employees testified as to 48 topics for over ten hours on the record. Those deposition transcripts were produced in this action, and they are a more convenient and less burdensome source of the information Plaintiff is seeking.

---

[2] Even if the Court permits inquiry on Topic 5(d), such inquiry should be tied to the time period when the baby food products allegedly consumed by JMW could have been manufactured.

Topic 6 would require Nurture to prepare and present a witness to testify regarding "[a]ny Testing by Nurture as to whether the Nurture Products at Issue, or the levels of Heavy Metals within the Nurture Products at Issue, could cause the injuries alleged by JMW and the results obtained or conclusions reached by Nurture through such testing." *See* Exhibit 5 at 8. It is Nurture's understanding based on meet and confer discussions that Plaintiff seeks to discover through Topic 6 if Nurture did an analysis on whether its foods could cause neurodevelopmental delay or autism. *See* Ex. 3 at 4. Plaintiff's counsel has had ample opportunity to obtain (and has in fact obtained) this information. Nurture prepared and presented a corporate representative in the *NC* case to testify regarding the efforts Nurture made to evaluate the safety of its baby food products as it relates to heavy metals, and this topic covered the injuries alleged by JMW. As part of that topic, earlier this year Nurture's corporate representative answered several questions, such as:

- Does Happy Family understand that autism is a neurological disorder?
- Did Happy Family feel that it should determine whether or not the levels of heavy metals in its food could result in neurodevelopmental issues?
- With that in mind, did Happy Family feel it should determine whether or not the levels of heavy metals in its food could result in neurodevelopmental issues aside from what FDA is doing? Did they think they should develop that information independently?
- Happy Family did not know one way or the other whether its products could cause neurodevelopmental issues, correct?
- Well, Happy Family never commissioned any studies related to potential neurological effects of contaminants, right?

- And Happy Family never directly participated in any studies related to potential neurological effects of contaminants, right?

- Did Happy Family ever consider conducting such a study?

- Did Happy Family ever do a systematic literature [sic] of all the literature linking heavy metal exposure to negative neurological effects in babies?

- And Happy Family also never did a systematic literature [sic] of literature linking heavy metal exposure to autism, correct?

Because these prior questions address what Nurture has or has not done to assess whether the trace levels of heavy metals in Nurture's products could have caused JMW's alleged injuries, the Court should guard against redundant discovery and preclude further questioning on this topic, which is cumulative and duplicative – particularly given that Plaintiff's counsel previously deposed three Nurture employees as corporate representatives of Nurture, who testified as to 48 topics for over ten hours on the record in the *NC* case.

    **3.    Topic 14**

Topic 14 is not described with reasonable particularity, is overbroad, and is duplicative and cumulative. Topic 14 is "[t]he development, approval, content, and application of Nurture's Labels for the Products at Issue." *See* Exhibit 5 at 12. First, Topic 14 is not described with reasonable particularity. Nurture cannot "identify the outer limits of the areas of inquiry noticed" for Topic 14, and so "compliant designation is not feasible." *Rahman*, 2023 WL 6582993, at *4. For example, the "content" of a pouch's label may include a nutrition facts panel, ingredient deck, recipe, marketing claims, serving instructions, storage instructions, a "caution" to keep the cap out of reach of children, a warning not to microwave or boil the pouch, recycling information, packaging information, distribution information, a bar code, and artwork.

From the way this topic is written, it is unclear what specifically Plaintiff wants to know about the "development, approval, content, and application of Nurture's" labels.

Second, Topic 14 is overbroad to the extent it seeks information about labeling that is unrelated to heavy metals. Plaintiff's claim is that Nurture's products did not contain adequate warnings concerning "the dangerous characteristics of Baby Foods and Toxic Heavy Metals." Amended Pet. at ¶ 62. Third, even if Topic 14 were sufficiently particularized and narrowed to heavy metals, it would be unreasonably cumulative and duplicative, and the information sought could be obtained from the previous deposition transcripts of Nurture's corporate representatives. Those transcripts were produced in this action, and they are a more convenient and less burdensome source. Nurture prepared and presented a corporate representative in the *NC* case to testify about decisions regarding the content of labeling for Nurture's baby food products, including but not limited to decisions concerning warnings to include in labeling. As part of that topic, earlier this year Nurture's corporate representative answered questions such as:

- Did Happy Family ever discuss adding information about heavy metal content to its labels?

- Happy Family could have included in the labeling of its product that its products contained heavy metals, correct?

- Happy Family could have informed - - could have included in its product labels that certain of its products such as puffs and rice cakes contained elevated levels of arsenic and inorganic arsenic, correct? That's something that could have been included?

- Happy Family could have informed consumers of the range of arsenic and inorganic arsenic levels that its rice-based products were testing at, correct?

- [T]hey could have informed - - they could have included that information on their product labels, correct?

Further, Plaintiff's Counsel showed Nurture's corporate representative a Puffs label and asked about its contents. Due to this extensive previous questioning, the Court should guard against redundant discovery and preclude further questioning on this topic. *See* Fed. R. Civ. P. 26(b)(2)(C).

        4.        **Topic 15**

Topic 15 is not described with reasonable particularity and is overbroad. Topic 15 is "Nurture's coordination or Communications with other baby food manufacturers, *including but not limited to* Nurture's participation in any industry groups, professional societies, or working groups where any Defendant in this matter is a member, relating or referring To: (a) Heavy Metals; (b) baby food product labels, labeling, and warnings; (c) any third-party report concerning Heavy Metals in baby food and Nurture's response to any third-party report concerning Heavy Metals; and (d) regulations, rules or laws regarding Heavy Metals. This Topic does not include Baby Food Council." *See* Exhibit 5 at 12 (emphasis added). First, "[a] topic that is phrased in terms of 'including but not limited to' or 'from any source' is improper and must be limited" because "[r]equiring a deponent to prepare a witness to address unspecified topics from unstated sources is inconsistent with Rule 30(b)(6)'s reasonable particularity requirement." *Chauvin*, 2023 WL 4175100, at *7. Second, Topic 15 is overbroad to the extent it seeks through subpart (b) information regarding baby food product labels, labeling, and warnings that is unrelated to heavy metals. For those reasons, the Court should prohibit questioning on this topic as well.

C.      **The Court Should Limit Areas of Inquiry for Topic 8.**

Finally, the Court should limit Topic 8 to the result of and actions taken by Nurture in response to any market research regarding consumer perceptions of <u>heavy metals</u> in the environment, the food supply, or Nurture's Products at Issue. As written, Topic 8 is overly broad and burdensome. Topic 8 seeks "[t]he results of and actions taken by Nurture in response to any surveys, focus groups, market research or other similar research or investigation that Nurture performed, that were performed on Nurture's behalf, or that Nurture received, commissioned, or requested, regarding: (a) Consumer perceptions of safety of Nurture's Products at Issue or any larger category of products in which the Nurture's Products at Issue are included; (b) Heavy Metals, 'toxins,' or contaminants in the environment, the food supply, Nurture's Products at Issue or any larger category of products in which the Nurture's Products at Issue are included; and (c) Consumer perceptions of the meaning or benefits of 'organic.' This Topic is not intended to include market research that Nurture employees passively received through newsletters, mailing list, or listserv." *See* Exhibit 5 at 9-10.

First, Topic 8 is overbroad to the extent it seeks information about market research unrelated to heavy metals. This is a personal injury case about whether exposure to heavy metals in baby food caused JMW's autism. This is a strict liability case with no claim for negligence and no fraud-based claim as to Nurture. It is not a case about marketing, and the results of or actions taken by Nurture in response to any market research it may have performed on any of the subjects in Topic 8 other than heavy metals are irrelevant. It is evident from comparing Topic 8 to Topics 1, 2, 3, 4, 5(a)-(c), 7, 9, 10, 12, 13, and 15 that Topic 8 far afield from the other topics, which relate to heavy metals and Nurture's efforts to control heavy metals. Second, even if marginally relevant, Topic 8 as written is unduly burdensome. For example, Nurture is an organic baby food company and Plaintiff seeks to impose on Nurture an obligation to prepare a

witness—in a case about trace amounts of heavy metals in baby food and autism—to testify regarding Nurture's market research related to consumer perceptions of the meaning or benefits of organic from 2013 to present, inclusive. Such discovery would be heavily disproportionate, given the nature of this case, and it should be prohibited.

## CONCLUSION

For the foregoing reasons, Nurture respectfully requests that, as to Nurture's Rule 30(b)(6) deposition, the Court enter an order (1) limiting the time period for inquiry to 2013 through 2021; (2) forbidding inquiry into Topics 5(d), 6, 14, and 15, and (3) limiting the areas of inquiry on Topic 8.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART MOORE & DANIELS, LLC**

/s/ *Camala E. Capodice*
QUENTIN F. URQUHART, JR. (La. Bar No. 14475)
CAMALA E. CAPODICE (La. Bar. No. 29117)
GABRIEL J. WINSBERG (La. Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101
qurquhart@irwinllc.com
ccapodice@irwinllc.com
gwinsberg@irwinllc.com

AND

DLA PIPER LLP (US)
Mary E. Gately (admitted *pro hac vice*)
Paul D. Schmitt (admitted *pro hac vice*)
500 Eighth Street NW
Washington, DC 20004
Telephone: (202) 799-4507
mary.gately@dlapiper.com

COUNSEL FOR DEFENDANT NURTURE, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Camala E. Capodice*