**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MARGARET WATKINS AND JAMES WATKINS, ON BEHALF OF THEIR MINOR SON, JMW, | CASE NO.  22-cv-00551 |
| Plaintiffs, | |
| v. | DISTRICT JUDGE DARRELL JAMES PAPILLION |
| NURTURE, LLC.; HAIN CELESTIAL GROUP, INC.; AMAZON.COM SERVICES LLC; WHOLE FOODS MARKET SERVICES, INC.; AND DOES 1-100, | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDEPENDENT MEDICAL EXAMINATION

All parties agree that an independent medical examination ("IME") is appropriate in this case.  After considerable consultation, the parties have largely agreed to the terms of the IME, with Defendants agreeing to numerous conditions requested by Plaintiffs.  But there are two conditions to which Defendants cannot agree:  (1) Plaintiffs' insistence that the IME be video-recorded, and (2) Plaintiffs' refusal to allow a second clinician to attend the IME.  Plaintiffs' video-recording requirement has no support in Federal Rule of Civil Procedure 35(a), is disfavored in the Fifth Circuit, and cannot be justified by any "special circumstances" as required by case law.  And Plaintiffs' insistence on a single clinician at the IME is simply illogical, given the routine nature of multiple clinicians participating in medical examinations and the efficiency of conducting an IME with two experts given the involvement of multiple Defendants.  Accordingly, Defendants The Hain Celestial Group, Inc., Nurture, LLC, Amazon.com Services LLC, and Whole Foods

Market Services, Inc. (collectively, "Defendants") seek the Court's intervention to resolve these two issues so the IME can promptly proceed.

## BACKGROUND

Plaintiffs brought this case against Defendants, baby food manufacturers and sellers, alleging that consumption of baby food products caused JMW to develop autism spectrum disorder ("ASD") and seeking damages from Defendants related to his ASD.  Am. Compl. ¶¶ 1, 4.

In September 2023, Defendants requested an IME to be conducted at a time and location convenient for the family.  Ex. A, Email Correspondence between Counsel, at 10.  By Plaintiffs' request, Defendants provided a full breakdown of the components of such an IME, including observation and evaluation of JMW by a qualified defense expert and an interview by the expert of JMW's parents present at the evaluation.  *Id.* at 8–9.  Defendants also identified a series of questionnaires and diagnostic assessments that the expert intended to utilize for such an examination.  *Id.*

Plaintiffs responded with a laundry list of conditions, including time and participant limitations; prior notice requirements regarding the assessments to be used and timing of the exam; and specific limitations on the physical examination of JMW.  *Id*. at 5–6.  Defendants agreed to each of the following conditions:

(1) The examination (including any parental interview) will be limited to three hours exclusive of breaks;

(2) The examination will take place in an agreed-upon neutral location;

(3) Defendants' expert will conduct the IME as they would in their clinical practice;

(4) One representative each from Plaintiffs' legal team and Defendants' legal team will be allowed on-site in the waiting area, but not in the room during the examination;

(5) At least 10 days prior to the examination, Defendants will identify the expert conducting the IME;

(6) At least 10 days prior to the examination, Defendants will provide a complete list of questionnaires and assessments that will comprise the IME;

(7) At least 10 days prior to the examination, Defendants will provide a full description of what the "standard physical examination" will entail;

(8) JMW will not be required to remove any article of clothing at the exam;

(9) No examination will be conducted of JMW's genitalia;

(10)    At least 10 days prior to the examination, Defendants will provide an estimated breakdown of time needed for the assessment of JMW and for the parental interview; and

(11)    Any raw data generated from any diagnostic assessments and any responses provided to any questionnaires will produced within 72 hours of the examination or within 24 of when the expert completes them and records the results, whichever is sooner.

*Id.* at 1–6. Plaintiffs also insisted that the IME be video recorded and transcribed by a court reporter service, and that IME attendees otherwise be limited to JMW, his parents, and the examiner. *Id.* at 6.

First, Defendants did not agree that the examination would be video-recorded or transcribed by a court reporter service. Defendants explained that recording or transcribing the IME is inconsistent with how Defendants' expert examines patients in his clinical practice (and thus inconsistent with the agreed-upon condition that "Defendants' expert will conduct the IME as they would in their clinical practice"). *Id.* at 4. Second, Defendants requested that one additional clinical defense experts be permitted to observe the IME to avoid the potential need for multiple examinations. *Id.* Although Plaintiffs agreed to forgo transcription by a court reporter service in later discussions, Plaintiffs continue to insist that the IME be video recorded and may only be attended by one expert. *Id.* at 3.

The parties met and conferred regarding Plaintiffs' proposed conditions on November 21, 2023. Defendants reiterated that video recording could interfere with the clinician's normal examination, including by interfering with the clinician's ability to observe uninhibited conduct by JMW or obtain information from JMW or his parents. *See* Ex. B, Affidavit of Dr. Alexander Kolevzon ("Kolevzon Aff."), ¶¶ 11–12. Defendants also noted that courts within the Fifth Circuit have repeatedly rejected requests for video recording of IMEs for the same reason: recording

3

alters the nature of the examination.  Further, Defendants explained that allowing a second defense expert to observe would be the most efficient approach in a multi-Defendant case and that additional clinicians routinely participate in medical examinations in usual medical practice. Plaintiff disagreed and refused to proceed with an IME without their proposed conditions. Tellingly, despite Plaintiffs' insistence on video recording Defendants' expert's examination, Plaintiffs' counsel conceded that they had not recorded their own expert's exam and would be unable to provide such a recording to Defendants.

## ARGUMENT

### I.  Plaintiffs Cannot Justify Any Video-Recording Requirement Under Rule 35.

Rule 35 authorizes an IME "when a party puts his mental or physical condition in controversy." *Crumedy v. XYZ Ins. Co.*, No. CV 22-4570, 2023 WL 6293867, at *2 (E.D. La. Sept. 27, 2023); Fed. R. Civ. P. 35(a)(1) (allowing the court to order IME of "a party whose mental or physical condition . . . is in controversy").  Rule 35 is intended "to provide a level playing field between the parties in their respective efforts to appraise [the] plaintiff's physical state." *Crumedy*, 2023 WL 6293867, at *5.  A party seeking an IME must generally satisfy two requirements: "(1) the party's physical or mental condition must be in controversy; and (2) the moving party must show good cause as to why the motion should be granted." *Id.* at *2.

Neither factor is in dispute here.  When a plaintiff, as here, alleges personal injury caused by the defendant, intends to prove that claim through expert testimony, and has been examined by his own expert, the defendant is permitted to conduct its own expert medical examination of the plaintiff to "preserve the equal footing of the parties" and have an "adequate opportunity to challenge the plaintiff's claim." *See id.* at *3, *5; *see also id.* at *2 ("Generally . . . when a plaintiff asserts a mental or physical injury that places her mental or physical condition in controversy,

good cause for the need of an examination to determine the existence and extent of such asserted injury is established."); *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 423 (S.D. Tex. 2012) ("[A] plaintiff in a negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of the asserted injury." (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964))).

Given the purpose of Rule 35, courts have repeatedly concluded that the presence of recording devices in medical examinations would alter the examinations, and thus have declined to allow recording IMEs.  *See Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 397 (S.D. Tex. 2013) ("Because [t]he introduction of a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—changes the nature of the proceeding, the court must be convinced that a protective order [requiring such conditions] is necessary." (internal quotation marks omitted)); *Davis v. Baker Hughes Oilfield Operations, Inc.*, No. CV 05-2679, 2006 WL 8456394, at *2 (E.D. La. June 15, 2006) ("The Court is of the opinion that the presence of a videographer to videotape the exam could diminish the accuracy of the exam and influence the result."); *Rodriguez v. Pictsweet Co.*, No. CIV.A. B-07-113, 2008 WL 2019460, at *2 (S.D. Tex. May 9, 2008) ("This Court holds that as the presence of counsel or a recording device may interfere with a Rule 35 mental examination, the requesting party must persuade the court that such requests are necessary.").

These courts' rationale — that video recording can interfere with integrity of the IME — squarely aligns with the experience of the clinician who will conduct this examination: Dr. Alexander Kolevzon.  Dr. Kolevzon is a renowned child psychiatrist who serves as the Clinical Director of the Seaver Autism Center for Research and Treatment at Mount Sinai.  Ex. B, Kolevzon

Aff., ¶¶ 1–2.  In that role and in his private clinical practice, Dr. Kolevzon has conducted or supervised approximately 3,500 clinical assessments of patients with ASD, none of which have been video recorded.  *Id.* ¶¶ 4, 11.  Video or other recording is not part of the standard of clinical care in examining patients with ASD and could negatively impact his ability to conduct the medical examination by interfering with his ability to observe uninhibited conduct by JMW or obtain information from JMW or his parents.  *Id.* ¶¶ 11–12.

In considering requests for recording of Rule 35 examinations, courts in the Fifth Circuit have held that mere unsupported allegations or suspicions that the examiner would perform the examination inappropriately do not justify recording the IME.  *See, e.g.*, *Davis*, 2006 WL 8456394, at *2 (denying plaintiff's request for video recording where plaintiff argued that "because [the examiner] is unfamiliar to [plaintiff's] counsel, there may be something questionable about his methodology that could be revealed by the videotape"); *Rodriguez*, 2008 WL 2019460, at *2 (rejecting plaintiff's argument that examiner could not be impartial in IME due to prior unsupported opinions and incomplete deposition testimony because none of those statements indicated examiner "would be prejudiced against Plaintiff or biased towards Defendant" or "would not conduct the [] examination professionally"); *Crumedy*, 2023 WL 6293867, at *5 ("allegations of harm unsubstantiated by specific examples" do not justify video recording).

Instead, a party requesting recording bears the burden of showing "special circumstances" for the request.  *See Ornelas*, 292 F.R.D at 397; *Crumedy*, 2023 WL 6293867 at *5.  For example, the court in *Ornelas* identified facts that other courts have determined justified IME recording as including when a non-minor plaintiff with mental health issues would have extreme difficulty communicating with his attorney about what occurred during the examination; when the plaintiff presented specific evidence that the examiner was "abusive and ha[d] a predilection for ignoring

court orders imposing conditions upon his examinations"; or when the *examiner* requested video recording to assist him in observing medically significant information. *See* 292 F.R.D. at 397 (quoting *Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 652, 654 (D. Kan. 2003) (internal quotation marks omitted)) (citing *Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011); *T.B. ex rel. G.B. v. Chico Unified Sch. Dist.*, No. CIV S-07-0926-GEBCMK, 2009 WL 837468, at *2 (E.D. Cal. Mar. 26, 2009)). The plaintiff in *Ornelas* failed to proffer any unique circumstances justifying recording, and the court denied the request. *Id.*

Likewise, no "special circumstances" warranting recording are present in this case. As the parties have agreed, Plaintiffs (JMW's parents) will be present, will participate in the examination, and will be able to adequately communicate with Plaintiffs' counsel about the examination after it concludes. Unlike the example described in *Ornelas* of an examiner requesting video recording for a clinical purpose, Defendants' expert examiner asserts that video recording could impede his ability to obtain reliable information and is not a component of his usual practice. *See* Ex. B, Kolevzon Aff, ¶¶ 11–12. And Plaintiffs have failed to provide any reason that Dr. Kolevzon's qualifications, integrity, or professionalism should be questioned. Instead, "based on nothing more than suspicion, [Plaintiffs] seek[] to impose conditions on the IME that are disfavored by the Courts." *Davis*, 2006 WL 8456394, at *2.[1]

Finally, because Plaintiffs' expert(s) have conducted an examination(s) of JMW without the artificiality of video recording, Defendants' expert should be permitted to do the same

---

[1] To the extent that Plaintiffs cite the physical examination during a different IME, in a separate baby food litigation case, as justification to record this IME, that argument fails. First, Defendants here have already agreed to conditions that address Plaintiffs' concerns about that separate IME. Second, that IME involved a different examiner. Thus, Plaintiffs can point to "nothing more than suspicion" that Dr. Kolevzon's examination would be unprofessional or inappropriate in any way. *Davis*, 2006 WL 8456394, at *2.

consistent with Rule 35's intent.  See *Crumedy*, 2023 WL 6293867, at *5 ("[W]here the plaintiff

has been examined by his own expert outside of the presence of observers, 'the defendants should

be afforded the same opportunity.'" (citation omitted)).  This Court should order an IME without

video or other recording.

## II.     The Court Should Allow a Second Clinician to Attend the IME in This Multi-Defendant Case.

Unlike the presence of a recording device or a non-medical professional such as a

videographer, stenographer, or lawyer, the presence of more than one clinician at an examination

is both common and consistent with standard medical practice. *See* Ex. B, Kolevzon Aff., ¶ 13.

Thus, Defendants' request that a second defense expert be permitted to observe the IME in person

does not implicate the same concerns that the presence of recording devices, lawyers, or other third

parties does.

In addition to consistency with standard medical practice, efficiency and privacy concerns

warrant allowing two defense experts to be present during the examination.  Plaintiffs have alleged

claims against four Defendants — two separate baby food manufacturers and two additional sellers

— each of which could be entitled to an adequate opportunity to challenge Plaintiffs' claims

through a Rule 35 examination.  *See Crumedy*, 2023 WL 6293867, at *3 ("So long as the 'in

controversy' and 'good cause' requirements are met for each requested exam, Rule 35 does not

otherwise limit the number of examinations a party may be required to undergo, nor would such a

limitation be judicious.").  Defendants have retained multiple causation experts to refute the central

claim in this case that products manufactured or sold by Defendants can and did cause JMW to

develop ASD.  Instead of requesting multiple IMEs, Defendants have collectively proposed a

single IME at which one defense expert will perform the exam and another will observe.  And, in

doing so, Defendants have acceded to nearly every condition Plaintiffs have requested.  The Court

should allow the IME to occur with two clinicians present, because that condition aligns with medical practice and would allow efficient discovery in this case.

## CONCLUSION

Defendants respectfully request the Court order an IME without video recording and with two defense experts in attendance.

Dated:  December 1, 2023                    Respectfully submitted,

**GIEGER, LABORDE & LAPEROUSE, LLC**

/s/ Emily Eagan
Emily E. Eagan (La. Bar No. 29166)
Suite 4800 – Hancock Whitney Center
701 Poydras Street
New Orleans, LA 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
eeagan@glllaw.com

**COVINGTON & BURLING LLP**

/s/ David Sneed
Michael X. Imbroscio (Pro Hac Vice)
David N. Sneed (Pro Hac Vice)
Elizabeth T. Fouhey (Pro Hac Vice)
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 778-5868
mimbroscio@cov.com
dsneed@cov.com
efouhey@cov.com

*Attorneys for Defendant*
*The Hain Celestial Group, Inc.*

9

**IRWIN FRITCHIE URQUHART & MOORE LLC**

 /s/ Camala Capodice
Quentin F. Urquhart, Jr. (La. Bar No. 14475)
Camala E. Capodice (La. Bar No. 29117)
Gabriel J. Winsberg (La. Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101
qurquhart@irwinllc.com
ccapodice@irwinllc.com
gwinsberg@irwinllc.com

**DLA PIPER LLP (US)**

/s/ Lyn Pruitt
Lyn Pruitt (Pro Hac Vice)
10809 Executive Center Drive, Suite 205
Little Rock, AR 72211
Telephone: (214) 743-4582
lyn.pruitt@dlapiper.com

*Attorneys for Defendant*
*Nurture, LLC*

**STONE PIGMAN WALTHER WITTMANN LLC**

/s/ Douglas Cochran
Douglas J. Cochran (La. Bar No. 20751)
Nicholas J. Wehlen (La. Bar No. 29476)
Walter F. Metzinger, III (La. Bar No. 37799)
One American Place, Suite 1150
301 Main Street
Baton Rouge, Louisiana 70825
Telephone: (225) 490-8900
Facsimile: (504) 581-3361
dcochran@stonepigman.com
nwehlen@stonepigman.com
fmetzinger@stonepigman.com

*Attorneys for Defendant*
*Amazon.com Services, LLC*

10

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ**

/s/ Brian Ballay
Steven F. Griffith, Jr. (La. Bar No. 27232)
Brian M. Ballay (La Bar No. 29077)
Alexandra B. Rychlak (La. Bar No. 37612)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
sgriffith@bakerdonelson.com
bballay@bakerdonelson.com
arychlak@bakerdonelson.com

*Attorneys for Defendant
Whole Foods Market Services, Inc.*

11

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 1st day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ Emily Eagan