UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Margaret Watkins and James Watkins, on behalf of Their Minor Son, JMW, | CIVIL ACTION NO. 22-551 |
| *Plaintiff,* | JUDGE DARREL JAMES PAPILLION |
| v. | |
| Nurture, LLC; Hain Celestial Group, Inc.; Amazon.com Services LLC; Whole Foods Market Services, Inc.; and Does 1-100, | MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |
| *Defendants.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO WHOLE FOODS'
MOTION FOR PROTECTIVE ORDER**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff who respectfully submits this Response in Opposition to Defendant Whole Foods Market Services, Inc. ("Whole Foods") Motion for Protective Order concerning Plaintiff's Amended Notice of Deposition pursuant to Rule 30(b)(6).

**BACKGROUND**

On November 6, 2023, Plaintiff served a Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) on Defendant Whole Foods Market Services, Inc. (Whole Foods) which contained a detailed list of 18 topics ("First Notice"). Rule 30(b)(6) requires an entity served with a deposition notice to "designate one or more . . . persons who consent to testify on its behalf . . . about information known or reasonably knowable to the organization." Fed. R. Civ. P. 30(b)(6). An entity producing a witness for a Rule 30(b)(6) deposition must ensure that the person(s) produced for deposition has the authority to speak on behalf of the corporation with respect to the areas within the deposition. *Brazos River Auth. V. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

1

Upon service of the deposition notice, Rule 30(b)(6) expressly requires that the parties promptly meet and confer in good faith about the matters for examination.

Because Plaintiff's experts need sufficient time to review Whole Foods' corporate representative testimony before the January 26, 2024, expert disclosure deadline, Plaintiff's First Notice called for a deposition date of December 1, 2023, with the understanding that the Parties would work to find a mutually agreeable date. On November 28, when it became clear that a Whole Foods corporate representative would not be made available for the December 1, 2023, deposition date, Plaintiff amended the notice and rescheduled the deposition date for December 18, 2023[1] ("Second Notice"). **See Exhibit A.** Through the meet and confer process, Plaintiff made multiple and significant concessions. Unfortunately, a few disputes remain, discussed below.

## LEGAL STANDARD

Discovery at this stage of litigation necessitates a lower threshold for relevance under Fed. R. Civ. P. 26 and requires a "broader scope" given the nature of litigation. *Chauvin v. United Parcel Serv., Inc.,* 2023 WL 4175100, at 3-4. As the Court in Chauvin articulated, "[a]t the discovery stage, relevance includes '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' Discovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.' If relevance is in doubt, the court should be permissive in allowing discovery." *Id.* at 4.

At the same time, the proponent of the deposition notice has an obligation to "describe with reasonable particularity the matters for examination." *Id. at 6 citing* Rule 30(b)(6).

---

[1] Since the December 18, 2023 deposition date has since passed, Plaintiff intends on filing its Third Amended Notice rescheduling the deposition to a date in the future on or before January 20, 2023.

## ARGUMENT

Consistent with this obligation under Fed. R. Civ. P. 30(b)(6) and encompassing the spirit of Fed. R. Civ. P. 26, Plaintiff's Rule 30(b)(6) notice contained a detailed list of 18 topics. Defendant has now filed the instant motion opposing Plaintiff's Rule 30(b)(6) deposition request on various grounds. A party from whom disclosure is sought may move for a protective order. Fed. R. Civ. P. 26(c)(1). However, granting a protective order requires the party opposing the deposition to prove there is "good cause" to do so, as well as a specific need for protection. Fed. R. Civ. Pro. 26(c)(1); *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir.), cert, denied, 498 U.S. 895, 111 S.Ct. 244 (1990). In doing so, the party seeking the protective order bears the burden of showing it is necessary "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A "court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). To determine good cause, the court must balance the requesting party's need for information with the risk of injury without the protective order. *Rahman v. Allstate Ins. Co.*, 2023 WL 6582993, at *4 (E.D. La. Oct. 10, 2023). A deposition of a party or its agent is permissible, and a protective order should only be granted if there are "extraordinary circumstances based on specific facts" justifying it. *Campos V. Webb County Tex.,* 288 F.R.D. 134, 136 (citing and quoting Jennings v. Family Mgmt., 201 F.R.D. 272 (D.D.C. 2001)).

This burden cannot be met with blanket invocations that the discovery requests are disproportional without further elaboration. The concept of proportionality includes

considerations of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Defendant has failed to meet its burden. While the defendant plays lip service to proportionality throughout its memorandum, it makes no effort to show that these considerations support denial of Plaintiff's Rule 30(b)(6) requests.

### A. Plaintiff's Requested Time Scope Is Proper.

First, Defendant incorrectly argues that the time scope requested in Plaintiff's notice is overbroad and not proportional to the litigation because Plaintiff's request for information predates the dates Plaintiff consumed the baby food at issue. For the reasons set forth herein, Plaintiff requests the relevant time period include 2013 – present[2]. Whole Foods objects and is requesting the Court limit the relevant time period to the years Plaintiff consumed the baby food at issue - October 2018 to December 2020. However, Plaintiff's need for information from 2013 moving forward is relevant and crucial to prosecute his negligence and redhibition claims against Whole Foods, which both hinge on Whole Foods' actual and constructive knowledge of the toxic metal levels in baby food.

Plaintiff alleges that baby food manufactured by Co-Defendants Nurture, LLC ("Nurture") and/or Hain Celestial Group, Inc.'s ("Hain") and purchased at Whole Foods and Amazon.com Services LLC ("Amazon") contained toxic and dangerously high levels of heavy metals (namely, arsenic, mercury, and lead) and that exposure to those toxic heavy metals caused his injuries. Compl. ¶ 1. As early as 2012, Consumer Reports began publishing articles indicating an emerging

---

[2] Plaintiff's Second Notice designates the relevant time period for this case as 2012 to present and the Second Notice sometimes refers to 2014. However, during the conferral process, Plaintiff clarified that the 2012 and 2014 references were typos and the requested relevant time period is 2013 – present.

concern over the arsenic contents in baby food, stating "[o]rganic rice baby cereal, rice breakfast cereals, brown rice, white rice—new tests by Consumer Reports have found that those and other types of rice products on grocery shelves contain arsenic, many at worrisome levels" and that "arsenic not only is a potent human carcinogen, but also can set up children for other health problems later in life."[3] Upon information and belief, in 2012, Whole Foods was issued a Congressional request for information related to arsenic in its rice. Notably, several of the baby foods at issue contain rice as a core ingredient.  A year later, an updated Consumer Report stated, "[a]rsenic has long been recognized as a poison and a contaminant in drinking water, but now concerns are growing about arsenic in foods, especially in fruit juices that are a mainstay for children."[4]

These two consumer reports highlighted several other media and health organizations that provided notice of the growing concern of heavy metals in baby food. Indeed, several other pre-October 2018 reports include: (1) "Why Arsenic Might Be in Your Baby Food," Environmental Working Group, September 21, 2015;[5] (2) "So There's Arsenic in Our Rice—Now What?" The Atlantic, September 27, 2012;[6] (3) "Baby Food Makers in California Court Over Lead Warnings," CNN, April 9, 2013;[7] (4) "Organic baby food: It's more expensive, but it may not be more nutritious," The Washington Post, March 18, 2013;[8] (5) "High levels of lead detected in rice

---

[3] *Arsenic in your food, Our findings show a real need for federal standards for this toxin*, CONSUMER REPORTS, Nov. 2012, https://www.consumerreports.org/cro/magazine/2012/11/arsenic-in-your-food/index.htm.
[4] *Arsenic in Your Juice, How much is too much? Federal limits don't exist*, CONSUMER REPORTS, Oct. 3. 2013, https://www.consumerreports.org/arsenic-in-food/arsenic-in-your-juice-apple-juice-grape-juice/
[5] *Why Arsenic Might Be in Your Baby Food*, Env't Working Grp., Sept. 21, 2015. Available at https://www.ewg.org/news-insights/news/why-arsenic-might-be-your-baby-food.
[6] Elaine Schattner, *So There's Arsenic in Our Rice – Now What?*, THE ATLANTIC, Sept. 27, 2012, https://www.theatlantic.com/health/archive/2012/09/so-theres-arsenic-in-our-rice-now-what/262972/.
[7] Danna Ford, *Baby food makers in California court over lead warnings*, CNN, Apr. 9, 2013, https://www.cnn.com/2013/04/08/health/baby-food-makers-lead/index.html.
[8] Rachel Saslow, *Organic baby food: It's more expensive, but it may not be more nutritious*, WASH. POST, Mar. 18, 2013, https://www.washingtonpost.com/national/health-science/organic-baby-food-its-more-expensive-but-it-may-not-be-more-nutritious/2013/03/18/b24f91d6-656a-11e2-b84d-21c7b65985ee_story.html.

imported from certain countries," American Chemical Society via ScienceDaily, April 10, 2013.[9] The National Institutes of Health published an article, "Inorganic Arsenic levels in Baby Rice Are of Concern" as early as 2008.[10] Additionally, in 2012, the Organic Trade Association issued a white paper titled, "Arsenic in Food and Agriculture: An Assessment by the Organic Trade Association," which discusses the dangers of arsenic for children/infants.[11]

Further, to succeed on the redhibition claim, Plaintiff must prove Whole Foods was a bad faith seller because it "knew or should have known" the product was defective at the time of the sale. La. C.C. 2545. As a retailer and seller of baby foods, it is believed that Whole Foods was aware of the Consumer Reports. In fact, in August of 2012, Whole Foods itself published an article in its very own "Whole Foods Magazine" titled "Child's Play" in which it discusses the link between diet and behavior as it relates to Autism and ADHD.[12] **See Exhibit B.** The Whole Foods Magazine article warns "[p]arents may also want to steer clear of toxins (like pesticides and heavy metals. A recent article from Environmental Health Perspectives (12) published a list of *preventable* environmental toxins that experts feel could cause mental neurotoxicity, and a shortlist of possible chemicals related to autism and learning disabilities." The article goes on to say "both [autism and ADHD] have been studied in light of the role that diet may play. The link between diet and behavior, focus and autism is well documented by research as well as the benefit that supplements are to these conditions." At this stage of the litigation, Plaintiff is allowed to discover Defendant's knowledge of the presence of heavy metals in baby food. Furthermore, Defendant's

---

[9] American Chemical Society, *High levels of lead detected in rice imported from certain countries*, SCIENCE DAILY, Apr. 10, 2013, https://www.sciencedaily.com/releases/2013/04/130410201824.htm.

[10] Andrew Meharg et al, *Inorganic arsenic levels in baby rice are of concern*, 152,3 Environ. Pollut. 746, 746-49 (2008), https://pubmed.ncbi.nlm.nih.gov/18339463/.

[11] *Arsenic's presence reflects a wide problem for all food production*, Press Release, Organic Trade Ass'n, Feb. 16, 2012, https://ota.com/news/press-releases/17096.

[12] Kaylynn Chiarello-Ebner, *Child's Play*, WHOLE FOODS MAGAZINE, Jul. 19, 2012.

knowledge of, and response to, the 2012-2013 Consumer Reports (and other reports) is directly relevant as to Defendant's knowledge and/or constructive knowledge of defect in the products it sold and is directly relevant as to whether Defendant was a bad faith seller.

One exception to the relevant time period of 2013 – present is Topic 13, which requests "any consumer complaints, questions, and inquiries Whole Foods received about Heavy Metals in Baby Food." Because Topic 13 is directly related to Whole Foods' actual knowledge about heavy metals in baby food and, therefore, its liability in this lawsuit, Plaintiff requests that Topic 13 not be limited by time.

### B. Plaintiff Agreed to Limit the Definition of Baby Food to the Product Lines Plaintiff Consumed

Defendant argues that Plaintiff's Second Notice seeking testimony about "any and/or all food products marketed for consumption by infants, babies, or toddlers…" is overbroad and not proportional to the case. However, it fails to recognize Plaintiff's concessions after meeting and conferring in this regard in which Plaintiff agreed to limit the definition of "Baby Food" to the product lines consumed by Plaintiff, to include:

**Earth's Best Organic**

1. Puree Pouch
2. Organic Purees
3. Purees
4. Puff Snacks
5. Pouches
6. Oatmeal

**Happy Baby Organics**
1. Puffs
2. Superfood Puffs
3. Organic Puffs
4. Rice Cakes
5. Clearly Crafted Stage 1 Baby Food
6. Clearly Crafted Stage 1 Baby Food Pouches
7. Clearly Crafted Stage 2 Baby Food

7

    8. Clearly Crafted Stage 2 Baby Food Pouches
    9. Stage 4 Baby Food
    10. Freeze Dried Veggie & Fruit Snacks
    11. Gentle Teething Wafers Snacks
    12. Organic Multigrain Cereal
    13. Yogis Freeze-Dried Yogurt & Fruit Snacks
    14. Simple Combos Stage 2 Baby Food

**Happy Tot Organics**
1. Stage 4 Baby Food
2. Organics Stage 4 Baby Food Pouch
3. Stage 4 Super Foods Baby Food Pouches
4. Toddler Food Pouches
5. Super Foods Stage 4 Baby Food
6. Super Morning Foods
7. Super Morning Organics Stage 4 Baby Food
8. Super Morning Stage 4 Baby Food Pouch

This concession confirms that the request is directly proportional to the needs of this case and renders Defendant's objection improper. The above products were manufactured by Co-Defendants Nurture and/or Hain and purchased from Whole Foods and/or Amazon. Given the narrowed scope of Plaintiff's definition and scope of baby food, Whole Foods is unable to meet its burden and has failed to demonstrate the extraordinary circumstances that would merit a protective order.

    **C. Topic Numbers 1 and 2 are Narrowly Tailored to Discoverable Information and are Proper.**

The publicly available information, set forth above, strongly suggests that Whole Foods had actual knowledge of the dangers of heavy metals in baby food and that exposure to those heavy metals would cause the exact injuries Plaintiff suffered. Even so, Plaintiff's negligence and redhibitory claims against Whole Foods allow and require investigation into Whole Foods' actual and constructive knowledge of toxic levels of heavy metals in the baby food purchased by Plaintiff. First, for Plaintiff's negligence claim, Plaintiff must establish that Whole Foods is considered a seller under the definition of Louisiana Products Liability Act. Pursuant to La. R.S. 9:2800.52,, a

8

"seller" is a "person or entity who is not a manufacturer and who is in the business of conveying title or possession of a product to another person or entity in exchange for anything of value."

For Plaintiff's negligence claim, once Whole foods is proven to be a seller, Plaintiff has the burden of proving that Whole Foods had knowledge or constructive knowledge about the toxic heavy metals in baby food purchased by Plaintiff. *Jackson v. Sears Authorized Retail Dealer Store*, 821 So. 2d 590 36, 166 (La. App. 2d Cir. 6/12/02) citing *Slaid v. Evergreen Indem., Ltd.*, 745 So. 2d 793, 32, 363 (La. App. 2d Cir. 10/27/99).

Topics 1 and 2 are drafted with particularity to focus on the issues of the case – heavy metals and baby food and directly relate to Whole Foods' knowledge of the toxic levels of heavy metals in baby food. Similarly, an element of Plaintiff's redhibition claim is whether Whole Foods' knew or declared the thing had a quality it did not have. La. C.C. art. 2545. Importantly, while Whole Foods contends it had no duty to inspect the baby food, this does not negate Whole Foods' duty to report known defects. *Id.* As such, Whole Foods' knowledge is directly relevant to Plaintiff's claims and to whether Defendant was a bad faith seller. Defendant's request for a Protective Order should be denied.

**D. Topic Number 3 is Proper.**

Plaintiff agrees to limit Topic 3 to Whole Foods' relationship or contracts with Nurture and Hain, the two Co-Defendants who manufactured the food at issue in this case. With respect to the baby food as a category, Plaintiff intends to inquire whether Nurture and Hain received any preferential treatment in comparison to other baby food manufacturers. Given these concessions, Topic 3 is drafted with sufficient particularity and is directly related to its claims in the case. Defendant's request for Protective Order should be denied.

### E. Topic Number 4 is Narrowly Tailored and is Proper.

The entirety of Topic 4 states:

> "Whole Foods' Communications with any Baby Food Manufacturer, including but not limited to Whole Foods' participation in any industry groups, professional societies, or working groups where any Defendant in this matter is a member, *relating or referring To*: (a) Heavy Metals; (b) Baby Food product labels, labeling, and warnings; (c) any third-party report concerning Heavy Metals in Baby Food and Whole Foods' response to any third-party report concerning Heavy Metals; and (d) regulations, rules or laws affecting the marketing, sale, or labeling of Baby Food products." (Emphasis added). **See Exhibit A, Topic 4.**

Whole Foods directs the Court to the wrong language. Rather, Plaintiff's use of the language, "*relating or referring to*," properly limits the scope of Topic 4 to the focus of this case – heavy metals in baby food. Whether Whole Foods is in any industry group, professional society, or working group that discusses heavy metals in baby food is highly relevant to the claims against Whole Foods as it relates to Whole Foods' knowledge of the problem and Whole Foods' status as a bad faith seller. Taking into account that Plaintiff has already agreed to limit the definition of "Baby Food," Defendant's request to limit or bar this discovery request is improper and should be denied.

### F. Topic 5 is Narrowly Tailored and Proper.

Plaintiff has agreed to limit the scope of Topic 5 to the warranties, guarantees or representations by and between Whole Foods and Nurture & Hain. That said, Plaintiff intends to inquire whether Nurture & Hain were treated the same as other baby food manufacturers that have a contractual relationship with Whole Foods. Meaning, Plaintiff requests confirmation that Nurture and Hain did not have their own set of "rules" regarding the warranties, guarantees, or representations they were (or were not) required to make regarding the heavy metal in their baby food. This information is relevant to Whole Foods' knowledge and status as a bad faith seller.

Presumably, that should be a relatively easy confirmation. Accordingly, Defendant's request to limit or bar this discovery request is improper and should be denied.

### G. Topic Numbers 6 and 7 are Proper.

Whole Foods claims that these topics are deficient because it is confused by the words "efforts" and "due diligence." This is a disingenuous argument. Not only is "efforts" clearly defined in the Second Notice,[13] but both "efforts" and "due diligence" are members of the plain language terms commonly used and easily understood in everyday communication. Further, the requests all directly go to determining Defendant's actual and constructive knowledge of toxic heavy metals in the baby food products it sold and is directly relevant as to whether Defendant was a bad faith seller. The requests are written with particularity and Defendant has not met the burden required for a Protective Order. Defendant's request to limit or bar this discovery should be denied.

### H. Topic Numbers 8, 9, and 10 are Proper.

The entirety of Topic 8 states,

> "Whole Foods' Communications or Meetings in which any Whole Foods agent, employee, officer, contractor or retained expert participated ***regarding Heavy Metals in Baby Food products***. This Topic includes:
> a. The individuals and/or entitles involved;
> b. The detailed substance of the discussion;
> c. The ultimate decision or action taken by [Whole Foods]; and
> d. The Date on which each Communication or Meeting took place.

(Emphasis Added). **See Exhibit A**, **Topic 8**.

Similar to Topic 4 above, Whole Foods directs the Court to the wrong language. Rather, Plaintiff's use of the language, "***regarding Heavy Metals in Baby Food products***," properly limits

---

[13] "Efforts" is defined in the Second Notice as "the polices, standards, procedures, practices, systems for, personnel or third parties involved in, and records created and maintained of a particular action, function or issue, including, without limitation, the development and use of associated written or instructive materials."

11

the scope of Topic 8 to the focus of this case – heavy metals in baby food. Whether a Whole Foods agent, employee officer, contractor or retained expert was participating in meetings and communications regarding heavy metal and baby food is highly relevant to the claims against Whole Foods as it relates to Whole Foods' knowledge of the problem and Whole Foods' status as a bad faith seller. Taking into account that Plaintiff has already agreed to limit the definition of "Baby Food" as set forth above, Defendant's request to limit or bar this discovery request is improper and should be denied.

Topic 9 is relevant because if Whole Foods was actively making statements regarding "toxins, chemicals, toxicity; brain development; or intellectual, developmental, or behavioral disability or delay made to consumers or to the public in any form, including, but not limited to, statements made via social media, advertisements, publications, press releases, videos, labeling, website, books, newsletters, magazines, chats, email, or interview," then it demonstrates that Whole Foods was aware of the risks associated with the defective product Plaintiff purchased. Exhibit B illustrates Whole Foods was, in fact engaging in such communications – as early as 2012.

Topic 10 requests information about whether Whole Foods was monitoring and responding to "reports, research, testing, or news articles concerning Heavy Metals." Both Topics are directly relevant as to Defendant's knowledge or constructive knowledge about the potential defect in the product and whether defendant was a bad faith seller.

I. **Topic Number 11 is Proper.**

Topic 11 requests information about "scientific literature concerning the association, correlation, or relationship between heavy metals and autism, developmental delay, or any other intellectual or behavioral disability; the levels or presence of heavy metals in food; and the

reduction of levels of heavy metals in food" and is properly limited in scope as it focuses on the issues of this case – consumption of heavy metals and the correlation to autism. Again, these requests are directly related to Whole Foods' actual and constructive knowledge about the defective product Plaintiff purchased and whether Defendant was a bad faith seller. Defendant's request to limit or bar this discovery request is improper and should be denied.

### J. Topic Number 14 is Proper.

Defendant has made no effort whatsoever to support its erroneous claim that Plaintiff's request regarding "the factual basis of any of [Whole Foods'] affirmative defenses" is any way over broad or ambiguous. Simply stating "this request is generally broad and ambiguous" does not provide the Court with necessary specific facts or extraordinary circumstances to justify the need for a protective order. Defendant has failed to meet its burden and the request for a protective order should be denied.

### K. Topic Number 15 is Proper.

Defendant argues that the relationship between Defendant Whole Foods and Defendant Amazon are irrelevant, over broad, and harassing. On November 27, 2023, Plaintiff agreed to narrow Topic 15 to, "[t]he nature of the relationship between Whole Foods and Amazon as it relates to fulfillment of orders, the corporate structure, and decision-making processes regarding toxic heavy metals." During additional meet and confers, Plaintiff further asked that a witness merely confirm that Amazon is not required to follow Whole Foods rules, requirements, or guidance concerning the safety of food products. Plaintiff informed both Whole Foods and Amazon that Plaintiff is only requesting this testimony from one witness and suggested they decide which entity could proffer same.

The Louisiana Products Liability Act defines a "seller" as a "person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person . . . " La. R.S. 9:2800.53. Accordingly, Plaintiff needs to understand when an order for Baby Food was placed with Whole Foods whether Amazon was involved in distributing, delivering, or otherwise fulfilling that order and vice versa.

Furthermore, important to Plaintiff's negligence and redhibitory claims is Plaintiff's understanding of how decisions were made by both Whole Foods and Amazon regarding monitoring and creating safety standards for toxic heavy metals. Determining what the relationship is between the two Defendants, as it pertains to the decision-making process regarding toxic heavy metals, is crucial to Plaintiff's case. Defendant has failed to demonstrate how this specific, narrow request creates extraordinary circumstances for defendant or how this request subjects Defendant to annoyance, embarrassment, oppression, or undue burden or expense. Defendant's request for a protective order in this regard is unnecessary and should not be granted.

**L. Topic Number 16 is Proper.**

Plaintiff will limit this topic to include, "Whole Foods' role in supplying Baby Food purchased in the Prime Now App and the process by which Whole Foods supplies those products." As revised, Topic 16 is proper as it relates to Whole Foods' possession and conveyance of title of the baby food. Information such as Whole Foods' general policies for fulfilling an order, third-party involvement in fulfilling Plaintiff's orders, and Whole Foods' possession of the product and conveyance of title are all directly relevant factors for determining whether Whole Foods is a seller under La. R.S. 9:2800.53. Plaintiff's parents ordered baby food on the Prime Now App and several days later, the order arrives at Plaintiff's home. The requested information is relevant and

discoverable. Plaintiff's request is sufficiently narrow and directly related to its claims in the case and Defendant's request for Protective Order should be denied.

**M. Topic Number 17 is Proper.**

If Defendant de-listed a baby food product because that product contained dangerous levels of heavy metals, that is highly relevant as it relates to Defendant's actual or constructive knowledge of the dangers associated with the products it sold to the Watkins family and it relates to its status as a bad faith seller. Topic 17 only asks for de-listings of *baby food products because of heavy metals*. This request is narrow and relevant. This information is directly relevant to whether Whole Foods may have been on notice that toxic metal contamination is an issue for baby foods categorically and whether Defendant was a bad faith seller. As the Topic request is directly relevant to Plaintiff's claims and will likely lead to the discovery of relevant information, Defendant's request for a Protective Order is improper and should be denied.

**N. Topic Number 18 is Proper.**

Plaintiff does not seek Whole Foods' proprietary intellectual property. Indeed, on December 5, 2023, Plaintiff offered the following written compromise, "we agreed to . . . exclude any and all intellectual property or other information concerning the technical operation of Whole Foods' algorithms. Instead, we seek a general description of what information and/or parameters Whole Foods uses to identify/determine what particular products are displayed and prioritized to customers shopping on the Whole Foods site. Note that we are open to further negotiation on this language. I've provided this description to give you a good sense of the narrow information we seek." Plaintiff's concession is narrowly tailored and directly relates to Whole Foods' knowledge of Plaintiff as a buyer and as a service user. Further, this information is directly relevant to

Plaintiff's claims against Whole Foods for negligence, and whether Defendant was a bad faith seller.

First, Plaintiff alleges that Whole Foods failed to properly inspect, monitor, test, investigate, and take other such steps necessary to ensure its curation, selection, and sale of Baby Food did not unreasonably pose a danger to its patrons. Compl. ¶ 124. This risk of danger increases if Whole Foods knew, through Plaintiff's search history or by other means, that Plaintiff was vulnerable to toxic metals. As such, it is important to the negligence claim that Plaintiff understand Whole Foods' knowledge of Plaintiff while his parents were using Whole Foods platform.

Second, Chapter 9, "Redhibitions", of the Louisiana Code sits art. 2524 states,

> "When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.

Here, Plaintiff's parents purchased baby food from Whole Foods' online website for the purpose of giving it to their son, yet the product they received was "more appropriately warranted as rat food and was not healthy or something that a baby should ever ingest." Compl. ¶ 117, 119. Thus, within this claim, Plaintiff is entitled to know what Whole Foods, as the seller, knew about Plaintiff, as the buyer. If Whole Foods knew that Plaintiff was attempting to buy healthy and/or safe baby food and was relying on Whole Foods' judgment to select it, then this information is relevant to the claim and discoverable. The information sought by Plaintiff is specific to the Watkins' family and relates to the claims of redhibition and negligence. Denying Plaintiff's discovery request would be improper.

16

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that this Court deny Whole Foods' motion for Protective Order and order Whole Foods to designate a witness to testify regarding the timeframe and topics of the 30(b)(6) deposition, as amended in conference and plead above.

Respectfully submitted,

*/s/ Lindsey A. Cheek*
**Lindsey A. Cheek**
The Cheek Law Firm, LLC
650 Poydras St., Suite 2310
New Orleans, LA 70130
504-307-4333
Email: LCheek@thecheeklawfirm.com

**Madeleine Brumley Clavier**
**Aimee H. Wagstaff**
Wagstaff Law Firm
940 N Lincoln St.
Denver, CO 80203
720-208-9402
Email: mclavier@wagstafflawfirm.com
Email: awagstaff@wagstafflawfirm.com

**Alexandra M. Walsh**
Walsh Law PLLC
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
202-780-4127
Fax: 202-780-3678
Email: awalsh@alexwalshlaw.com

**Janna L Maples**
Walsh Law PLLC
1500 4th Avenue N
Ste Apt 202
Nashville, TN 37208
615-879-7804
Fax: 202-780-3678
Email: jmaples@alexwalshlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record registered in the federal CM/ECF system.

*/s/ Lindsey A. Cheek*
