IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARGARET WATKINS AND JAMES WATKINS, ON BEHALF OF THEIR MINOR SON, JMW, <br><br> Plaintiffs, <br><br> v. <br><br> NURTURE, LLC.; HAIN CELESTIAL GROUP, INC.; AMAZON.COM SERVICES LLC; WHOLE FOODS MARKET SERVICES, INC.; AND DOES 1-100, <br><br> Defendants. | CASE NO. 22-cv-00551 <br><br><br> DISTRICT JUDGE DARREL JAMES PAPILLION <br><br><br> MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

**NURTURE, LLC'S RESPONSE TO PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL AND IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

**NOW INTO COURT**, through undersigned counsel, comes Defendant Nurture, LLC, which respectfully submits this Response Brief to Plaintiff's Brief in Support of Plaintiff's Motion to Compel and in Opposition to Nurture's Motion for a Protective Order (Rec. Doc. 342). For the reasons set forth below, Nurture should not be required to respond to Interrogatory No. 11, and any questioning of Nurture's Rule 30(b)(6) witness as to information from 2022 should be strictly limited to Topic 5 only, which addresses results of heavy metal testing produced by Nurture.

**I.     Nurture Should Not Be Required to Respond to Re-Issued Interrogatory No. 11.**

Nurture should not be required to respond to amended Interrogatory No. 11 because it is overbroad, burdensome, and harassing; does not comply with the Court's instructions; and as propounded, is in excess of the permissible number of interrogatories under the Federal Rules. For context, Nurture responded to Interrogatory No. 11 before it was re-issued, identifying specific efforts to control heavy metals, referring to a spreadsheet documenting such efforts, summarizing deposition testimony from four Nurture witnesses, and incorporating responses to other

1

overlapping interrogatories that described Nurture's goal thresholds, hold-and-release limits, reformulations, discontinuations, and projects relating to heavy metals. In his brief and during the December 13 hearing, Plaintiff has portrayed Interrogatory No. 11 as seeking only extremely simplified information. To that end, Plaintiff's counsel has stated that (1) Plaintiff is "just seeking for Nurture to indicate at a high level the activities that it had ongoing at various times to reduce the amount of heavy metals in its supply chain"; and (2) "all Plaintiff has ever sought, is to know whether (and if so when) Nurture has undertaken specific actions or efforts to reduce the heavy metals in its baby food." Dec. 13 Hearing Tr. at 31:20-23; Pl. Br. at 3.

That is a rank distortion of what Interrogatory No. 11 **actually requests**. As currently propounded, it seeks information as to 27 distinct "actions or efforts" – a far cry from the five examples that Plaintiff's counsel mentioned during the December 13 hearing. *See* Dec. 13 Hearing Tr. at 35:13-36:4. More importantly, the scope of Interrogatory No. 11 goes well beyond merely seeking "whether/when" information "at a high level", as Plaintiff claims. Rather, as to **each** of these 27 "actions or efforts", Interrogatory No. 11 demands that Nurture (1) "[d]escribe the specific action or effort taken"; (2) "[i]dentify the Date the action or effort began and ended"; (3) "[i]dentify the specific individual or individuals responsible for implementing of the action or effort"; and (4) "[s]tate whether the action or effort applied differently, or did not apply at all, for certain types of Contract Manufacturers or Suppliers." Am. Interrog. 11 (Rec. Doc. 342-2) at 8-10.

Although the Court previously allowed for the possibility of Plaintiff providing a "long list" of specific actions or efforts, it also required that the list be "identifiable and relevant" and specified that Nurture was only required to confirm whether the action or effort happened and "the date it happened." Hearing Tr. at 36:6-16. But that is not what Interrogatory No. 11 requests in its most recently amended form. To take just one example, it would require Nurture to collect and

2

document the efforts of dozens of Nurture employees' day-to-day work with over a hundred different suppliers and co-manufacturers over a five plus year period of time.  The Court has already twice warned Plaintiff regarding the proportionality of his discovery demands given that this is a one-plaintiff case, not an MDL or a class action. Dec. 13 Hearing Tr. 24:16-18 *("we're dealing with a claim by a single plaintiff, and you're asking for discovery that would be challenging even in a class action context")*; Rec. Doc. 337 at 7 ("this case involves a claim by a single plaintiff, not a class of individuals, thus the proportionality factor precludes discovery of information that would be challenging to obtain even were it sought in a class action or MDL context.").

Plaintiff complains that Nurture did not respond to the Interrogatory until January 17th and declined to meet and confer.  That too is a distortion of the record.  The Court gave Nurture 14 days to respond to the Interrogatory once it was re-issued. Rec. Doc. 299 at 2.  It did not require that Nurture respond sooner or that the parties first meet and confer.  The interrogatory was re-issued on January 3rd and Nurture timely responded on January 17th.  Moreover, Nurture had **already** provided its views on the "amendment."  On December 18, Plaintiff sent a letter to Nurture purporting to clarify the interrogatory by listing twelve different "actions or efforts"; on December 27, Nurture formally objected to the draft interrogatory on roughly the same grounds that it provided on January 17th, including that the interrogatory was overbroad.  Rather than ameliorate those concerns, Plaintiff re-issued the interrogatory in its current form and more than **doubled** the list of actions or efforts from 12 to 27.  These non-starter proposals demonstrate that Plaintiff was not serious regarding meeting and conferring in the first instance.

Plaintiff suggests that Nurture waived its right to object to the "amended" interrogatory as being in excess of the permissible number under the Federal Rules.  Not so.  Nurture's counsel made clear at the December 13 hearing that, to that point, it had raised the objection where

3

appropriate but nevertheless had answered the interrogatories. But counsel also indicated that "as a place marker going forward", Nurture would not answer further interrogatories. Hearing Tr. 52:8-12. Given the breadth and scope of re-issued Interrogatory No. 11, it constitutes an entirely new set of interrogatories, and Nurture should be permitted to refuse to answer it on that basis.

II.   **The Production of Testing Data from 2022 Does Not Justify Obtaining Irrelevant Information from 2022 for the Overwhelming Majority of Deposition Topics.**

The Court was clear during the December 13 hearing that information from 2022 was generally not relevant to this case and was not appropriate to pursue in the Rule 30(b)(6) deposition of Nurture's witness, unless documents had been produced corresponding to a particular topic. Hearing Tr. at 78-79 ("what happened after February of '21 is not relevant to your claim because you've said your client stopped eating this product by then. But to the extent they've produced for 2022, you're entitled to that[]"). As to the exception, the Court's discussion of the issue was in the context of Topic 5 (heavy metal testing), because Nurture had previously produced such data from 2022. The Court reiterated its general directive in its ruling on the retailer Defendants' motions for a protective order as their 30(b)(6) depositions. *See* Rec. Doc. 337 at 7 ("As the court ruled in regard to Nurture's corporate deposition, questions directed to Amazon regarding the specific products at issue will be limited to the March 2016—February 2021 time frame."). As noted above, the Court has twice warned Plaintiff regarding the proportionality of discovery demands.[1]

Plaintiff's demand to question Nurture's witness as to information from 2022 is not proportional and is at odds with the Court's guidance.[2] Rather than limiting the request to Topic 5, Plaintiff seeks to expand the Topic 5 exception to include **ten different topics** within the scope

---

[1] It should be noted that Nurture produced the same 30(b)(6) witness in the *NC* litigation in California, and Nurture has already agreed that Plaintiff may use that transcript in this litigation.
[2] Plaintiff erroneously states that "Nurture agreed that questioning on Topic No. 2 could extend to 2022, but disagreed as to all the other topics." Pl. Br. at 4. Nurture agreed as to Topic 5 (Heavy Metal Testing), not Topic 2 (Ingredient Sourcing).

4

of that exception. Plaintiff speculates that questions regarding 2022 are appropriate as to additional topics because Nurture's heavy metal test results from 2022 need to be placed "into context" and therefore "Plaintiff should be allowed to probe into the cause of trends, particularly any downward trends, in Nurture's heavy metal levels." Pl. Br. at 4-5. That reasoning would blow a hole in the Court's strict guidance that 2022 was not relevant unless Nurture had produced 2022 documents directly relevant to a particular topic. Plaintiff should not be permitted to bootstrap the overwhelming majority of the deposition topics into an exception that swallows the rule merely because Nurture has produced testing data from 2022.[3] Moreover, Plaintiff's justification – *i.e.* the need to "probe" into "trends" for testing – fails. Information from 2022 (well after JMW consumed Nurture's baby food) has no relevance to whether a feasible alternative design existed **at the time** the food JMW ate was manufactured (likely no later than 2020, given that Plaintiff stopped consuming the products in February 2021). Nor is 2022 information relevant to any of Nurture's affirmative defenses that Plaintiff has previously cited (i.e., compliance with regulation and industry standard, foreseeable use, and good faith) because those defenses relate to **the time of the relevant conduct**, and not conduct after the fact. *See* Rec. Doc. 288-2 at 1-2.

## CONCLUSION

Nurture respectfully requests that the Court order that Nurture not be required to respond to Interrogatory No. 11 in its current form, and that the Court limit Plaintiff to questioning Nurture's witness regarding 2022 information to Topic 5 alone (Heavy Metal Testing), and no other topics.

---

[3] Nurture's 30(b)(6) deposition is scheduled for February 9th. Given the burden of preparing a witness to testify as to an entire year of company practices and information for ten distinct topics, Nurture reserves the right to postpone the deposition or limit the topics for the February 9 session for an appropriate portion of the allotted seven hours so that any Court-issued order can be accommodated and the witness fully prepared.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART & MOORE AND DANIELS, LLC**

/s/ *Camala E. Capodice*
QUENTIN F. URQUHART, JR. (La. Bar No. 14475)
CAMALA E. CAPODICE (La. Bar. No. 29117)
GABRIEL J. WINSBERG (La. Bar No. 38943)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101
qurquhart@irwinllc.com
ccapodice@irwinllc.com
gwinsberg@irwinllc.com

AND

**DLA PIPER LLP (US)**

Mary E. Gately (admitted pro hac vice)
Paul D. Schmitt (admitted pro hac vice)
500 Eighth Street NW
Washington, DC 20004
Telephone: (202) 799-4507
mary.gately@dlapiper.com

AND

DLA PIPER LLP (US)
Lyn Pruitt (admitted pro hac vice)
10809 Executive Center Drive
Suite 205
Little Rock, AR 72211
Telephone: (214) 743-4582
lyn.pruitt@dlapiper.com

*Counsel for Nurture, LLC*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

/s/ *Camala E. Capodice*