UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARGARET WATKINS, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 22-551 |
| NURTURE, LLC, ET AL. | * | SECTION "P" (2) |

**ORDER AND REASONS**

At the request of counsel for Plaintiff JMW and Defendant Nurture, LLC, the Court issues this Order and Reasons to address the parties' disputed interpretation of this Court's December 13, 2023 Order (ECF No. 299) granting in part and denying in part Plaintiff's Motion to Compel (ECF No. 268) and Nurture's Motion for Protective Order (ECF No. 270). In accordance with the Court's January 24, 2024 Briefing Order, the parties timely filed briefs in support of their positions. *See* ECF Nos. 339, 342, 343.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Amended Interrogatory No. 11 and Rule 30(b)(6) deposition notice of Defendant Nurture, LLC must be amended as stated herein.

**I.      BACKGROUND**

On December 13, 2023, the undersigned held a lengthy discovery hearing on cross-motions concerning certain interrogatories and the scope of identified topics in the Rule 30(b)(6) notice, granting in part and denying in part each motion. *See* ECF No. 299. The Court ordered Plaintiff to revise and reissue Interrogatory No. 11, after which Nurture was to provide a full and complete response to the revised interrogatory, including a responsive statement that may be based on its summary of deposition testimony and may also include a reference to specific portions of the deposition. ECF No. 299 at 1. The Court also limited the temporal scope of each Rule 30(b)(6)

1

deposition topic to 2016 through February 2021 and ordered Plaintiff to identify each topic for which he seeks information through 2022. *Id*. at 2. Plaintiff revised and issued Interrogatory 11 as follows:

> Identify whether Nurture took the following specific actions or efforts for the purpose of reducing, or attempting to reduce, the levels of Heavy Metals in its Baby Food products to levels as low as reasonably achievable, levels as low as reasonably practical, or levels that are unavoidable; or to Significantly Minimize levels of Heavy Metals.
> - Added or made any substantive changes to requirements new Contract Manufacturers must meet before being approved to manufacture Baby Food for Nurture;
> - Added or made any substantive changes to requirements new Suppliers must meet before being approved to supply ingredients used to manufacture Baby Food for Nurture;
> - Added or made any substantive changes to due diligence requirements Nurture performed before approving new Suppliers or Contract Manufacturers;
> - Added or made any substantive changes to the auditing processes Nurture used for Suppliers that supply ingredients used to manufacture Baby Food for Nurture;
> - Added or made any substantive changes to the auditing processes Nurture used for Contractor Manufacturers that manufacture Baby Food for Nurture;
> - Increased or reduced the frequency of audits Nurture performed on Suppliers or Contract Manufacturers;
> - Added or changed specifications Nurture required for ingredients used to manufacture Baby Food for Nurture;
> - Added or changed specifications Nurture required for Baby Food products manufactured for Nurture;
> - Required Suppliers or Contract Manufacturers to increase or reduce the frequency of Heavy Metal Testing of ingredients used to make Baby Food for Nurture;
> - Required Contract Manufacturers to increase or reduce the frequency of Heavy Metal Testing of Baby Food products manufactured for Nurture;
> - Required Suppliers or Contract Manufacturers to provide new or additional documentation concerning Heavy Metal Testing performed on ingredients or Baby Food products manufactured for Nurture;
> - Required Suppliers or Contract Manufacturers to provide new or additional documentation concerning source of ingredients used to manufacture Baby Food for Nurture, including new or additional information about Farms where those ingredients originated;
> - Discontinued use of any Contract Manufacturer previously used to manufacture Baby Food products for Nurture;

- Discontinued or prohibited use of any Supplier previously used by Nurture or its Contract Manufacturers to obtain ingredients used to manufacture Baby Food products for Nurture;
- Investigated the source of ingredients that were used to manufacture Baby Food for Nurture;
- Required Suppliers or Contract Manufacturers to require Farms to perform Heavy Metal Testing on soil where ingredients used to manufacture Baby Food for Nurture were grown;
- Required Suppliers or Contract Manufacturers to perform Heavy Metal Testing on soil at Farms where ingredients used to make Baby Food for Nurture were grown;
- Prohibited or restricted Suppliers or Contract Manufacturers from obtaining ingredients from Farms located in particular geographic areas;
- Required Suppliers to discontinue use of any source, including any Farm, the Supplier(s) had previously used to obtain ingredient used to manufacture Baby Food for Nurture;
- Required Contract Manufacturers to discontinue use of any source, including any Farm, the Contract Manufacturer(s) had previously used to obtain ingredients used to manufacture Baby Food for Nurture;
- Required Contract Manufacturers to perform Heavy Metal Testing of water used to make Baby Food for Nurture;
- Investigated the level of Heavy Metals in water sources in or near the geographic regions where ingredients were sourced for the Baby Food for Nurture;
- Required Contract Manufacturers to perform Heavy Metal Testing or otherwise assess presence of Heavy Metals in packaging used for Baby Food Manufactured for Nurture;
- Required Contract Manufacturers to provide Nurture with results of Heavy Metal Testing of water used to make Baby Food for Nurture for Heavy Metals;
- Required Suppliers or Contract Manufacturers to make changes to Food Safety Plans, HACCPs, or Hazard Analysis;
- Required Suppliers or Contract Manufacturers to perform Corrective and Preventative actions;
- Required Suppliers or Contract Manufacturers to perform Verification and Validation activities;

For each of the actions or efforts identified, please: a. Describe the specific action or effort taken; b. Identify the Date the action or effort began and ended; c. Identify the specific individual or individuals responsible for implementing of the action or effort; e. State whether the action or effort applied differently, or did not apply at all, for certain types of Contract Manufacturers or Suppliers.[1]

---

[1] ECF No. 342-2.

Plaintiff argues that all he seeks "is to know whether (and if so when) Nurture has undertaken specific actions or efforts to reduce the heavy metal in its baby food." ECF No. 342 at 3. Plaintiff also asserts the following Rule 30(b)(6) deposition topics should include the year 2022:

- Topic No. 2: Ingredient Sourcing
- Topic No. 3: Product and Ingredient Specifications
- Topic No. 5: Heavy Metal Testing
- Topic No. 7: Nurture's Production Process
- Topic No. 9: Nurture's Internal Heavy Metal Thresholds
- Topic No. 10: Nurture's Efforts to Control Heavy Metals in Supply Chain
- Topic No. 11: Nurture's Written Agreements with Entities in Supply Chain
- Topic No. 12: Discontinuing and Reformulating Products
- Topic No. 15: Nurture's Interaction with Other Baby Food Manufacturers re Heavy Metals
- Topic No. 16: Nurture's Policies re Heavy Metals.

Plaintiff states that Nurture agreed to extend to 2022 Topic 2 but none of the other topics. ECF No. 342 at 4-5.

In Opposition, Nurture argues that it should not be required to respond to Amended Interrogatory No. 11 because it is overbroad, burdensome, harassing, noncompliant with the Court's instructions, and in excess of the permissible number of interrogatories under the Federal Rules. ECF No. 343. Nurture further argues that its production of testing data from 2022 does not justify obtaining irrelevant information for the "overwhelming majority" of deposition topics. *Id*. at 4-5. Nurture agrees to extend to 2022 for Topic 5, not Topic 2, only. *Id*.

## II.  APPLICABLE LAW
### A. Number of Interrogatories

Under Rule 33(a), a party may not serve more than 25 interrogatories, including discrete subparts, upon another party unless stipulated or ordered by the court.[2] "Leave to serve additional

---

[2] FED. R. CIV. P. 33(a)(1).

interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)."[3] A party receiving excessive interrogatories may respond to the "first" 25 discrete questions.[4]

As the comments to Rule 33(a)(1) make clear, a party cannot evade the 25-interrogatory limit through the use of "subparts" that seek information about discrete separate subjects.[5] This numerical limitation on the number of interrogatories is intended to protect against potentially excessive use of interrogatories, not to prevent necessary discovery.[6] It forces a party to narrow their requests to the important issues in the case, to avoid cumulative or duplicative requests, and to seek relevant information from more convenient, less burdensome sources, including depositions.[7]

Although there is no "clear and easily applied rule" for counting discrete subparts, courts look to whether the subparts are logically or factually "subsumed within" or "necessarily related to" the "primary question."[8] In other words, courts assess whether subsequent questions within a single interrogatory are subsumed and related by examining whether the first question is primary and subsequent questions are secondary to the primary question or whether the subsequent question could stand alone, independent of the first question.[9] If the subsequent question stands

---

[3] FED. R. CIV. P. 33(a); *see also* E.D. La. L.R. 33.1.
[4] *Stephens v. Fla. Marine Transporters, Inc.*, No. 12-1873, 2013 WL 12120393, at *3 (E.D. La. Feb. 21, 2013) (Roby, M.J.) (citing *Lower River Marine, Inc.*, 2007 WL 4590095, at *2; *Paananen v. Cellco P'ship*, No. 08-1042, 2009 WL 3327227, at *5 (W.D. Wash. Oct. 8, 2009) ("The best rule . . . is that a responding party must answer the first 25 interrogatories.")).
[5] FED. R. CIV. P. 33, advisory committee's note to the 1993 amendment.
[6] *Manship*, 232 F.R.D. at 554 n.1; *Lower River Marine, Inc. v. USL-497 Barge*, No. 06-04083, 2007 WL 4590095, at *2 (E.D. La. Dec. 21, 2007); *see also* Fed. R. Civ. P. 33(a) advisory committee's note to 1993 amendment ("The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device.").
[7] *King v. Univ. Healthcare Sys., L.C.*, No. 08-1060, 2008 WL 11353694 (E.D. La. Oct. 31, 2008) (Wilkinson, M.J.).
[8] *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 444 (C.D. Cal. 1998) (citing *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997); *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 321 (D. Nev. 1991); *Clark v. Burlington N.R.R.*, 112 F.R.D. 117, 120 (N.D. Miss. 1986); *Myers v. U.S. Paint Co.*, 116 F.R.D. 165, 165–66 (D. Mass. 1987)); FED. R. CIV. P. 33(a) advisory committee's note to the 1993 amendment; 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994).
[9] *Estate of Manship v. U.S.*, 232 F.R.D. 552, 554 (M.D. La. 2005).

alone or is independent of the first question, it would be considered a discrete or separate question even when joined by a conjunctive word and related to the primary question.[10] Genuine subparts, however, are not counted as separate interrogatories. For instance, "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."[11]

To determine whether leave should be granted to serve interrogatories in excess of Rule 33's limitation, a court should consider the factors listed in Rule 26(b)(2)(C).[12] "Frequently, the issue becomes whether the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party."[13] This balancing test weighs in favor of the requesting party where the additional interrogatories are substantially relevant to the claims made in the litigation, and the burden of responding is not high.[14]

### III.     ANALYSIS

Plaintiff's Amended Interrogatory No. 11 far exceeds the court's directive at the December 13, 2023 hearing. Rather than list the actions to obtain either an affirmation (with date) or denial, Plaintiff has issued an interrogatory with 27 distinct, independent questions that cannot reasonably be read as subparts given the wide span of topics and multiple types of information sought. Interrogatory No. 11 should be modified to read:

> Identify whether and, if so, when Nurture took the following actions for the purpose of reducing, or attempting to reduce, the levels of heavy metal int its baby food products:

---

[10] *Safeco*, 181 F.R.D at 445 (quoting *Kendall,* 174 F.R.D. at 685).
[11] FED. R. CIV. P. 33 advisory committee's note to the 1993 amendment.
[12] *June Medical Services, LLC v. Rebekah Gee*, No. 16-444, 2018 WL 9946296, at *1 (M.D. La. Sept. 25, 2018) (citing *Estate of Manship* v. U.S., 232 F.R.D. 552, 558-59 (M.D. La. 2005)).
[13] *Id*.
[14] *Id*. at 3.

- Added or made any substantive changes to due diligence requirements Nurture performed regarding the presence or levels of heavy metals in baby food products manufactured by Nurture;
- Required suppliers or contract manufacturers to perform, increase, or reduce the frequency of heavy metal testing of baby food product manufactured by Nurture; and
- Required suppliers or contract manufacturers to provide new or additional documentation concerning heavy metal testing performed on baby food products manufactured for Nurture.

Plaintiff's list of deposition topics seeking information through 2022 is likewise excessive. Nurture's production of heavy metal testing data from 2022 does not give Plaintiff carte blanche to expand the clearly defined, proportional temporal scope previously established by this Court for the majority of deposition topics. This clarification request is not the proper avenue to seek reconsideration of this Court's temporal limitation, and a party's disagreement with that ruling is likewise an insufficient basis to seek reconsideration. Nurture must prepare its deponent to testify about only Topics 5, 9, and 16 for the 2022 calendar year.

### IV.   **CONCLUSION**

For the foregoing reasons, both Amended Interrogatory No. 11 and the temporal scope of Nurture's Rule 30(b)(6) deposition must be limited as instructed herein. Accordingly,

IT IS ORDERED that Nurture respond to Amended Interrogatory No. 11, as modified herein, within seven (7) days.

IT IS FURTHER ORDERED that Nurture's Rule 30(b)(6) deponent must be prepared to testify about Topics 5, 9, and 16 for the years 2016-2022 and all other topics for the years 2016-February 2021.

New Orleans, Louisiana, this  31st  day of January, 2024.

*[Signature]*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE