**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| Margaret Watkins and James Watkins, on behalf of Their Minor Son, JMW, <br><br> *Plaintiff,* <br><br> *v.* <br><br> Nurture, LLC; Hain Celestial Group, Inc.; Amazon.com Services LLC; Whole Foods Market Services, Inc.; and Does 1-100, <br><br> *Defendants.* | CIVIL ACTION NO. 22-551 <br><br> JUDGE DARREL JAMES PAPILLION <br><br><br> MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL

Plaintiff JMW ("Plaintiff") respectfully moves this Court to compel Nurture (1) to reproduce a corporate witness to testify regarding Nurture's finished product and in ingredient specifications and how and if those specifications operated over time to limit the amount of heavy metals in Nurture's products. (Topic 1 to Plaintiff's March 26, 2024 Amended 30(b)(6) Notice) and (2) to provide complete and accurate information regarding Nurture's heavy metal specifications (Plaintiff's Interrogatory No. 7). Plaintiff first issued Interrogatory No. 7 on May 20, 2023, seeking identification of ingredient and finished product specifications, the dates they were in effect, and whether those specifications were deviated from. Nurture provided a sworn response to this Interrogatory on October 25, 2023, which included a list of documents by bates number that Nurture represented to be every ingredient and product specification that was effective from April 2016 to February 2021. On February 9, 2024, through the contradictory testimony of Nurture's 30(b)(6) witness, Plaintiff first learned that the information provided in Nurture's sworn responses was inaccurate. Specifically, when Nurture was confronted with the finished product specifications that Nurture had represented were final and effective specification in its response to

Interrogatory No. 7, Nurture testified that the specifications were actually only proposed, not finalized. This testimony was a significant deviation from the landscape that Nurture had outlined in its responses from four months prior, and which had been the basis for both Plaintiff's preparation for the Nurture 30(b)(6) deposition and Plaintiff's experts' analyses of Nurture's safety program.

Since the deposition, Nurture has amended its response to Interrogatory No. 7, removing 21 specifications from its effective specification list (and adding none). Despite these substantial material changes, Nurture refuses to reproduce a corporate witness for questioning on Topic 1 and instead claims that Plaintiff has already exhausted his opportunity to ask questions on this topic. Nurture's logic here is difficult to understand. Nurture provided Plaintiff with inaccurate information about its specifications; offered a corporate witness for deposition while Plaintiff was under the reasonable, but incorrect, impression that Nurture's sworn Interrogatory responses were accurate; significantly and materially amended its Interrogatory responses *after* the corporate deposition; and, nonetheless, now argues that Plaintiff should have unraveled each of Nurture's mistakes in real time at the deposition with a witness who, by his own admission, had an incomplete memory of this topic.[1] This approach is woefully unfair to Plaintiff and highly prejudicial. Plaintiff's Motion to Compel Nurture to designate a witness to testify should be granted because Nurture should not be permitted to deny Plaintiff an opportunity to question Nurture about a key topic at issue in this litigation by providing inaccurate and incomplete information to interrogatories it was obligated to answer truthfully and completely to the extent not objected to under the Federal Rules.

---

[1] Plaintiff's Exhibit 9, February 9, 2024 30(b)(6) Deposition of Nurture, at 213:1-7.

Additionally, Nurture's updated responses to Interrogatory 7 (Nurture's "March 2024 Response") remains severely deficient. Despite Plaintiff's specific request for Nurture to identify and/or provide responsive information regarding its Contract Manufacturers specifications, and without denying that Nurture is in possession of responsive documents, Nurture did not identify a single final product or ingredient specification document in its March 2024 Response. Nurture's March 22, 2024 Response also does provide the information that is plainly requested by the interrogatory. Plaintiffs pray that this Court order Nurture to fully respond to Plaintiff's Interrogatory 7 and to reproduce a corporate witness on the topic impeded by Nurture's failure to do so to date.

## **RELEVANT FACTUAL BACKGROUND**

Nearly a year ago, on May 20, 2023, Plaintiff propounded his Second Set of Interrogatories on Defendant Nurture.[2] Interrogatory 7 asked Nurture to:

> "[i]dentify **all specifications concerning Nurture's finished Baby Food products or the ingredients used in Nurture's Baby Food products**. If there are any Baby Food products, ingredients, Contract Manufacturers, or time periods for which Nurture did not have a specification in effect, please specify. For each specification that was in effect, please identify: a. The Date the specification was in effect; b. Whether the specification was signed by the Contract Manufacturer or Supplier; c. Whether the specification contains reference to Heavy Metals; d. Whether the Contract Manufacturer or Supplier deviated from the specification with regard to Heavy Metal levels or Heavy Metal testing; and e. Nurture's response to any deviation from specifications concerning Heavy Metal levels or Heavy Metal testing."[3]

Nurture's July 10, 2023 Response to Plaintiff's Interrogatory 7 invoked Rule 33(d) and referred Plaintiff to over 12,000 documents that Nurture indicated contained the information sought by Interrogatory 7.[4]

---

[2] Plaintiff's Exhibit 1, Plaintiff's Second Set of Interrogatories on Defendant Nurture. (Emphasis added).
[3] *Id*. (Emphasis added).
[4] Plaintiff's Exhibit 2, Nurture's Responses to Plaintiff's Second Set of Interrogatories.

On August 23, 2023, Plaintiff sent a letter to Nurture, requesting that Nurture supplement its Response to Interrogatory 7.[5] Plaintiff noted in his letter that there were many specifications among those 12,000 documents that ████████████████████████████████████ stating:

> The specifications themselves do not supply the information requested and needed by Plaintiff. *Plaintiff cannot determine whether the specifications were in effect, drafts, or merely proposed.* Plaintiff also cannot determine the dates that the specifications that were in effect were in effect. *Nurture must provide a list of the specifications that were in effect for each product* and each ingredient and the dates in which each was in effect. Plaintiff cannot possibly determine this from the documents themselves and no single witness will be able to address these issues during a deposition."[6]

The next day, on August 24, 2023, Plaintiff served Requests for Admission to Nurture which included a request to Nurture to "Admit that Nurture ████████████████████████ ██████████████████████████████[7] Nurture's September 28, 2023 Response to Request for Admission No. 48 stated in relevant part, "Nurture ████████████████████████████ ████████████████████████████████████████████████[8]

On October 25, 2023, Nurture supplemented its Response to Interrogatory 7.[9] Nurture's October 2023 Response to Interrogatory 7 included "Exhibit B," which Nurture represented to be a "a list of *final* specifications identified by bates number" effective from April 2016 through February 2021.[10] Though most of the final product specifications included in Exhibit B were ████████████████████████████████████████ consistent with Nurture's Response to Request

---

[5] Plaintiff's Exhibit 3, Deficiency Letter to Nurture dated August 23, 2023.
[6] *Id*. (Emphasis added).
[7] Plaintiff's Exhibit 4, Plaintiff's 8/24/2023 First Set of Requests for Admission, RFA No. 48
[8] Plaintiff's Exhibit 5, Nurture's 9/28/2023 Responses to Plaintiff's 1st Set of Requests for Admission
[9] Plaintiff's Exhibit 6, Nurture's First Supplemental Responses to Plaintiff's Second Set of Interrogatories.
[10] Plaintiff's Exhibit 7, Nurture's "Exhibit B" to its October 25, 2023 Supplemental Responses to Plaintiff's Second Set of Interrogatories. (Emphasis added.)

for Admission No. 48, ████████████████████████████████████████████████

████████████████████████████

Since October 25, 2023, Plaintiff has relied on Nurture's sworn representation that "Exhibit B" is a complete list of all *final* specifications for Nurture's finished Baby Food products and the ingredients used in Nurture's Baby Food products effective from April 2016 through February 2021.

On February 5, 2024, Plaintiff noticed the Deposition of Nurture Pursuant to Rule 30(b)(6) regarding several topics including Topic No. 3: Product and Ingredient Specifications.[11] Topic No. 3 reads in relevant part:

> "The content, development, negotiation, approval, and application of Nurture's specifications concerning Heavy Metals for the Nurture Products at Issue or the raw ingredients used in Nurture Products at Issue, including: a. The timeline of Nurture's implementation of Heavy Metal limits in finished product and ingredient specifications; b. Any impediments to Nurture's ability to implement Heavy Metal limits in finished product and ingredient specifications; c. The extent to which Heavy Metal limits in specifications were proposed but not adopted; d. Nurture's decision to include Heavy Metals in certain finished product specifications…f. Any changes, and the reasons for those changes, to the Heavy Metal limits in finished product and ingredient specifications…i. The extent to which Nurture's ingredients and finished products deviated from the Heavy Metal limits in the specifications…"[12]

The deposition of Nurture's designated witness took place on February 9, 2024.[13] On Topic No. 3, Plaintiff's counsel presented Nurture with several documents that Nurture had previously indicated (via inclusion on "Exhibit B") were final and operative versions of final product specifications. However, when confronted ████████████████████████████████████

---

[11] Plaintiff's Exhibit 8, Fourth Amended Notice of Deposition Pursuant to Rule 30(b)(6)

[12] *Id*.

[13] The deposition of Nurture's designated witness was scheduled to take place on December 15, 2023.  However, just three days before the deposition was to take place, Plaintiff discovered that Nurture had omitted hundreds of ████ ████████████████████████████████████████████████████ from its "Exhibit A" that purported to be a complete list of heavy metal testing documents that was served on Plaintiff as part of its sworn interrogatory response to Plaintiff's Interrogatory 6.  Having identified the major omission, Plaintiff was forced to postpone the deposition.



[14] Nurture's deposition testimony on this point was inconsistent with Exhibit B, which at the time of the deposition was replete with examples of product specifications that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nurture's deposition testimony was also inconsistent with Nurture's Admission ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓[15]

More specifically, when Nurture was presented with the ▓▓▓▓▓▓▓▓▓▓

[14] Plaintiff's Exhibit 9, February 9, 2024 30(b)(6) deposition of Nurture, at 189:1-23.
[15] Plaintiff's Exhibit 5, Nurture's Response to Plaintiff's Request for Admission No. 48.
[16] Plaintiff's Exhibit 10, NURTURE-BF-WATKINS_00163083 – Ex. 6 to February 9, 2024 30(b)(6) deposition of Nurture.
[17] Plaintiff's Exhibit 9, at 186:5-187:17; 201:19-202:2.
[18] *Id.* at 212:11-15.
[19] Plaintiff's Exhibit 11, NURTURE-BF-WATKINS_00004997 – Exhibit 7 to February 9, 2024 30(b)(6) deposition of Nurture.
[20] Plaintiff's Exhibit 9, at 204:1-205:9.

6

███████████████████████████████████████████████████████

████████████████████████

Additionally, upon further review of these and related documents following the 30(b)(6) deposition of Nurture, Plaintiff identified a Blueberry Purple Carrot Puffs specification █████ ███████████████████████████████████████ This document contradicts Nurture's testimony that ████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████

On March 4, 2024, Plaintiff sent a letter to Nurture seeking an explanation for the inconsistencies, requesting supplemented interrogatory responses and additional time to depose Nurture's 30(b)(6) witness upon receipt of supplemented interrogatory response had been made.[23]

On March 22, 2024, Nurture served Plaintiff with updated supplemental Interrogatory responses and an updated "Exhibit B."[24] Nurture's March 2024 "Exhibit B" removed more than 20 specifications that appeared on Nurture's October 2023 "Exhibit B." No specifications were added. Additionally, while Nurture's October 2023 "Exhibit B" contained final product specifications █████████████████████████████████████████████████ ███████████████████████████ in Nurture's March 2024 Interrogatory 7 Response, Nurture characterized its updated list of specifications ("Amended Exhibit B") differently. Nurture's March 2024 Response said that "Amended Exhibit B," "represents Nurture's best effort based on information reasonably available to it to identify 'final' specifications *dated* between

---

[21] Plaintiff's Exhibit 12 - NURTURE-BF-WATKINS_00211486.
[22] Plaintiff's Exhibit 9, at 190:18-20.
[23] Plaintiff's Exhibit 13, Plaintiff's Letter to Nurture re: Inconsistencies in Testimony dated March 4, 2024.
[24] Plaintiff's Exhibit 14, Nurture's updated "Exhibit B" to its March 22, 2024 Supplemental Responses to Plaintiff's Second Set of Interrogatories.

April 2016 through February 2021." As a result, ███████████████████████████

████████████████████████████████████████████████████████████████████████

███

Nurture's responses are once again inadequate, incomplete, inaccurate and fail to answer Plaintiff's Interrogatory 7. Nurture cannot reconcile its prior inconsistent sworn statements or cure discovery deficiencies by playing games to deny Plaintiff discoverable information to which Nurture previously agreed to provide. Plaintiff brings the instant Motion to compel complete responses to Interrogatory 7 and subsequent opportunity to depose Nurture's 30(b)(6) witness about these inconsistencies and the information that a fulsome Response to Interrogatory 7 reveals.

## ARGUMENT

The highly divergent narratives contained in Nurture's sworn testimony call into question the completeness of Nurture's document production, the reliability of its interrogatory responses, and the adequacy of Nurture's preparation of its 30(b)(6) witness. The inconsistencies are especially problematic given that they go directly to Plaintiff's burden of proof on his manufacturing defect claim, thwarted Plaintiff's questioning of Nurture regarding its heavy metal specifications, and hinder Plaintiff's expert work up. This Court should grant Plaintiff's motion to compel Nurture to designate a witness to testify on the topic that Nurture most directly impacted by Nurture's inaccurate and incomplete Interrogatory Response and provide a complete and accurate Response to Interrogatory 7.

I.   **Only Additional Time to Depose Nurture's 30(B)(6) Witness Can Dispel the Prejudice to Plaintiff That Resulted From Nurture's Repeated And Months-Long Failure To Comply With Its Discovery Obligations.**

Nurture's failures necessitate additional time for Plaintiff to depose Nurture's 30(b)(6) witness. Denying Plaintiff's Motion on this point would only serve to further incentivize this abuse

8

of the discovery process by Nurture. It is worth noting that Nurture, through a meet and confer

process agreed without motion practice to designate a witness on Topic No. 3. Given that █████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████ it is perplexing that Nurture's preparation of its witness did not alert Nurture

to inconsistencies between the testimony to be proffered by Nurture and its previous sworn

statements and omissions.

This is also not the first time Plaintiff has had to come before this Court regarding

deficiencies in Nurtures Interrogatory Responses that impeded Plaintiff's ability to question

Nurture as to Topic 3. As Plaintiff explained in filings related to Nurture's belated supplementation

of its sworn interrogatory responses regarding the identification of all heavy metal testing,

> Plaintiff's 30(b)(6) Topic No. 3 concerns Nurture's specifications and whether
> Nurture deviated from those specifications. When Nurture failed to fulfil its
> obligations under Rule 33(d) and provided an incomplete list of documents where
> Plaintiff could find information responsive to his request for information regarding
> all heavy metal testing data, Nurture hampered Plaintiff's ability to discern, for
> example, the frequency with which Nurture failed to abide by its own heavy metal
> specifications. Nurture's omissions also impaired Plaintiff's ability to determine
> whether Nurture deviated from its own heavy specifications during the time
> Plaintiff consumed Nurture's products and whether documents revealed
> specification deviations on products Plaintiff ate—prima facie evidence of a key
> element on Plaintiff's manufacturing defect claim.[25]

Nurture's failure to provide complete and accurate specification information is no different than

Nurture's earlier failure to provide complete heavy metal testing information on this point. Plaintiff

is entitled to discovery on whether Nurture had heavy metal specifications in place, for what

products, during what time periods and whether those specifications were deviated from. Plaintiff

---

[25] Dkt. 333 (January 12, 2024) Pltf's Reply ISO Pltf's Motion for a Modification to the Scheduling Order.

cannot do that without knowing which of the ███████ specification documents in Nurture's production were in effect during the relevant time period.

Plaintiff's counsel prepared for and took the deposition under the reasonable assumption the Nurture's verified interrogatory responses were accurate. The practical effect of Nurture later disavowing significant portions of its October 2023 Response was that Plaintiff's counsel, on the basis of sworn testimony from Nurture, went into the deposition prepared to confront Nurture about its ████████████████████████ only to be told that the documents that had formed the basis of Plaintiff's counsel's review (and overarching understanding of this case) were not the right specification documents at all and the █████████████████████████████████ ████████████████████[26]

The prejudice caused by Nurture's discovery deficiencies cannot be cured by supplemented interrogatory responses alone. As just one example, if Nurture identifies previously unidentified documents in response to Interrogatory 7, without further deposition, Plaintiff will be robbed of a key opportunity to get those documents into evidence.

And though Nurture's counsel has repeatedly argued on meet and confers that Plaintiff suffered no prejudice because Plaintiff's counsel could have addressed these inconsistencies at deposition, this argument lacks merit. First, the burden that argument attempts to place on Plaintiff finds no support in the Federal Rules. Second, even if Plaintiff's counsel had immediately called out the discrepancies between Nurtures deposition testimony and its Response to Interrogatory 7, there is no reason to think that Nurture could have provided satisfactory explanation and resolution of the deficiencies in real time at deposition. Indeed, as of the filing of this Motion, counsel for

---

[26] *See* Plaintiff's Exhibit 15, NURTURE-BF-WATKINS_00000200 - Marked as Exhibit 8 to Nurture's February 9, 2024 30(b)(6) deposition and Plaintiff's Exhibit 16, NURTURE-BF-WATKINS_00007438 – Marked as Exhibit 11 Nurture's February 9, 2024 30(b)(6) deposition.

Nurture has had three weeks to confer with their client and have failed to satisfactorily resolve the discrepancies between Nurture's sworn statements. Third, even if Nurture had been able to satisfactorily resolve the discrepancies at deposition, dumping information contrary to that which Plaintiff had relied on for months halfway through Plaintiff's deposition of Nurture is itself highly prejudicial. It is the exact sort of surprise that the Federal Discovery Rules are meant to prevent and dispel. Fourth, only on March 22, 2024—weeks after the conclusion of Nurture's 30(b)(6) deposition—did Nurture reveal that ███████████████████████████████████████ ████████████████████████████████ Finally, as of the date of the filing of this Motion, Nurture has not identified a single of its ████████████████████████ ████████████████████████████████████████████ Plaintiff cannot be said to have had a meaningful opportunity to question Nurture about information that Nurture has yet to provide to Plaintiff. As such, Plaintiff's Motion to Compel Nurture to designate a witness should be granted.

## II.     Nurture Should Be Compelled to Fully Respond to Plaintiff's Interrogatory 7.

Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "Discovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977). Nurture has failed to adequately respond to Plaintiff's interrogatories.

As explained above, there remain significant discrepancies between the documents produced by Nurture, Nurture's deposition testimony, Nurture's Interrogatory Responses, and

Nurture's Responses to Plaintiff's Request for Admissions. In addition to failing to resolve these inconsistencies, Nurture's March 22, 2024 is deficient in at least two major respects. First, despite previously purporting to identify all specifications operative during the entirety of the April 2016 to February 2021 time period in "Exhibit B," Nurture inexplicably limited its March 2024 Responses to only those specifications *dated* between April 2016 and February 2021. The reason Nurture newly limited its "Amended Exhibit B" is unclear. Nurture did not in its March 2024 Response include a new objection to identifying those specifications that were operative during April 2016 to December 2021 time frame regardless of when the specification is dated. This change in what "Amended Exhibit B" purports to reflect was not raised by Nurture's counsel on either of the meet and confers on this topic. Regardless, this wholly new and arbitrary limitation untethered to any theory of relevancy reeks of gamesmanship and is the exact sort of evasive and not fully candid partial answer disfavored in this (or any) circuit. *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977).

Second, by way of addressing any time periods for which  Nurture's March 2024 Response merely states, [redacted] [redacted] [27] Though no [redacted] are identified in "Amended Exhibit B," Nurture's March 2024 Response does not deny that Nurture [redacted] [redacted] Nurture must either identify the records where responsive information can be found or fully respond to the interrogatory.

---

[27] Plaintiff's Exhibit 17, Nurture's Seventh Supplemental Responses to Plaintiff's Second Set of Interrogatories.

Case 2:22-cv-00551-DJP-DPC   Document 363-1   Filed 03/26/24   Page 13 of 15


Third, Nurture's Response to Interrogatory 7 with regards to certain ingredient specifications state ██ that ███████████████████████████████████████ ██████████████████████████ Because Nurture does not categorically deny having ██ ███████████████████████████████████ Plaintiff presumes that Nurture is in possession of at least some ██████████████████████ However, Nurture's Response does not indicate whether Nurture possesses responsive ████████████ ████████████████████████████████████████████████ ████████████████████████████████ Nurture has also not identified any ███████████████████████████ "Amended Exhibit B." This too is improper. If Nurture does not possess the ████████ documents themselves but has information responsive to Interrogatory 7, Nurture has an obligation to respond fully to the interrogatory to the extent not objected to pursuant to Fed. R. Civ. P. 33 (and as explicitly called for in Plaintiff's March 4, 2024 letter).[28]

Central to Plaintiff's case is having complete, comprehensive, and accurate data as it relates to the product specifications of the very product Plaintiff is alleging was contaminated with heavy metals that caused his neurodevelopmental injuries. Understanding Nurture's implementation of heavy metal limits in its products and ingredients, whether or not it deviated from its own specifications and understanding what action it took if any, when/if it deviated from specifications on products Plaintiff ate is highly relevant to Plaintiff's case and serves as prima facie evidence of a key element in Plaintiff's manufacturing defect claim. Nurture has failed, time and again, to

---

[28] ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ laintiff's Exhibit 13, at p. 5-6.

provide a complete and accurate response to Plaintiff's interrogatory 7 that directly asks Nurture to identify the specifications concerning the products and the ingredients used in its Baby Food products. Nurture's continued failure to comply with Rule 33 has caused and continues to cause unnecessary delays that are prejudicial to Plaintiff. Nurture should not be permitted to evade its discovery obligations any further. Plaintiff's Motion to Compel on this point should be granted.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully asks this Court for an Order overruling Nurture's objections and requiring Nurture to fully respond to Plaintiff's Interrogatory No. 7. Plaintiff also respectfully moves this Court to compel Nurture to designate a corporate witness to testify regarding the noticed topic in Plaintiff's 30(b)(6) notice.

Date: March 26, 2024

Respectfully submitted,

*/s/ Madeleine Clavier*
Madeleine Brumley Clavier (#37432)
Aimee H. Wagstaff (*pro hac vice*)
Wagstaff Law Firm
940 N Lincoln St.
Denver, CO 80203
Tel: (720) 208-9402
mclavier@wagstafflawfirm.com
awagstaff@wagstafflawfirm.com

Alexandra M. Walsh (*pro hac vice*)
Walsh Law PLLC
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
Tel: (202) 780-4127
Fax: (202) 780-3678
awalsh@alexwalshlaw.com

Lindsey A. Cheek (#34484)
The Cheek Law Firm, LLC
650 Poydras St., Suite 2310
New Orleans, LA 70130

14

Phone: (504) 304-4333
Fax: (504) 324-0629
lcheek@thecheeklawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record registered in the federal CM/ECF system.

/s/ *Madeleine Clavier*